# EXHIBIT A



**AXA Liability Managers**
**200 Liberty Street 22nd Fl**
**New York, NY 10281**

February 7, 2023

<u>**Via Email**</u>
(alistangle@usasf.net)

Alison Stangle
Executive Director
US All Star Federation dba IASF                    **PARTIAL DECLINATION,**
8275 Tournament Drive                              **RESERVATION OF RIGHTS AND**
Suite 325                                          <u>**REQUEST FOR INFORMATION**</u>
Memphis, TN  38115

|          |                    |                                      |
|----------|--------------------|--------------------------------------|
| Re:      | Insured:           | **US All Star Federation dba IASF**  |
|          | Lawsuits:          | **Numerous (See Exhibits A and B)**  |
|          | Greenwich Policies:| **ASG0896965 (10/22/14-15)**         |
|          |                    | **ASX0896975 (10/22/14-15)**         |
|          |                    | **ASG089696501 (10/22/15-16)**       |
|          |                    | **ASX089697501 (10/22/15-16)**       |
|          |                    | **ASG089696502 (10/22/16-17)**       |
|          |                    | **ASX089697502 (10/22/16-17)**       |
|          | Claim Nos.:        | **TBD**                              |

Dear Ms. Stangle:

I write on behalf of Greenwich Insurance Company ("Greenwich") regarding the above-referenced matters. Greenwich acknowledges receipt of the tender by US All Star Federation dba IASF ("USASF") under the referenced policies (collectively, the "Greenwich Policies") of the lawsuits identified on Exhibits A and B appended to this letter (the "Lawsuits"). This letter sets forth Greenwich's coverage position under the referenced policies with respect to the Lawsuits, and requests certain documents and information.

For the reasons set forth below, Greenwich agrees to defend USASF in the Lawsuits identified on Exhibit A, subject to a full and complete reservation of all of its rights, including the right to decline coverage and withdraw from the defense should it be determined that there is no coverage under the policies for those Lawsuits. Greenwich also reserves the right to obtain a judicial determination of its coverage obligations under the policies for the Lawsuits identified on Exhibit A.

With respect to the Lawsuit entitled *Jane Doe 1 -7, John Doe 1-2, et al. v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., U.S. All Star Federation, et al.*, Case No. 6:22-cv-02957-HMH, United States District Court for the District of South Carolina,

January 31, 2023
P a g e | **2**

Greenville Division, Greenwich must decline coverage for the claims asserted by John Doe 1 and Jane Does 2 and 4, as they involve incidents that took place after the expiration of the Greenwich policies.

Greenwich must also decline coverage for the Lawsuits identified on Exhibit B, as the incidents complained of in those Lawsuits took place after the expiration of the Greenwich policies.

In considering the request for coverage, we have reviewed the referenced policies, as well as the allegations concerning the claims. No other policies were considered. If USASF asserts a right to coverage under any other policy issued by Greenwich, please submit notice pursuant to the notice provisions contained in that policy.

## Facts

On or about December 9, 2022, USASF's broker notified American Specialty Insurance and Risk Services of twelve (12) lawsuits filed against USASF and others in federal court in South Carolina (4 complaints), Florida (3), North Carolina (1), Tennessee (1), Georgia (1) and Ohio (1), and one (1) lawsuit against USASF and others filed in South Carolina state court.

On or about December 17, 2022, USASF's broker notified American Specialty Insurance and Risk Services of an additional lawsuit filed against USASF in Texas State Court.

### 1. **The South Carolina Federal Lawsuits**

The complaints in the four (4) federal lawsuits filed in South Carolina are substantially identical. Plaintiffs allege that they are or were involved in the sport of competitive cheer. According to the complaints, the world of competitive cheer as created by the Varsity Defendants[1], USASF, and other defendants is a competitive environment with little adult supervision where young athletes are exposed drugs, alcohol, and predatory conduct by coaches and others. The complaints allege that USASF is controlled and funded by the Varsity Defendants. Plaintiffs claim that specific gyms and coaches "were empowered and placed in positions of trust and authority by the Varsity Defendants," and that the Varsity Defendants knew or should have known that these same coaches and gyms were abusing their athletes. Plaintiffs claim that "the scheme to anoint specific coaches and disregard safety protocols was part of an elaborate plan by the Varsity Defendants to create a pipeline of young athletes" for monetary gain.

Defendant Jeff Webb allegedly founded Varsity Spirit, LLC in the 1980s as a provider of private cheer camps, and then expanded into apparel, organizing competitions and operating sanctioning boards. Varsity Spirit, its affiliates and subsidiaries, allegedly provide branding and merchandise, competitions and camps. Defendants USASF and USA Federation for Sport Cheering d/b/a USA Cheer ("USA Cheer") are in charge of the regulatory side of cheer. Plaintiffs allege that defendant Charlesbank Capital Partners, LP ("Charlesbank") owned the Varsity Defendants from 2014-2018, and that Bain Capital, LP ("Bain") purchased the Varsity Defendants from Charlesbank in 2018 (with Charlesbank retaining a minority stake).

---

[1] The "Varsity Defendants" refers to defendants Varsity Brands Holding Company, Inc., Varsity Spirit, LLC and Varsity Brands, LLC, collectively.

January 31, 2023
P a g e | **3**

USASF was purportedly established by the Varsity Defendants to be the "sanctioning body" that would regulate All-Star cheer by setting guidelines, policies, procedures, and processes to ensure an environment that was safe for young athletes in the private gym sector. Beginning in around 2006, the Varsity Defendants allegedly began promoting certain All-Star (i.e. private) member gyms as being "USASF Certified", which plaintiffs claim is "a seal that the industry represented as synonymous with a warranty that the gym, its coaches and its choreographers were safe, and followed best practices including to prevent athlete abuse." Athletes cheering for Varsity-affiliated gyms are required to buy their uniforms, accessories and other apparel from their gym, which obtains the merchandise from Varsity Defendants. The Varsity Defendants allegedly control every aspect of cheering at every level in the United States, and even own a number of gyms and cheer programs. All-Star athletes competing on behalf of "Varsity-associated" gyms pay monthly or annual fees to the gym as well as annual fees to the Varsity Defendants for competition attendance, uniforms, accessories and other related fees. Gyms and coaches likewise pay monthly or annual fees to USASF, USA Cheer, and the Varsity Defendants.

Plaintiffs in the South Carolina federal lawsuits generally allege sexual molestation and other predatory conduct in connection with a gym located in Greenville, South Carolina named Rockstar Greenville.[2] Rockstar was a private cheer, dance and tumbling gym owned and managed by defendants Scott and Kathy Foster.[3] Plaintiffs allege that Rockstar was certified by USASF as meeting All-Star standards with respect to coach credentials, program quality and athlete safety. Scott and Kathy Foster "enjoyed elevated status among the Varsity Defendants' network." One of Rockstar's teams, Beatles, won Varsity's "coveted World Championship title" in 2018, and was promoted by the Varsity Defendants as "a premier team nationwide." However, Varsity, USASF, USA Cheer, and their owners and affiliates (including defendants Bain Capital, Charlesbank, and Jeff Webb) allegedly "were made aware of serious and disturbing allegations related to many of the Varsity coaches, including Defendant Scott Foster".

The complaints contain the following information specific to each of the plaintiffs:

**John Doe 1**[4] - Plaintiff first met Scott Foster during the 2017-2018 season. Foster subsequently followed John Doe on social media, and began to message him in advance of Varsity's tournament. John Doe understood Foster was asking him to engage in sexual acts at the tournament. John Doe and Foster had their first sexual encounter in **2019**.

**John Doe 2** – Plaintiff joined Rockstar in **2014**. Immediately, defendants Tracy a/k/a or f/k/a Traevon "Trey" Black and Peter Holley, Rockstar coaches, began sexually harassing him and pressured him to go to "the Rockstar house", funded in part through rebates and cash that Scott and Kathy Foster received from the funds paid to Varsity, where the athletes and coaches did drugs and drank alcohol. John Doe was "improperly solicited and subjected to sexual and physical abuse."

**Jane Doe 1** – Plaintiff cheered with Carolina All-Stars. Defendant Scott Foster began coaching Carolina All-Stars when she was 15, and began having sexual discussions with her. When she was 17, she went to a Varsity competition at the University of Louisville, where Foster came into her room and "came onto" her.

---

[2] One of the plaintiffs alleges that she cheered at Carolina All-Stars.
[3] Mr. Foster committed suicide on August 22, 2022.  His Estate is a defendant in the Lawsuits.
[4] The complaints of Jane Does 1-7 and John Does 1-2 are consolidated into a single Lawsuit.

January 31, 2023
P a g e | **4**

**Jane Doe 2** – Plaintiff trained at Rockstar Greenville beginning in **2019**, and was given drugs and alcohol by defendant Scott Foster.

**Jane Doe 3 –** Scott Foster was Plaintiff's coach. When Plaintiff was 15 or 16, she traveled with the team for a competition and multiple people stayed in a single hotel room, including defendant Kenny Feeley, who sexually assaulted her. Feeley raped her again when she was sent to him by Foster for a private lesson.

**Jane Doe 4** - Plaintiff began cheering at Rockstar in **2019**. She was sexually assaulted by defendant Scott Foster.

**Jane Doe 5** – Plaintiff cheered at Rockstar Greenville, where she was sexually assaulted by defendant Josh Guyton, a Rockstar coach.

**Jane Doe 6** - Plaintiff was given a date rape drug by defendant Scott Foster and believes she was sexually assaulted.

**Jane Doe 7** - Plaintiff cheered at Rockstar Greenville, where she was sexually harassed and molested by defendant Nathan Alan Plank, a Rockstar coach. She was also molested and forced to perform oral sex on defendant Christopher Hinton, another coach.

**Jane Doe 8** – Jane Doe 8 began cheering for Rockstar Greenville in 2014. In or around **2015**, when she was 15, she met defendants Joshua Guyton and Traevon Black, and had sex with Guyton. In **2016**, her coach, defendant Christopher Hinton, began sexually harassing her, and molested her.

**Jane Doe 9** – Plaintiff began cheering at Rockville Greenville when she was 13. When she was 15-17, she spent a lot of time at Rockstar house, where she was given alcohol and drugs by adult coaches, including defendant Tracey Black. She engaged in sexual acts. She was sexually assaulted by defendant Josh Guyton in April **2017**.

**John Doe 3** – Plaintiff began cheering at Rockstar in **2014**, where he met defendant Traevon Black. Black engaged in sexual intercourse with plaintiff on numerous occasions in **2014** and **2015**.

All of the South Carolina federal Lawsuits contain the following eleven (11) Counts:

**Count I** – Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. §2255 ("the Sexual Abuse Act") (all defendants). Plaintiffs allege that the Varsity Defendants, USASF, USA Cheer, Charlesbank and Bain held out the gyms, their owners and coaches to be part of a network of safe and trustworthy cheer coaching gyms; that plaintiffs were minors at the time they were sexually abused, exploited, assaulted, transported across state lines for illegal sexual activity and/or used in creating or receiving illegal and obscene digital materials; that this activity violated the Sexual Abuse Act; and that plaintiffs were damaged. Plaintiffs seek compensatory, actual and consequential damages or, in the alternative, liquidated damages of $150,000, punitive damages, attorneys' fees and costs.

January 31, 2023
P a g e | **5**

**Count II** – Civil Conspiracy in Violation of RICO (18 U.S.C. §§ 1962(c) and (d)) (all defendants). Plaintiffs allege that Defendants' conduct constitutes a pattern of racketeering activity, including mail fraud, wire fraud, sexual exploitation of minors and creating obscene materials.[5] Plaintiffs further allege that the gym defendant(s), their owner(s), the Varsity Defendants and USASF formed an Enterprise within the meaning of 18 U.S.C. §1961(4); that Charlesbank and Bain Capital agreed to facilitate this Enterprise by funding the ongoing operation in order to make money; the Enterprise had the common purpose of recklessly, intentionally and willfully endangering the Plaintiffs by exposing them to sexual abuse and exploitation while taking money from them and assuring their parents that the minors were safe; that all of the Defendants in concert with the Enterprise engaged in misleading and fraudulent messaging to children and their families which they knew or should have known endangered the children; that plaintiffs are entitled to compensatory, consequential and punitive damages, attorneys' fees and costs.

**Count III** – Violation of the South Carolina Unfair Trade Practices Act (Varsity Defendants, USA Cheer, USASF, Rockstar and Scott and Kathy Foster). Plaintiffs allege that they entered into a contractual relationship with Defendants, which took fees from Plaintiffs while promising safe environments and vetted coaches; that Defendants knew of complaints of inappropriate or illegal activity with minors, but failed to report it; and that the conduct violates the Unfair Trade Practices Act. Plaintiffs seek compensatory and punitive damages, attorneys' fees and costs.

**Count IV** – Gross Negligence (all defendants). Plaintiff allege that Defendants represented they had rules, policies and procedures intended to address the risks of sexual, physical and mental exploitation of minor athletes by coaches and adults; that they knew of violations to their internal policies, processes, procedures and guidelines related to athlete safety; that they disregarded or failed to report complaints of illegal activity, thus breaching their duty to the minors. Plaintiffs seek compensatory and punitive damages.

**Count V** – Negligent Supervision (Varsity Defendants, USASF, USA Cheer, individual gym and owners). Plaintiffs seek compensatory damages.

**Count VI** - Assault/Battery (individual gyms, owners, coaches).

**Count VII** – Breach of Contract (Varsity and USASF). Plaintiffs allege that they had contracts with the Varsity Defendants and USASF wherein, in exchange for "valuable consideration", Defendants agreed to provide a competitive environment that was safe, secure and free from harm; and that Defendants breached the contracts, rendering the agreements null and void. Plaintiffs seek an order rescinding the contracts and remitting the amounts Plaintiffs paid to defendants during the relevant time frames, as well as attorneys' fees, costs and interest.

---

[5]  The individual complaints contain various combinations of these alleged violations, depending on the facts.

January 31, 2023

P a g e | **6**

**Count VIII** – Unjust Enrichment (Rockstar, Varsity, Bain, USASF, USA Cheer). Plaintiffs allege that they "conferred non-gratuitous benefits" upon Defendants including annual competition and membership fees, payments for uniforms and accessories, private training and others; it would be inequitable to permit Defendants to retain these benefits under the circumstances; and, thus, Plaintiffs seek the return of these benefits as a matter of equity.

**Count IX** –  Fraud (Rockstar, Varsity, USASF, USA Cheer). Plaintiffs allege that they were parties to contracts whereby they agreed to pay Defendants annual and recurring fees in exchange for a safe competitive and training facility, as promised by Defendants; that Defendants knew or had a reckless disregard for whether the environment they provided was safe and free from harm and sexual, physical and mental abuse, and knew they the environment facilitated access to underage athletes by predators, and nevertheless entered into the agreements with Plaintiffs; and that Defendants' misrepresentations and omissions harmed Plaintiffs. Plaintiffs seek an order voiding the agreements, as well as for compensatory damages for physical, psychological and emotional harm, as well as punitive damages.

**Count X** – Negligent Security (Varsity, Bain, Charlesbank, Rockstar, USASF, USA Cheer). Athletes who want to cheer at private all-star gyms, camps and competitions hosted by Defendants had no choice but to attend at the locations, and under conditions, established by Defendants. Defendants received revenue from these events. Defendants undertook to ensure that the locations and events were safe for attendees, but failed to do so, resulting in injuries to plaintiffs. Plaintiffs seek compensatory and punitive damages.

**Count XI** – Civil Conspiracy (all defendants). Plaintiffs allege that Defendants, jointly and severally and in concert, were engaged in the process of recklessly, intentionally and willfully endangering Plaintiffs by exposing them to illegal substance abuse, sexual abuse and exploitations while assuring them and their families that defendants were providing safe conditions and premises for the athletes. Charlesbank and Bain funded this scheme. Defendants were motivated by profit. Defendants knew or should have known about the abuses that were ongoing and should have reported those abuses but instead allowed, endorsed and financially supported the continuation of those acts, all in a scheme to defraud the athletes and their families out of money and property.Plaintiffs seek compensatory and statutory treble damages, and punitive damages.

The complaint in *Jane Doe 1 -7, John Doe 1-2, et al. v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., et al*., Case No. 6:22-cv-02957-HMH, United States District Court for the District of South Carolina, Greenville Division (hereinafter, "The Multi-Plaintiff Lawsuit), contains the same eleven counts as are in the other South Carolina federal lawsuits, but adds a Respondeat Superior Count against the individual gyms and owners. The additional count is denominated Count VI, and all subsequent counts are renumbered accordingly.

2. **The North Carolina Federal Lawsuit**

The complaint in the federal Lawsuit filed in North Carolina is substantially identical to the Lawsuits filed in South Carolina federal court. Plaintiff John Doe 1 alleges that he began

January 31, 2023
P a g e | **7**

cheering in 2013 when he was about 12 years old. When he was 15 or 16 (**2015 or 2016**), he began cheering for Cheer Extreme Raleigh, LLC, owned by defendants Kelly and Randall Helton. Defendants Chase Burns and Shawn Wilson were coaches at Cheer Extreme. An "older male coach" initiated a sexual relationship with him. The owners and coaches were aware of the sexual relationship. Around the same time, plaintiff was sexually harassed by another coach from Extreme Kennersville, which he reported to defendant Burns, who did nothing. He was also sexually harassed by a second coach from Extreme Kennersville.

The complaint contains the same eleven (11) Counts as are asserted in the South Carolina federal lawsuits, as follows:

> **Count I** – Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. §2255 ("the Sexual Abuse Act") (all defendants)
>
> **Count II** – Civil Conspiracy in violation of RICO (18 U.S.C. §§ 1962(c) and (d)) (all defendants)
>
> **Count III** – Violation of the North Carolina Unfair and Deceptive Trade Practices Act N.C.G.S.A. § 75-1.1, et seq. (Varsity, USASF, USA Cheer, Cheer Extreme and Kelly and Randall Helton)
>
> **Count IV** – Gross Negligence (all defendants)
>
> **Count V** – Negligent Supervision (Varsity, USASF, USA Cheer, Cheer Extreme, Kelly and Randall Helton)
>
> **Count VI** – Assault/Battery (Cheer Extreme, Kelly and Randall Helton)
>
> **Count VII** – Breach of Contract (Varsity and USASF)
>
> **Count VIII** – Unjust Enrichment (Cheer Extreme, Varsity, Bain, Charlesbank)
>
> **Count IX** – Fraud (Cheer Extreme, Varsity, USASF)
>
> **Count X** – Negligent Security (Varsity, Cheer Extreme Bain, Charlesbank)
>
> **Count XI** – Civil Conspiracy (all defendants)

### 3. **The Florida Federal Lawsuits**

The complaints in the three (3) federal lawsuits (Jane Does 1-3) filed in Florida are substantially identical. Plaintiffs allege that they cheered at defendant Champion Elite Legacy, LLC ("Champion Elite"), a private cheer and tumbling business located in South Daytona Beach Florida owned by defendant Ashley Hughes, which offered coaching and training services. Plaintiffs allege that they were subject to predatory conduct, including molestation, by defendant Erick Kristianson, a coach employed by Champion Elite in and after 2019. Plaintiffs allege that Champion Elite "was considered a member club and/or working in a consortium with" Varsity, their owners and affiliates (including defendants USASF, USA Cheer, Bain Capital, Charlesbank

January 31, 2023
P a g e | **8**

and Jeff Webb) to expand the network of young athletes for monetary gain. Defendant Kristianson allegedly was considered a certified coach by Varsity, their owners and affiliates. Kristianson, Hughes and Champion Elite allegedly were part of a network of gyms, owners, coaches and vendors "empowered and placed in positions of trust and authority by" Varsity, their owners and affiliates. Plaintiffs claim that Varsity, its owners and affiliates knew or should have known that Kristianson, Hughes and Champion Elite "were engaged in significant misconduct or abuse of minor athletes, or were allowing pervasive abuse and misconduct against minor athletes."

Plaintiffs allege that Varsity Spirit, LLC owns defendants USA Cheer and USASF, which "were responsible for creating and enforcing guidelines, policies, procedures and processes for reporting coaches for misconduct and taking appropriate action for that misconduct." USASF allegedly began "certifying" certain cheer gyms with a seal of approval that warranted the gym and coaching staff could be trusted for cheerleading safety. USASF also allegedly "credentialed coaches of certified gyms, requiring that these coaches register with USASF", thereby "certifying that the coaches were safe and green-lighting the coaches as participants in USASF-sanctioned events, camps, clinics and competitions."

Defendant Charles Webb allegedly created, owned, operated and controlled the Varsity Defendants. Defendant Charlesbank allegedly owned the Varsity Defendants from 2014 to 2018, when Bain purchased Varsity from Charlesbank.

Jane Does 1-3 allege that they began cheering at Champion Elite in **2020, 2019** and **2017**, respectively, and were sexually molested by defendant Kristianson beginning in **2022, 2020** and **2022**, respectively. Kristianson allegedly was arrested in Kansas on August 4, 2022, and was released on a $300,000 bond awaiting trial.

The complaints contain twelve Counts, as follows:

> **Count I** – Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. §2255 ("the Sexual Abuse Act") (all defendants).

> **Count II** – Civil Conspiracy in violation of RICO (18 U.S.C. §§ 1962(c) and (d)) (all defendants)

> **Count III** – Gross Negligence (all defendants)

> **Count IV** – Negligent Supervision (Varsity, USASF, USA Cheer, Champion Elite, Hughes)

> **Count V** – Assault/Battery (Champion Elite, Hughes, Kristianson)

> **Count VI** – Breach of Contract (Varsity, USASF, Champion Elite)

> **Count VII** – Unjust Enrichment (Champion Elite, Varsity, Bain, Charlesbank)

> **Count VIII** – Fraud (Champion Elite, Varsity, USASF)

January 31, 2023
P a g e | **9**

      **Count IX** – Negligent Security (Varsity, Champion Elite, Bain, Charlesbank)

      **Count X** – Civil Conspiracy (all defendants)

      **Count XI** – Respondeat Superior (Champion Elite)

      **Count XII** – Intentional Infliction of Emotional Distress (all defendants)

With respect to all counts, plaintiffs seek compensatory, actual and consequential damages; punitive damages; liquidated damages as to Count I; and attorneys' fees.

### 4. <u>**The Georgia Federal Lawsuit**</u>

The complaint in the Georgia federal lawsuit is substantially similar to the complaints in the federal North Carolina, South Carolina and Florida actions. Plaintiff alleges that in **2020**, he began cheering at defendant Stingray Cheer Company, Inc., a private all-star cheer and tumbling business located in Kennesaw and Marietta Georgia owned by defendant Jones, offering coaching and training services. Plaintiff alleges that on December 4, 2020, he was raped by defendant Robert Stone, a cheerleader and coach at Stingray. Plaintiff alleges that although Stingray employees Joel Kreider, David Jones and Juan Carlos Realpe knew of the incident, they failed to report it.

The complaint contains the following eleven Counts:

      **Count I** – Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. §2255 ("the Sexual Abuse Act") (all defendants).

      **Count II** – Civil Conspiracy in violation of RICO (18 U.S.C. §§ 1962(c) and (d)) (all defendants)

      **Count III** – Gross Negligence (all defendants)

      **Count IV** – Negligent Supervision (Varsity, USASF, USA Cheer, Stingray, Jones)

      **Count V** – Assault/Battery (Stingray, Jones, Stone)

      **Count VI** – Respondeat Superior (Stingray, Jones)

      **Count VII** – Breach of Contract (Varsity, USASF, Stingray)

      **Count VIII** – Unjust Enrichment (Stingray, Varsity, Bain, Charlesbank)

      **Count IX** – Fraud (Stingray, Varsity, USASF)

      **Count X** – Negligent Security (Varsity, Stingray, Bain, Charlesbank)

      **Count XI** – Civil Conspiracy (all defendants)

January 31, 2023
P a g e | **10**

Plaintiff seeks compensatory and punitive damages; liquidated damages as to Count I; statutory trebled damages; and attorneys' fees and costs.

### 5. **The Tennessee Federal Lawsuit**

The complaint in the federal Tennessee lawsuit is substantially similar to the complaints in the federal North Carolina, South Carolina and Florida lawsuits. Plaintiffs John Does 1 and 2 allege that in **2020** and **2018**, respectively, they began cheering at defendant Premier Athletics, a coaching and training business managed by defendant Susan Traylor. Plaintiffs allege that they met defendant Frizzell at Premier Athletics and that he engaged in a pattern of sexual abuse beginning in **2022** and **2018**, respectively. Plaintiffs allege that Premier Athletics, by and through Ms. Traylor, allowed Mr. Frizzell to emotionally, physically and sexually exploit and abuse them, all while under the control and putative authority of the Varsity Defendants, its owners and affiliates.

The complaint contains the following eleven Counts:

**Count I** – Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. §2255 ("the Sexual Abuse Act") (all defendants)

**Count II** – Civil Conspiracy in violation of RICO (18 U.S.C. §§ 1962(c) and (d)) (all defendants)

**Count III** – Gross Negligence (all defendants)

**Count IV** – Negligent Supervision (Varsity, USASF, USA Cheer, Premier Athletics, Traylor)

**Count V** – Respondeat Superior (Premier Athletics)

**Count VI** – Assault/Battery (Frizzell, unknown defendants)

**Count VII** – Breach of Contract (Varsity, USASF)

**Count VIII** – Unjust Enrichment (Premier Athletics, Varsity, Bain, USASF, USA Cheer)

**Count IX** – Fraud (Premier Athletics, Varsity, USASF, USA Cheer)

**Count X** – Negligent Security (Varsity, Premier Athletics, Bain, Charlesbank, USASF, USA Cheer)

**Count XI** – Intentional Infliction of Emotional Distress (all defendants)

Plaintiff seeks compensatory and punitive damages; liquidated damages as to Count I; statutory trebled damages; and attorneys' fees and costs.

### 6. **The Ohio Federal Lawsuit**

January 31, 2023
P a g e | **11**

The complaint in the federal Ohio lawsuit is substantially similar to the complaints in the federal North Carolina, South Carolina, Florida and Tennessee lawsuits. The complaint alleges that Plaintiff was involved in the sport of competitive cheer and was a member of private gyms in Avondale, Ohio (2014) and Brecksville, Ohio (2015), and further, that these gyms contracted with defendants ShowPro, Davis and Hale to provide choreography services. Defendants Hale, Davis and ShowPro are alleged to have been credentialed members of USASF (coaches and/or members) or authorized by USASF to conduct business. Plaintiff alleges that Hale/Davis "systematically groomed and sexually abused Plaintiff" commencing in 2014. Beginning in 2016, defendants Hale/Davis began to exchange messages with Plaintiff (via an app). On or around July 28, 2016 (when Plaintiff was 17 years old), Hale and Davis returned to Ohio to provide services to Plaintiff's former gym. In **July 2016**, fully aware that Plaintiff was a minor and a USASF member, Davis/Hale exchanged messages with Plaintiff and pressed Plaintiff to come to their hotel room in Westlake, Ohio. Plaintiff went to the hotel room; Defendants offered liquor (Plaintiff refused); and Defendants commenced to have sex with Plaintiff. Accordingly to the report provided to law enforcement, defendants Hale/Davis had sex with Plaintiff multiple times. Davis was age 24 and Hale was age 25 at the time of the incident. Plaintiff anonymously reported the incident in June of 2020 and made a formal report to USASF on June 25, 2020. USASF contacted Ohio law enforcement. On July 30, 2020, Plaintiff was informed that Ohio law enforcement would not pursue charges against Hale/Davis because Plaintiff was over 16 years of age at the time of the incident.

The complaint sets forth the following causes of action:

**Count I** – Violation of the Protecting Young Victims From Sexual Abuse Act, 18 U.S.C. § 2255 (all defendants)

**Count II** – Civil Conspiracy in Violation of the RICO Act Pursuant to 18 U.S.C. § 1962(c) and § 1962(d) (all defendants)

**Count III** – Gross Negligence (all defendants)

**Count IV** – Negligent Supervision (Varsity Defendants; USASF, USA Cheer, ShowPro)

**Count V** – Assault/Battery (ShowPro, Hale, Davis)

**Count VI** – Breach of Contract (Varsity Defendants and USASF)

**Count VII** – Unjust Enrichment (Varsity Defendants, ShowPro, Bain Capital, Charlesbank)

**Count VIII** – Fraud (Varsity Defendants and USASF)

**Count IX** – Negligent Security (Varsity Defendants, ShowPro, Bain Capital, Charlesbank)

**Count X** – Civil Conspiracy (all defendants)

**Count XI** – Respondeat Superior (USASF, ShowPro)

**Count XII** – Intentional Infliction of Emotional Distress (all defendants)

**Count XIII** – Violation of Consumer Sales Practice Act, R.C. 1345.02(A) (Varsity Defendants, USASF, ShowPro)

Plaintiff seeks compensatory and punitive damages; liquidated damages as to Count I; statutory trebled damages; and attorneys' fees and costs.

### 7. <u>The South Carolina State Court Lawsuit</u>

In the South Carolina state court complaint, plaintiff Jane Doe alleges that Scott Foster was the coach for the team and owner of the gym where she trained and competed in competitions put on by defendants USASF and Varsity Spirit, LLC under the banner of Rockstar Cheer and Dance. Beginning in **2020**, defendant Foster engaged in a pattern of sexual abuse and molestation against plaintiff. Plaintiff alleges that Rockstar and Foster were both members of USASF and Varsity, and that USASF and Varsity received complaints about Foster's conduct, but failed to act in a reasonable manner. She seeks actual and punitive damages from the Estate of Scott Foster, Rockstar Cheer and Dance Inc., Varsity Spirit LLC, USASF and The National Center for Safety Initiatives, LLC, based on allegations of battery, negligence, respondeat superior, breach of fiduciary duty (Rockstar), constructive fraud (Rockstar), intentional infliction of emotional distress (Foster), negligent hiring, training supervision and retention (Rockstar), and failure to warn (Rockstar, Varsity and USASF).

### 8. <u>The Texas State Court Lawsuit</u>

In the Texas state court complaint, plaintiffs Hannah Gerlacher and Jessica Gerlacher, twin sisters, allege that they are current national level cheer athletes who were members of Cheer Athletics gyms. Cheer Athletics competes with Varsity for enrollment and operates a dozen gyms across the country. Defendant McCartney was a Cheer Athletics coach, trainer, and mentor. Plaintiffs took private lessons with McCartney, who Plaintiffs alleged repeatedly engaged in inappropriate and unlawful sexual contact with the Plaintiffs, beginning in **2015**. Plaintiffs eventually filed a general/joint complaint with USASF on its website and allege that Defendant took no action. McCartney was not suspended and continues to coach there.

The complaint sets forth the following causes of action:

**Count A** – Sexual Assault, Assault, and Battery (McCartney)

**Count B** – Negligence (all defendants)

**Count C** – Agency, Respondeat Superior and Vicarious Liability (all defendants)

**Count D** – Negligent Hiring, Retention, Training Screening, and Supervision and Failure to Warn (all defendants)

**Count E** – Intentional Infliction of Emotional Distress (McCartney)

January 31, 2023
P a g e | **13**

**Count F** – Gross Negligence (all defendants)

Plaintiffs seek damages compensatory damages, punitive damages, and exemplary damages.

## **The Primary Policies**

Greenwich issued the following three commercial general liability policies to US All Star Federation dba IASF (collectively, the "Primary Policies"):

> ASG0896965 (10/22/14-15)
> ASG089696501 (10/22/15-16)
> ASG089696502 (10/22/16-17)

Pursuant to Section II – Who Is An Insured, executive officers and directors are insureds, but only with respect to their duties as officers and directors.

Via Commercial General Liability Extension Endorsement, Section II – Who Is An Insured is amended to include as insureds:

> 4.  Any person or organization with respect to their liability arising out of:
>     a.  Their financial control of you; . . .

Each of the Primary Policies has limits of $1 million each occurrence, $1 million personal and advertising injury (any one person or organization), $5 million general aggregate (other than Products-Completed Operations), and $5 million products/completed operations aggregate.

The Insured's Business Description is stated as "Camps/Clinics."

The Primary Policies are substantially identical. The Insuring Agreement of Section I – Coverages, Coverage A - Bodily Injury and Property Damage Liability of the policies provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" occurring during the policy period caused by an "occurrence". The Insuring Agreement of Section I – Coverages, Coverage B - Personal and Advertising Injury Liability provides coverage for **"personal and advertising injury"** caused by certain enumerated offenses arising out of the insured's business. The claims at issue in this matter do not implicate Coverage B.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Via the Commercial General Liability Extension Endorsement, "bodily Injury" is defined as "bodily injury, sickness or disease sustained by a person, and includes mental anguish, mental injury, shock or humiliation resulting from these. Except for mental anguish, mental injury, shock or humiliation, "bodily injury" also includes death resulting from such bodily injury, sickness or disease."

January 31, 2023
P a g e | **14**

Pursuant to an Abuse and Molestation endorsement (discussed below), "bodily injury" is defined as follows:

> "Bodily injury" means bodily injury, mental anguish, shock, mental injury, humiliation, sickness or disease sustained by a person, including death resulting from any bodily injury, sickness or disease at any time. 'Bodily injury' also includes mental anguish or emotional distress if such mental anguish or emotional distress:
>
> a. Directly results from physical contact during a 'sexual abuse occurrence'; or
> b. Directly results from the claimant actually witnessing a 'sexual abuse occurrence' whether or not there is physical contact between the claimant and the perpetrators.

"Personal and Advertising Injury," as modified by the Commercial General Liability Extension Endorsement, is defined as injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
> b. Malicious prosecution or abuse of process;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises. . . ;
> d. Oral or written publication . . . of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication . . . of material that violates a person's right to privacy;
> f. The use of another's advertising idea in your 'advertisement'' or
> g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'
> h. Discrimination based on race, color, religion, sex, age or national origin . . .

The following Coverage A exclusions are potentially relevant:

> This insurance does not apply to:
>
> a. **Expected or Intended Injury**
>
> > "Bodily injury" . . . expected or intended from the standpoint of the insured . . . .
>
> b. **Contractual Liability**
>
> > "Bodily injury" . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> >
> > (1) That the insured would have in the absence of the contract or agreement; . . .
>
> > \*       \*       \*
>
> o. Personal and Advertising Injury

January 31, 2023

P a g e | **15**

> "Bodily injury" arising out of "personal and advertising injury".

The following Coverage B exclusions are potentially relevant:

> This insurance does not apply to:

> > a.  Knowing Violation of Rights of Another

> > "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

> > d.  Criminal Acts

> > "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

> > f.  Breach Of Contract

> > "Personal and advertising injury" arising out of a breach of contract . . .

The Primary Policies contain the following Abuse and Molestation Exclusion Endorsement to both Section I – Coverage A and Section I – Coverage B, which states:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

> **1.** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

> **2.** The negligent:
> > **a.** Employment;
> > **b.** Investigation;
> > **c.** Supervision;
> > **d.** Reporting to the proper authorities, or failure to so report; or
> > **e.** Retention;

> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

In addition, the policies contain a Child Care or Supervision Exclusion Endorsement, which excludes coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children."

By endorsement entitled "Changes In Other Insurance Condition", Paragraph 4. Of Section IV Commercial General Liability Conditions is deleted and replaced with the following:

January 31, 2023
P a g e | **16**

4. Other Insurance
If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, this insurance is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis

**<u>The Excess Policies</u>**

Greenwich issued three commercial excess liability policies to US All Star Federation dba IASF (collectively, the "Excess Policies"):

ASX0896975 (10/22/14-15)
ASX089697501 (10/22/15-16)
ASX089697502 (10/22/16-17)

Each of the Excess Policies has limits of $2 million each occurrence, $2 million general aggregate, and $2 million products/completed work hazard aggregate.

The Excess Policies provide excess liability coverage under Coverage E – Excess Liability for:

1) "bodily injury" or "property damage" that:

a)    is caused by an "occurrence" that takes place in the "coverage territory";
b)    occurs during the policy period of this policy; and
c)    is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

2) "personal and advertising injury" that:

a)    arises out of an offense committed in the course of "your" business if the offense is committed:

(1) within the "coverage territory"; and
(2) during the policy period of this policy; and

b)    is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, or judgments; and

3)    any other injury or damage that:

a)    arises out of a negligent act, error, omission, injury, event, incident, or offense; and

January 31, 2023
P a g e | **17**

    b)    is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

The Excess Liability coverage excludes "injury or damage that is not covered by 'underlying insurance' for any reason other than exhaustion of its 'limit'."

The Excess Policies define bodily injury as follows:

    "Bodily injury" means bodily harm, sickness, or disease sustained by a person. "Bodily Injury" includes death that results at any time from bodily harm, sickness, or disease.

    However, "bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from physical injury, sickness, or disease.

The Excess Policies define "Occurrence" as "an accident and includes continuous or repeated exposures to similar conditions."

 "Insured" is defined as including "persons or organizations included as 'insureds' or additional insureds in 'underlying insurance'."

### DECLINATION WITH RESPECT
### TO THE LAWSUITS
### <u>IDENTIFIED ON EXHIBIT B</u>

The claims asserted by plaintiffs in the five (5) federal lawsuits filed in Florida, Georgia and Tennessee and the lawsuit filed in South Carolina state court (see Exhibit B to this letter) involve incidents that occurred in and after 2018. The last Greenwich policy expired on October 22, 2017. Accordingly, Greenwich declines coverage for the lawsuits identified on Exhibit B.

### DECLINATION WITH RESPECT
### TO JOHN DOE 1 AND JANE DOES 2 AND 4 IN
### THE MULTI-PLAINTIFF SOUTH CAROLINA
### <u>FEDERAL COURT LAWSUIT</u>

The South Carolina Multi-Plaintiff Lawsuit was brought by nine (9) plaintiffs, Jane Does 1-7 and John Does 1-2. The claims asserted by John Doe 1 and Jane Does 2 and 4 involve incidents that took place in and after 2019, after the expiration of the Greenwich policies. Accordingly, Greenwich declines coverage under the policies for these claims.

The complaint in the Multi-Plaintiff Lawsuit does not identify the dates when the incidents complained of by Jane Does 1, 3, 5, 6 and 7 took place. In addition to the reservation of rights set forth below, Greenwich reserves its right to decline coverage for the claims of Jane Does 1, 3, 5, 6 and 7 should it be determined that the incidents complained of took place after the expiration

January 31, 2023
P a g e | **18**

of the Greenwich policies.

### PARTIAL DECLINATION AND
### RESERVATION OF RIGHTS
### WITH RESPECT TO LAWSUITS
### <u>IDENTIFIED ON EXHIBIT A</u>

USASF is identified as the Insured on the Greenwich policies. Via the Commercial General Liability Extension Endorsement to the Primary Policies, Section II – Who Is An Insured was amended to include as insureds "Any person or organization with respect to their liability arising out of . . . [t]heir financial control of you . . . ." Plaintiffs in the Lawsuits variously allege that USASF is controlled and funded by the Varsity Defendants and/or defendant Jeff Webb. Plaintiffs further allege that the Varsity Defendants were owned by defendant Charlesbank from 2014-2018, and that Charlesbank thus owned USASF. If these allegations are correct, the Varsity Defendants and/or Charlesbank may be Insureds under the Primary Policies to the extent that their liability, if any, arises out of their financial control of USASF during the policy periods. **Please provide Greenwich with documents demonstrating the relationship between USASF, the Varsity Defendants, and Charlesbank during the Greenwich policy periods, as well as information regarding other insurance available to those entities.** Pending receipt and review of such information, Greenwich reserves all of its rights with respect to coverage for the Varsity Defendants and/or Charlesbank under the Greenwich policies.

Plaintiffs also allege that Jeff Webb founded USASF and that remains involved with the entity. Pursuant to Section II – Who Is An Insured of the Primary Policies, executive officers and directors of USASF are insureds, but only with respect to their duties as officers and directors. Additionally, "employees" other than "executive officers" are insureds, but only for acts within the scope of their employment by the insured or while performing duties related to the conduct of the insured's business.  It is unclear if Jeff Webb was an executive officer or director of USASF during the Greenwich policy periods. **Please provide Greenwich with documents demonstrating the relationship between Mr. Webb and USASF during the Greenwich policy periods.** Pending receipt and review of such information, Greenwich reserves all of its rights with respect to coverage for Mr. Webb under the Greenwich policies.

The Primary Policies are excess to any other coverage available to an insured, whether on a primary, excess or other basis. Thus, should defendants Jeff Webb, the Varsity Defendants and/or Charlesbank be determined to be insureds under the Primary Policies, the policies would provide excess coverage only.

Coverage B of the Primary Policies provides coverage for "personal and advertising injury" caused by certain enumerated offenses arising out of the Insured's business. None of the enumerated offenses are implicated by the claims in the Lawsuits. Accordingly, there is no coverage under Coverage B of the policies for the awsuits.  Further, coverage under Coverage B would be excluded by the Coverage B exclusions for Knowing Violation of Rights of Another (Exclusion a), Criminal Acts (Exclusion d), and Contractual Liability (Exclusion e).

a.      <u>**Federal Court Lawsuits Listed on Exhibit A**</u>

January 31, 2023
P a g e | **19**

There is no coverage under the Primary Policies for the claims in the North Carolina, South Carolina and Ohio federal lawsuits seeking damages under the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. § 2255 ("the Sexual Abuse Act"). In support of these claims, Plaintiffs allege that they were sexually abused, exploited, transported across state lines for illegal sexual activity and used in creating or receiving illegal and obscene digital material. Plaintiffs also allege that the abuse occurred at "events", as defined in the statute. Plaintiffs allege that the gyms, their owners and others were held out by the Varsity Defendants, USASF, USA Cheer, Charlesbank and Bain as being members and part of a network of safe and trustworthy cheer coaching gyms, and thus the acts complained of were "enabled by the ongoing certification and ratification of" the Varsity Defendants, USASF, USA Cheer and Charlesbank. Plaintiffs further allege that the Varsity Defendants, USASF, and USA Cheer knew or should have known of the alleged abuse and failed to report it; that they were not appropriately enforcing policies, processes, and procedures related to athlete safety; and that they were hosting events without regard for and in contravention to the safety of student athletes.

Plaintiffs do not allege that USASF employed the alleged perpetrators, that they owned the gyms that employed those perpetrators, or that the abuse took place at any premises owned or controlled by the Insured. Plaintiffs do not assert any claim for vicarious liability against USASF. Plaintiffs do not allege that the gyms are (or were) franchises of the Insured.

These claims do not allege an "occurrence" as defined in the Primary Policies. Sexual abuse and assault, sexual exploitation, transportation across state lines for illegal sexual activity, and use in creating or receiving illegal and obscene digital materials is not an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Instead, the allegations supporting the Sexual Abuse Act violation claims involve intentional acts, which are not an "occurrence" under the policies. The claims are further excluded from coverage by Coverage A, Exclusion a., which excludes coverage for "Expected or Intended Injury."

In addition, a failure to report suspected abuse is not an "occurrence" as it is not an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

To the extent that these claims allege that USASF was legally responsible for any person who abused or molested, or threatened the abuse or molestation of any plaintiff, they are also excluded from coverage by the Abuse or Molestation Exclusion in the Primary Policies, which bars coverage for "bodily injury" arising out of negligent employment, investigation, supervision, reporting or failure to report, or retention.

There is no coverage for the claims alleging Civil Conspiracy in Violation of RICO 18 U.S.C. §§ 1962(c) and (d). Plaintiffs allege that defendants formed "an association-in-fact" Enterprise, which Charlesbank and Bain funded for financial benefit, for the purpose of . . . endanger[ing] [them] . . . by exposing [them] to illegal sexual abuse and exploitation of children while assuring [their] parents [they were ] safe in order to take their money." Defendants allegedly knew or should have known of the inappropriate contact between coaches and minor athletes "based on the one-on-one coaching being marketed and the travel of these children across state lines with the coaches who stayed in hotel rooms with them and had been rumored, and even captured on camera, engaged in illegal and inappropriate acts with the minors." Defendants allegedly "acted in concert to commit the predicate acts of child sexual exploitation, kidnapping, dealing in obscene materials involving minors, mail fraud and wire fraud". Plaintiffs itemize certain

January 31, 2023
P a g e | **20**

fraudulent mail and/or wire messages that support their allegations of wire and mail fraud, many of which took place after the last Greenwich policy expired.

The allegations supporting the RICO claims are of intentional acts, which are not an "occurrence" under the policies. The claims are further excluded from coverage by Coverage A, Exclusion a., which excludes coverage for "Expected or Intended Injury".

There is no coverage under the Primary Policies for the South Carolina, North Carolina and Ohio Unfair Trade Practices / Consumer Sales Practices claims. Plaintiffs allege that they had a contract with the Defendants pursuant to which the Defendants took membership fees for training, competition and travel while promising safe environments and vetted coaches, but instead Defendants knowingly subjected them to sexual and financial abuse and exploitation, and failed to report the acts of abuse. These claims are premised upon a breach of contract. To the extent that Plaintiffs seek only monetary (and punitive) damages as a result of the breach, the claims do not allege "bodily injury" or an "occurrence", and thus are not covered under Coverage A. To the extent that Plaintiffs are alleging that USASF assumed, in a contract or agreement, liability for Plaintiffs' alleged "bodily injuries", such claims are barred by Coverage A, Exclusion b. (Contractual Liability). Further, the claims allege intentional conduct (i.e., that Defendants knew of the inappropriate conduct and failed to act). Intentional acts are not an "occurrence", as defined in the policies, and are further excluded from coverage by Coverage A, Exclusion a. (Expected or Intended Injury).

There is no coverage under the Primary Policies for the Negligent Supervision claims. Plaintiffs allege that certain individual Plaintiffs were subjected to sexual abuse, assault and battery, and who were transported across state lines for the purpose of sexual exploitation; yet, Defendants continued to let the gyms operate and failed to report the criminal activities to law enforcement. Specifically, Plaintiffs allege that Defendants breached a duty owed by failing to act or disregarding reports of abuse of minors and allowing coaches who were accused of such conduct to remain working with minor athletes or to transfer to other gyms without notifying their current gym of the allegations. The Abuse or Molestation Exclusion in the Primary Policies excludes coverage for negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible. Further, the claims allege intentional conduct (i.e., that Defendants knew of the inappropriate conduct and failed to act). Intentional acts are not an "occurrence", as defined in the policies, and are further excluded from coverage by Coverage A, Exclusion a. (Expected or Intended Injury).

There is no coverage under the Primary Policies for the Breach of Contract claims. Plaintiffs allege that they had contracts with the Varsity Defendants and USASF wherein, in exchange for "valuable consideration", Defendants agreed to provide a competitive environment that was safe, secure and free from harm; and that Defendants breached the contracts, rendering the agreements null and void. Plaintiffs seek an order rescinding the contracts and remitting the amounts they paid to Defendants during the relevant time frames, as well as attorneys' fees, costs and interest. These claims do not seek damages for "bodily injury" or "property damage", nor do they allege an "occurrence." Further, Coverage A, Exclusion b. (Contractual Liability) may bar coverage for these claims.

January 31, 2023
P a g e | **21**

The complaint in *Jane Doe 1-7, John Doe 1-2, et al. v. Varsity Brands, LLC*, et al., Case No. 6:22-cv-02957-HMH, United States District Court for the District of South Carolina, Greenville Division, asserts a claim for Unjust Enrichment against USASF. There is no coverage for this claim under the Primary Policies. Plaintiffs allege that they "conferred non-gratuitous benefits" upon the Varsity Defendants, Charlesbank, USASF, USA Cheer and the gyms, through annual competition and membership fees, payments for uniforms and accessories, private training and others, and that it would be inequitable to permit defendants to retain these benefits under the circumstances. Plaintiffs seek the return of these "benefits". This claim is essentially a recast of the breach of contract claims. Because this claim does not seek damages because of "bodily injury" or "property damage" caused by an "occurrence", there is no coverage for the claims under the Primary Policies.

There is no coverage under the Primary Policies for the Fraud claims. Such claims require intent to deceive, which is not an "occurrence" under the policies. Moreover, Plaintiffs do not seek damages because of "bodily injury." The claims are also barred by the policy exclusion for injuries that are expected or intended (Coverage A, Exclusion a.).

There is no coverage under the Primary Policies for the Civil Conspiracy claims. Because a civil conspiracy requires intent to injure, the claims do not allege an "occurrence" under the policies. The claims also are barred by the policy exclusion for injuries that are expected or intended (Coverage A, Exclusion a.).

The Ohio complaint asserts a claim for Intentional Infliction of Emotional Distress. There is no coverage under the Primary Policies for this claim, as it requires an intent to injure, which is not an "occurrence" under the policies.. The claim is also barred by the policy exclusion for injuries that are expected or intended (Coverage A, exclusion a.).

The Ohio complaint asserts a claim for Respondeat Superior against USASF. Plaintiff alleges that USASF employed and retained certain individuals, including Amy Clark and Ginger Wilczak, to provide safety and regulatory services, including conducting investigations intended to prevent and mitigate athlete harm in USASF cheer. Plaintiff further alleges that USASF failed to properly train, supervise, provide monitoring, report, and/or to implement its policies, procedures, and guidelines, thereby increasing the likelihood of bodily injury and harm to athletes such as Plaintiff, and resulting in physical and emotional injuries to Plaintiff. To the extent that this claim alleges negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible in connection with the actual or threatened abuse or molestation of any person in his/her care, custody or control, it is excluded by the Abuse or Molestation Exclusion in the Primary Policies. Further, to the extent this claim relates to the actions of Amy Clark and Ginger Wilczak, the allegations supporting the claims relating to their conduct appear to be outside the policy periods of the Primary Policies. Greenwich reserves all of its rights with respect to this claim, including the right to decline coverage for the claim should the facts so warrant.

Greenwich reserves its rights with regard to the Gross Negligence claims. Plaintiffs allege that Defendants have been responsible for the safety, health, and welfare of the minor athletes who were members of USASF and "under the care, custody, and control of each of the Defendants". Plaintiffs allege that Defendants "created rules specifically intended to address the risks of

January 31, 2023
P a g e | **22**

sexual, physical, and mental exploitation of minor athletes by coaches, and adults who come into contact with the athletes by virtue of the adults' position of power" but that violations of the rules related to athlete safety and harm from sexual, physical and emotional abuse happened regularly at USASF certified gyms by USASF certified coaches. Plaintiffs allege that Defendants' actions and omissions "were unreasonable, constituted the total absence of care, and breached duties owed to Plaintiffs" and "were in violation of Defendants' own policies".

The Gross Negligence claims are premised upon a duty allegedly owed to the plaintiffs by the gyms, their owners and employees, and by USASF as a result of their "certification" of private coaches and gyms.  To the extent the gross negligence claims involve negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible, in connection with the actual or threatened abuse or molestation of any person in his/her care, custody or control, the claims are excluded from coverage under the Primary Policies by the Abuse or Molestation Exclusion. To the extent the claims are premised on the alleged sexual abuse and molestation, the Primary Policies exclude bodily injury arising out of "the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured". Moreover, the Primary Policies provide no coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children."  Accordingly, Greenwich reserves the right to decline coverage for the gross negligence claims to the extent that the facts reveal that such claims are barred by the Abuse or Molestation Exclusion and/or the Child Care or Supervision Exclusion Endorsement in the Primary Policies. Greenwich specifically reserves the right to seek a judicial determination of its obligations under the policies with respect to the Abuse or Molestation Exclusion ad/or the Child Care or Supervision Exclusion Endorsement, among other provisions.

> ### b.    _Texas State Court Lawsuit_

There is no coverage under the Primary Policies for the Negligent Hiring, Retention, Training, Screening and Supervision, and Failure to Warn claim in the Texas state court lawsuit.  Plaintiffs allege that Defendants failed to properly screen, hire and train their coaches, including defendant McCartney and that Defendants should have known that McCartney should not have been interacting with minor athletes but allowed him to do so, which constitutes a failure to adequately investigate, regulate, monitor, and supervise McCartney. Such claims are barred by the Abuse or Molestation Exclusion in the Primary Policies, which excludes coverage for negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible. Further, to the extent that the claim alleges intentional conduct (i.e., that Defendants knew of the inappropriate conduct and failed to act), there is no coverage under the Primary Policies. Intentional acts are not an "occurrence", as defined in the policies, and are further excluded from coverage by Coverage A, Exclusion a. (Expected or Intended Injury).

There is no coverage under the Primary Policies for the Agency/Respondeat Superior/Vicarious Liability claim in the Texas lawsuit. Plaintiffs allege that "Defendants are responsible for the conduct of their coaches, employees, and/or agents due to the relationship that existed. . ."  Such claims are barred by the Abuse or Molestation Exclusion in the Primary Policies, which excludes coverage for negligent: employment; investigation; supervision; reporting to the proper authorities,

January 31, 2023
P a g e | **23**

or failure to so report; or retention of a person for whom any insured is or ever was legally responsible.

Greenwich reserves its rights with regard to the Gross Negligence claim in the Texas lawsuit. Plaintiffs allege that Defendants had actual knowledge of the risk involved, but nevertheless proceeding in conscious indifference to the safety and/or welfare of others, including Plaintiffs. To the extent the gross negligence claim involves negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible, in connection with the actual or threatened abuse or molestation of any person in his/her care, custody or control, it is excluded from coverage under the Primary Policies by the Abuse or Molestation Exclusion. To the extent the claim is premised on the alleged sexual abuse and molestation, the Primary Policies exclude bodily injury arising out of "the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured". Moreover, the Primary Policies provide no coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children." Accordingly, Greenwich reserves the right to decline coverage for the gross negligence claim to the extent that the facts reveal that the claim is barred by the Abuse or Molestation Exclusion and/or the Child Care or Supervision Exclusion Endorsement in the Primary Policies.

Plaintiffs in the Texas lawsuit also assert a claim for Negligence against all defendants. Plaintiffs allege that Defendants breached the duty of reasonable care owed to Plaintiffs through their failure to: (i) exercise reasonable care; (ii) properly screen, retain, hire, train, and/or supervise; (iii) promulgate effective safety policies; (iv) protect minor athletes; (v) properly investigate; (vi) notify; (vii) ensure safety policies and procedures were followed; (viii) ensure safety policies and procedures were enforced; and (ix) exercise reasonable control over employees, agents and/or contractors. To the extent the allegations supporting Plaintiffs' negligence claims involve negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible, in connection with the actual or threatened abuse or molestation of any person in his/her care, custody or control, it is excluded from coverage under the Primary Policies by the Abuse or Molestation Exclusion. To the extent the claim is premised on the alleged sexual abuse and molestation, the Primary Policies exclude bodily injury arising out of "the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured". Greenwich reserves all of its rights with respect to the Negligence claim, including the right to decline coverage under the Primary Policies should the facts so warrant. Greenwich specifically reserves the right to seek a judicial determination of its obligations under the policies with respect to the Abuse or Molestation Exclusion ad/or the Child Care or Supervision Exclusion Endorsement, among other provisions.

**c.**   ***The Excess Policies***

The Excess Policies provide coverage for "bodily injury" that, among other things, "is covered by 'underlying insurance' or that would have been covered by 'underlying insurance' but for the exhaustion of 'underlying insurance' 'limits'. . .", the above analysis applies to the Excess Policies as well. As the Excess Policies have not yet been triggered, Greenwich reserves all rights in connection with same.

January 31, 2023
P a g e | **24**

Any payments that may be made by Greenwich in connection with the Lawsuits are subject to the applicable limits of liability.

Notwithstanding the foregoing, Greenwich will participate in the defense of USASF under the applicable Primary Policies in the North Carolina, South Carolina and Ohio federal lawsuits and the Texas state lawsuit listed on Exhibit A hereto, pursuant to a full reservation of its rights under the terms, provisions and exclusions of the Greenwich policies, whether or not expressly set forth in this letter, including without limitation the right to decline coverage for any damages that may be awarded to the plaintiffs in the Lawsuits.

Furthermore, should it ultimately be determined by a court of competent jurisdiction that the acts/omissions giving rise to the Lawsuits fall outside the scope of, or are otherwise excluded from, coverage under the policies, Greenwich reserves the right to seek reimbursement from USASF for all attorneys' fees and costs expended by Greenwich on behalf of USASF in providing them a defense to the Lawsuits.

We ask that you provide us information regarding any other coverage available to USASF, and advise whether this matter has been tendered to other insurers. If USASF has not already done so, Greenwich requests that they tender the lawsuits to all insurers whose policies are potentially triggered.

In connection with Greenwich's continuing investigation of this matter, Greenwich requests that you provide the following documents and information at your earliest convenience:

1. Documents and information demonstrating the corporate relationship, if any, between Jeff Webb and USASF.
2. Documents and information demonstrating the corporate relationship, if any, between USASF and Charlesbank.
3. Documents, including emails and letters, between USASF and any other person or entity regarding allegations or reports of alleged sexual or other abuse of minor athletes at any time between 2013 and 2018.
4. Copies of any and all contracts and/or agreements between USASF and any of the plaintiffs in the North Carolina, South Carolina, and Ohio federal lawsuits. If the identity of the plaintiffs in the lawsuits is unknown, please provide a copy of the standard form of contract and/or agreement, if any, between USASF and any minor athlete.
5. Copies of any and all contracts and/or agreements between USASF and Greenville Rockstar, Carolina All-Stars, Scott or Kathy Foster, Cheer Extreme Raleigh, LLC, Kelly or Randall Helton;
6. Copies of any and all contracts and/or agreements between Taji Davis, Brandon Hale and/or Show Pro; ShowPro and Taji Davis and Brandon Hale; certification and/or registration materials (USASF, US Cheer) for Taji Davis, Brandon Hale, and/or ShowPro; contracts and/or agreements between USASF and the Avondale, Ohio and/or Brecksville, Ohio gyms; and contracts and/or agreements between the Avondale, Ohio and/or Brecksville, Ohio gyms and Taji Davis, Brandon Hale and/or or ShowPro.

January 31, 2023
P a g e | **25**

This request for information is not intended to be exhaustive. Greenwich reserves the right to request additional information and/or documentation as required. If you have any additional documents or information that you would like us to consider, please forward the same to me at your earliest convenience. As stated above, Greenwich's review and evaluation of this matter is subject to a full and complete reservation of rights.

This letter is based upon the limited factual information currently available to Greenwich. This letter is necessarily preliminary and subject to revision as additional facts may develop, and as additional information may arise that is pertinent to the Greenwich policies. Greenwich reserves the right to supplement or amend its coverage position should facts and circumstances indicate the need to do so in connection with these lawsuits. By reserving its rights on the bases described above, Greenwich does not waive or limit any of its rights, positions, or defenses under the Greenwich policies or at law or in equity. To the contrary, Greenwich reserves all such rights, including but not limited to the right to raise additional policy terms, conditions, exclusions, limitations, or endorsements to coverage as applicable. No action taken by Greenwich to date or that it may take in the future is deemed a waiver of those rights, positions, or defenses. Furthermore, any failure to quote or refer to a particular policy term, condition, exclusion, limitation, or endorsement in the body of this letter or otherwise is not deemed a waiver of that provision.

If you have any questions or comments regarding this reservation of rights, please do not hesitate to contact the undersigned. Similarly, if you believe that Greenwich is incorrect in any respect or wishes to bring any matter to its attention, please do not hesitate to contact the undersigned. Greenwich is prepared to consider additional information and reassess its position should the circumstances so warrant.

Very truly yours,

*ARchie Page CPCU, ARe, ARM*

Archie Page

cc:  Mark Thompson (via email only)
American Specialty Insurance & Risk Services, Inc.
mjthompson@americanspecialty.com

Michelle Freeman
WTW Co.
Michelle.Freeman2@wtwco.com

**EXHIBIT A**

John Doe 1 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation**, et al., Case No. 5:22-cv-00430-M, United States District Court, Eastern District of North Carolina, Raleigh Division

Jane Doe 1-7, John Doe 1-2, et al. v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation**, et al., Case No. 6:22-cv-02957-HMH, United States District Court for the District of South Carolina, Greenville Division

John Doe 3 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation**, et al., Case No. _____, United States District Court for the District of South Carolina, Greenville Division

Jane Doe 8 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation**, et al., Case No. _____, United States District Court for the District of South Carolina, Greenville Division

Jane Doe 9 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation**, et al., Case No. 6:22-cv-03509-HMH, United States District Court for the District of South Carolina, Greenville Division

John Doe 1 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation**, et al., Case No. 1:22-cv-02139, United States District Court for the Northern District of Ohio, Eastern Division at Cleveland

Hannah Gerlacher and Jessica Gerlacher v. Cheer Athletics, Inc., Cheer Athletics-Plano, LLC, Cheer Athletics-Frisco, LLC, Cheer Athletics Holdings, LLC, **United All Star Federation**, and Jason McCartney, Case No. D-1-GN-21-003338, District Court, Travis County Texas, 126th District Court

January 31, 2023
P a g e | **27**

## <u>EXHIBIT B</u>

Jane Doe 1, by and through her mother, Mary Doe v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation**, et al., Case No. 6:22-cv-02146, United States District Court, Middle District of Florida, Orlando Division

Jane Doe 2, by and through her mother, Mary Doe v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation**, et al., Case No. 6:22-cv-02147, United States District Court, Middle District of Florida, Orlando Division

Jane Doe 3, by and through her father, Joseph Doe v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation**, et al., Case No. 6:22-cv-02149, United States District Court, Middle District of Florida, Orlando Division

John Doe as the next friend of Jane Doe v. Varsity Spirit, LLC, **United States All Star Federation**, et al., Case No.2022-CP-23-04753, Court of Common Pleas, State of South Carolina, County of Greenville

John Doe 1 by and through his mother, Mary Doe, v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation**, et al., Case No. 1:22-mi-99999-UNA, United States District Court, Northern District of Georgia, Atlanta Division

Mary Doe as next friend of John Doe 1, John Doe 2, et al. v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., **U.S. All Star Federation**, et al., Case No. 2:22-cv-02657, United States District Court for the Western District of Tennessee, In the Western Division