# Exhibit 2



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**August 31, 2023 08:55**

By: CHELSEA C. WEAVER 0096850

Confirmation Nbr. 2951614

JOHN DOE 1                                CV 23 984774

    vs.

VARSITY SPIRIT LLC, ET AL          **Judge:** EMILY HAGAN

**Pages Filed:** 58

### IN THE COMMON PLEAS COURT OF CUYAHOGA COUNTY

| | | |
|---|---|---|
| JOHN DOE 1, who shall be listed<br>Anonymously<br>c/o Cooper Elliott<br>305 West Nationwide Boulevard<br>Columbus, Ohio 43215, | ) )<br>)<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| VARSITY SPIRIT, LLC<br>119 East Court Street<br>Cincinnati, Ohio 45202 | )<br>)<br>)<br>) | CASE NO. |
| and | )<br>) | JUDGE |
| VARSITY BRANDS, LLC<br>c/o Corporate Creations Network<br>205 Powell Place<br>Brentwood, Tennessee 37027 | )<br>)<br>)<br>)<br>) | JURY TRIAL DEMANDED |
| and | )<br>) | |
| VARSITY BRANDS HOLDING,<br>CO., INC.<br>1901 Diplomat Drive<br>Farmers Branch, Texas 75234 | )<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| U.S. ALL-STAR FEDERATION,<br>INC. d/b/a U.S. ALL-STAR<br>FEDERATION<br>CT Corporation System<br>300 Montvue Road<br>Knoxville, Tennessee 37919 | )<br>)<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| SHOWPRO CHOREOGRAPHY<br>217 Morgan Place<br>High Point, North Carolina 27260 | )<br>)<br>) | |
| and | )<br>) | |

**TAJI DAVIS**                                )
**4626 North 16th Street, Apt. 1458**         )
**Phoenix, Arizona 85016**                    )
                                              )
     **and**          )
                                              )
**BRANDON HALE**                              )
**3607 McCuiston Road, Apt. 34**              )
**Greensboro, North Carolina 27407,**         )
                                              )
     **Defendants.**  )
                                              )

## COMPLAINT

## INTRODUCTION

1.      In the summer of 2014, Plaintiff John Doe 1 was a minor All-Star athlete cheering on behalf of a private U.S. All-star Federation (USASF) gym in Avon Lake, Ohio.

2.      The gym was part of the largest network of All-star cheer gyms in the country headed by Defendants Varsity Spirit, LLC, Varsity Brands, LLC and Varsity Brands Holding Company, Inc. ("the Varsity Defendants").

3.      As was common practice in the All-star cheer world, Plaintiff John Doe 1's gym periodically contracted with outside choreographers to provide choreography services for the gym.

4.      During the relevant time frame of this complaint, Plaintiff's respective cheer gyms contracted with three such choreographers (two individuals and one entity) to provide services: Defendant Brandon Hale, Defendant Taji Davis, and Defendant ShowPro Choreography ("the vendor Defendants").

5.      During these intensive days' long choreography sessions, the vendor Defendants would have unfettered access to minor participants, such as Plaintiff John Doe 1, and engage with these under-age children on an intimate level.

2

6.     During the relevant timeframe of this Complaint, Plaintiff was a paying member of Defendant USASF, and was required annually to renew this membership in order to compete on behalf of his Varsity-affiliated gym.

7.     At all times relevant to this complaint, Defendants Brandon Hale and Taji Davis were "credentialed" USASF coaches and/or members.

8.     This certification was created by the Varsity Defendants and signified to the All-star cheer community, including Plaintiff John Doe 1, that said vendors had been investigated and deemed safe for work around minor children.

9.     As such, at all times relevant to this Complaint, these vendor Defendants were vested with the authority and ability to appear at USASF member gyms, to access USASF member athletes, and to attend USASF "sanctioned" events.

10.     As set forth more fully herein, "sanctioned" was synonymous with events, competitions, clinics, and camps hosted by the Varsity Defendants and governed by Defendant USASF.

11.     Beginning in 2014, and by virtue of the positions of trust and authority granted to them, Defendant Hale and Defendant Davis, individually and in the course and scope of their role with Defendant ShowPro Choreography, systematically groomed and sexually abused Plaintiff John Doe 1 during clinics and exhibitions within the direction and control of the Varsity Defendants and Defendant USASF.

12.     Plaintiff John Doe 1 ultimately reported the abuse to Defendant USASF; however, Defendant USASF refused to support or help Plaintiff John Doe 1, instead allowing these Defendants to continue accessing minor cheer participants.

13.     During the relevant timeframe, Defendants Brandon Hale, Taji Davis, and ShowPro Choreography were part of a network of coaches, choreographers, affiliates, and vendors

empowered and placed in positions of trust and authority by the Varsity Defendants, and Defendant USASF.

14.     At the same time, and upon information and belief, the Varsity Defendants, and Defendant USASF knew or had reason to know Defendant Hale, Defendant Davis, and Defendant ShowPro Choreography had engaged in misconduct and abuse involving USASF All-star cheer participants.

15.     Upon information and belief, the scheme to anoint specific coaches, choreographers, and vendors at the expense of best safety practices occurred as the Varsity Defendants were creating and expanding a business model reliant upon a pipeline of young cheer participants, each of whom was a member of a Varsity affiliated gym, and each of whom represented a significant contribution to the Varsity Defendants' billion-dollar empire. .

16.     As set forth in this complaint, the Defendants, together and individually have knowingly, or with a reckless disregard, created, organized, and propagated a system of young-athlete abuse, including against Plaintiff John Doe 1.

17.     This is a complaint for legal and equitable relief for Plaintiff's damages that resulted from this enterprise.

## JURISDICTION, PARTIES, AND VENUE

18.     At all times relevant to this complaint, Defendant ShowPro Choreography n/k/a Showtyme Productions ("Defendant ShowPro") was a choreography company with a principal place of business in High Point, North Carolina.

19.     At all times relevant to this complaint, Defendant ShowPro was a certified USASF vendor, and, by and through its employees, owners, agents, and authorized representatives, all within the course and scope of their responsibilities, did interact on a daily basis with minor children, at various gyms, camps, clinics, and competitions affiliated with the Varsity Defendants.

20.     Upon information and belief, at all times relevant to this complaint, Defendant Taji Davis ("Defendant Davis") was a USASF-credentialed member coach and choreographer providing services to USASF member minor participants throughout the United States including on behalf of gyms in Avon Lake, Ohio, and Brecksville, Ohio.

21.     As an authorized USASF member, Defendant Davis was empowered and is still empowered to access USASF member minor participants including Plaintiff John Doe 1.  As of today, Defendant Davis is a citizen and resident of Houston, Texas.

22.     Upon information and belief, and at all times relevant to this complaint, Defendant Brandon Hale ("Defendant Hale") was a USASF credentialed member coach and choreographer providing services to USASF member minor participants throughout the United States including in Avon Lake, Ohio.

23.     As an authorized USASF member, Defendant Hale was empowered to access USASF member minor participants including Plaintiff John Doe 1. As of today, Defendant Hale is a citizen and resident of North Carolina.

24.     At all times relevant to this complaint, Defendant Varsity Brands, LLC (f/k/a Varsity Brands, Inc.) ("Defendant Varsity Brands") has been a for-profit entity organized under the laws of Delaware with its principal place of business in Memphis, Tennessee.

25.     It is the corporate parent company of Defendant Varsity Spirit, LLC (f/k/a Varsity Spirit Corporation).

26.     As demonstrated herein, Defendant Varsity Brands has taken affirmative steps to promote the premise that competing on behalf of the Varsity Defendants was safe, including, the creation of coaching and gym classes through "Varsity University," organizing a Varsity safety council, which publicly purported to focus on the threat of sexual abuse to All-star minor participants, and an adult certification process.

27.     At all times relevant to this complaint, Defendant Varsity Spirit, LLC (f/k/a Varsity Spirit Corporation) ("Defendant Varsity Spirit") has been a for-profit entity organized under the laws of Tennessee with its principal place of business in Memphis, Tennessee.

28.     During the operative timeframe, Defendant Varsity Spirit has been the world's largest purveyor of merchandise, branding, camps, clinics, and competitions for the private All-star cheer community, encompassing as much as 90% of the industry's gyms, coaches, vendors, and athletes.

29.     Defendant Varsity Spirit has taken affirmative steps to represent to member minor participants that competing on behalf of a Varsity-affiliated gym would provide athletes with a uniquely safe experience free from sexual abuse.

30.     At all times relevant to this complaint, Defendant Varsity Brands Holding Company, Inc. ("Defendant Varsity Brands Holding") has been a for-profit entity organized under the laws of Texas with its principal place of business in Farmers Branch in Dallas County, Texas.

31.     Defendant Varsity Brands Holding is the corporate parent of Defendant Varsity Brands, and, upon information and belief, at all times relevant to this complaint, exercised a significant degree of control over the daily operations, management, budgeting, staffing, and training for Defendants Varsity Brands and Varsity Spirit, including Defendants' organization, control, and decision making over events, camps, and clinics in Ohio.

32.     Defendants Varsity Spirit, LLC, Varsity Brands, LLC and Varsity Brands Holding Company, Inc., shall be referred to as the "Varsity Defendants".

33.     At all times relevant to this Complaint, either directly or through affiliates, including those wholly owned and/or controlled, the Varsity Defendants organized, promoted, produced, and/or managed merchandise, branding, cheer camps, clinics, exhibitions, and competitions throughout the United States including Ohio.

34.     Defendant U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation (hereinafter "Defendant USASF") is a Tennessee non-profit corporation with its principal place of business in Memphis, Tennessee.

35.     USASF is the self-proclaimed governing and regulatory body promulgating and enforcing rules for private All-star cheer, including throughout the state of Ohio.

36.     As set forth more fully in this Complaint, Defendant USASF was aware of the allegations of abuse against Defendant John Doe 1, and, in conjunction with the Varsity Defendants, was responsible for protecting Plaintiff John Doe 1, yet failed to do so.

37.     At all times relevant hereto, Defendant USASF has been controlled and funded by the Varsity Defendants.

38.     The Varsity Defendants and Defendant USASF either directly and/or through their affiliates, which they control, have: (a) promulgated and/or enforced rules governing competitive cheer coaching, competitive cheer training, cheer camps, clinics, and competitions throughout the United States including in the state of Ohio; (b) organized, promoted, produced, and/or managed cheer camps, clinics, and competitions throughout the United States including in the state of Ohio; (c) established guidelines and assessed whether to certify and annually authorize gyms, coaches, and vendors to operate within the Varsity Defendants' system[1], including without limitation those choreographers named herein, as members of USASF, and to otherwise provide "credentials" for these coaches, vendors, and affiliates; (d) represented that they annually undertook monitoring and/or re-certification of the adult USASF "members" and, by so doing, specifically represented that these individuals were safe; and (e) required that athletes, coaches, vendors, and gyms, including the individual Defendants and Plaintiff, purchase annual memberships with Defendant

---

[1]     As it relates to this Complaint, the term "Varsity network" refers to the organization of cheer camps, clinics, competitions, and certified and credentialed coaches, vendors, and athletes competing on behalf of Varsity Spirit, LLC. As of the date of this complaint, this network comprises over 4 million athletes.

7

USASF in order to participate in the Varsity Defendants' sanctioned events, and to access USASF member minor participants, among other conduct, acts, and/or omissions.

39.    . This Court has jurisdiction over this case because the abuse described herein occurred in Cuyahoga County, Ohio and, at all relevant times, Defendants were present in, and/or doing business in Cuyahoga County, Ohio, and were availing themselves of the rights and responsibilities of the laws of Ohio.

40.    Venue is proper in this Court because the events giving rise to this lawsuit occurred in Cuyahoga County, Ohio.

## TIMELY FILING

41.    This complaint alleges causes of action arising out of the abhorrent sexual abuse and exploitation of Plaintiff John Doe 1, a minor cheer participant, by adults who were agents, employees, and/or authorized representatives of the Varsity Defendants and Defendant USASF, and/or over whom the Varsity Defendants and Defendant USASF exercised a significant amount of control.

42.    Ohio Revised Code 2305.111 provides that claims for "child sexual abuse" shall be brought within twelve years of when the cause of action accrues. Ohio Rev. Code § 2305.111(C). For purposes of this section, a cause of action does not accrue until the victim reaches the age of eighteen. *Id.* Courts have given an expansive interpretation to this section, including all manner of claims stemming from the sexual abuse, and encompassing known and unknown perpetrators who exercised or had the ability to exercise a reasonable degree of control over the victim.

43.    Moreover, and as it relates to this case, Plaintiff did not know of the negligent, grossly negligent or reckless actions or inactions of the accruing harm perpetrated by all of the Defendants, including the Varsity Defendants and Defendant USASF, including Defendants' failures to abide by internal policies and procedures related to sexual abuse and misconduct, failing

8

to make or follow through with mandatory reports, failing to undertake appropriate safeguards, preventative measures, investigations, as well as rubber stamping investigations to ensure that Plaintiff's complaints went unresolved, and failing to enforce and institute rigorous rules against minor athlete sexual abuse within the Varsity Defendants' network.

44.     Upon information and belief, the Varsity Defendants and Defendant USASF took efforts to conceal their failures, or acted with reckless disregard related to timely, effective, and appropriate safety measures to prevent minor participant abuse, and investigation, reporting, follow up and governance, and to generally protect vulnerable athletes including Plaintiff John Doe 1.

45.     The Varsity Defendants' and Defendant USASF's actions made it impossible to know the danger of the Varsity Defendants' network, or that these Defendants were not implementing those steps within their power to prevent this danger.

46.     As such, Plaintiff John Doe 1's claims are timely since they occurred while Plaintiff was a minor under the age of eighteen and have been alleged within twelve years of Plaintiff's eighteenth birthday.

47.     Additionally, Plaintiffs causes of actions are equitably tolled based upon Defendants' conduct in concealing violations of Plaintiff John Doe 1's rights or operating with a reckless disregard toward Plaintiff John Doe 1's rights.

## FACTUAL ALLEGATIONS

### I.     Background

48.     Private All-star cheer is a competitive and dynamic sport where minor participants compete in a team setting, mixing a variety of disciplines including cheer, dance, and tumble.

49.     Because of its historically unregulated nature, All-star cheer is not subject to traditional seasonal limitations, or other restrictions, or oversight.

50.     As such, All-star cheer requires near constant training, cross-training, and frequent competition and clinic participation throughout the year under circumstances controlled entirely by a series of private entities, led by the Varsity Defendants.

51.     In this space of All-star cheer, the Varsity Defendants have emerged as the pre-eminent business.

52.     In 1971, Jeff Webb began his work in cheerleading as an employee at the National Cheerleaders Association working for Lawrence Herkimer, known as the original pioneer of cheer.

53.     During his work with Herkimer, Webb formed a plan to monetize cheerleading "camps" – days-long events where athletes would converge to learn new skills.

54.     In 1974, Webb left Herkimer and formed his own group, which he named the Universal Cheerleaders Association.

55.     By and through Universal Cheerleaders Association, Webb grew his footprint in the cheer industry, promoting and showcasing his cheer camps, which grew throughout the 1980s.

56.     During the 1980s, Webb's cheer camp organization transformed into Defendant Varsity Spirit.

57.     Defendant Varsity Spirit began as a provider of cheer camps and thereafter expanded into competitions, merchandising, branding, social media, and even gym ownership and management.

58.     Eventually, Defendant Varsity Spirit re-branded as Defendant Varsity Brands, which included All-star cheer as well as dance.

59.     Defendant Varsity Brands remained integrally involved in the daily decision making related to Varsity All-star cheer.

60.     By the early 2000's, Defendant Varsity Brands was a publicly traded corporation touting itself as:

a.  The largest designer, marketer, and supplier of cheerleader dance team uniforms and accessories;

b.  The biggest operator of cheerleading and dance team training camps and clinics;

c.  A leading organizer of special events for extracurricular activities;

d.  A major provider of studio dance conventions and competitions; and

e.  A producer of studio dance apparent for studio dance competitions.[2]

61.  As early as 2002, the largest source of revenue for Defendant Varsity Brands came from Defendant Varsity Spirit.

62.  Through their various dealings in the cheer industry, the Varsity Defendants have controlled an estimated 80-90% of the market.

63.  This control includes control over affiliated gyms, who, pursuant to their relationships with the Varsity Defendants, are essentially prohibited from competing in or endorsing any other private event companies.

64.  Instead, affiliated gyms must abide by the Varsity Defendants policies, procedures, and guidelines, including the Varsity Defendants' mandate that athletes purchase annual memberships with Defendant USASF.

65.  A substantial portion of the revenue from each minor participant who cheers for a Varsity-affiliate gym goes directly to the Varsity Defendants.

66.  A single season competing with a Varsity-affiliate gym can, at minimum, cost between $3,000 to $7,000 per team member.

67.  Some families spend $20,000 or more for transportation, lodging, memberships, entrance fees, music fees, choreography expenses, as well as merchandise, uniforms, and other

:

---

[2]  *See* Varsity Brands, Inc., Form 10-K, (Apr. 1, 2002), available at: https://www.sec.gov/Archives/edgar/data/874786/000093041302001124/c23854_10k.txt

accessories and incidentals, incurred in connection with the numerous competitions and clinics the athletes attend throughout the year.

68.     Because Varsity-affiliated athletes pay annual costs including music and choreography fees, the Varsity Defendants expanded their network to include choreographers, such as Defendant ShowPro, who provided certain skills training and choreography services, by through credentialed adults including Defendants Hale and Davis.

69.     These competitive events, and clinics, and those adults authorized to train and conduct these events and clinics are subject to the guidance, certification, and rulemaking of Defendant USASF, which was created, controlled, and funded by the Varsity Defendants.

70.     Specifically, in or around 2003, in response to the formation of the National All-Star Cheerleading Coaches Congress ("NACCC"), the Varsity Defendants founded Defendant USASF to provide governance and regulatory support for Varsity All-star cheer.

71.     At inception, the Varsity Defendants touted Defendant USASF as the equivalent of a National Governing Body[3] whose responsibility included creating a safe and positive environment for athletes, including an environment free from abuse and misconduct[4].

72.     After forming Defendant USASF, the Varsity Defendants mandated that All-star minor participants cheering on behalf of Varsity-affiliated gyms purchase annual USASF memberships as a requirement to compete with the Varsity-gym.

---

[3]     "National Governing Body" refers to an amateur sports organization, high performance management organization, or a paralympic sports organization but is essentially created to provide oversight, governance, and protection against certain misconduct for an identifiable group of individuals.

[4]     *See* USASF Athlete Protection & Abuse Prevention Policies, available at: Athlete Protection | USASF ; *see also* Varsity Athlete Protection, available at: Varsity Spirit - Athlete Protection - Varsity.com; with links to Defendant USASF's Athlete Protection and abuse website.

12

73.     Moreover, the Varsity Defendants mandated that gyms, coaches, and adult vendors who wished to interact with these Varsity-affiliated minor participants and to attend Varsity-sponsored events also become members of Defendant USASF.

74.     After forming Defendant USASF, around 2006, the Varsity Defendants created the title "USASF Certified,".

75.     This USASF seal denotes l that the Varsity Defendants and Defendant USASF warranted that a "certified" gym, a coach, a choreographer, and any adult certified by USASF had been duly vetted and met Defendants' highest standards regarding best safety practices, including to prevent athlete abuse.[5]

76.     Upon information and belief, the Varsity Defendants and Defendant USASF used this credentialing and certification to signal to parents and athletes that USASF would continually monitor and ensure compliance by its member gyms, coaches, vendors, and other affiliates.

77.     By 2010, credentialing and certification became paramount to the success of the Varsity network.

78.     In a public statement, Defendant USASF represented: "[t]hrough credentialing, coaches are made aware of expectations as teachers and role models. It is the goal of the USASF to infuse good decisions into each and every credentialed coach so that they may expand the positive life experience of all-star cheerleading and dance[.]"[6]

79.     Varsity Defendants controlled Defendant USASF from inception.

80.     The Varsity Defendants created Defendant USASF with a $1.8 million dollar

---

[5]     For instance, as it relates to USASF's "greenlight determination," USASF represents that "[b]ackground checks are a critical component of any athlete protection program. At USASF, we believe thorough a [sic] background check of all individuals who engage in regular contact with minor athletes is the first step toward protecting those athletes." *See* USASF Directory FAQs for 2022-2023, available at: USASF Member Directory.

[6]     The original quote appears in a 2010 edition of Cheer Coach and Advisor Magazine. At the time of publication, Defendant Webb served on the magazine's editorial board.

interest free loan and submitted the original trademark application for Defendant USASF.

81.     For at least the first fifteen years of its existence, Defendant USASF's offices were located at Defendant Varsity Spirit's corporate headquarters, and a Varsity representative would answer Defendant USASF's phone, and USASF employees were paid directly by Varsity and Varsity was authorized to cash checks issued to Defendant USASF.

82.     In addition, during the operative timeframe of this Complaint, the Varsity Defendants controlled Defendant USASF's Board of Directors, which sets policy for Defendant USASF.

83.     The Board was composed of thirteen voting members, and, as recently as 2022 at least 75% of the voting members have been controlled by the Varsity Defendants or those event companies that the Varsity Defendants have acquired.

84.     By creating their own governing and regulatory body, USASF, and by mandating that all athletes competing with a Varsity-affiliated gym become members of that governing body, the Varsity Defendants ensured their control over every aspect of cheerleading at every level in the United States including minor participants throughout Ohio, such as John Doe 1.

85.     Defendant USASF, the so-called independent governing and regulatory body overseeing the Varsity network, purportedly established policies, procedures, and guidelines for everything from coaching credentials to boundaries for appropriate and inappropriate conduct[7].

86.     In addition to this Code, in or around 2009, Defendant USASF also created its Professional Responsibility Code, applicable to all members.

87.     Part of this Code recognized the role of Defendant USASF, and, more broadly, the Varsity Defendants, in protecting minor participants from sexual abuse.

---

[7]     USASF Athlete Protection and Abuse Prevention Policies, *Id.* at FN 4.

88.     For instance, according to this Code, "Once a coach-Athlete relationship is established, a Power imbalance is presumed to exist throughout the coach-Athlete relationship (regardless of age) and is presumed to continue for Minor Athletes after the coach-Athlete relationship terminates until the Athlete reaches 20 years of age."

89.     While this Code stated its goal was to "maximize not only the integrity and legitimacy of the all-star industry, but to safeguard athletes who participate[,]" at the same time, the Code included significant guidelines to prevent movement of minor participants from one Varsity-member gym to another.

90.     For example, as set forth in the Code:

  i.  I pledge, as a member of the USASF, I will not initiate contact with another program's athletes and families in an effort to solicit or otherwise entice them to leave the program they belong to and participate in my program. This practice is unethical;

  ii.  I pledge, as a member of the USASF, I will not encourage any of my athletes or family members to contact another program's athletes and families during the competitive season in an effort to solicit or otherwise entice them to leave the program they belong to and participate in my program. This practice is unethical.

  iii.  I pledge, as a member of the USASF, I will honor and encourage everyone to respect all mutual agreements and/or contracts made between parties, whether formal or informal, by programs, coaches and athletes....

*See* USASF Professional Responsibility Code, Version 11.0, Process.

91.     By creating a Professional Responsibility Code requiring members to pledge against internal competition, Defendant USASF essentially guaranteed that gyms would enjoy

uninfringed access to athletes and their families and discouraged these athletes and families from reporting potentially dangerous coaches and vendors.

92.     In addition to creating Codes of Conduct and Compliance, Defendant USASF, backstopped by the Varsity Defendants, also undertook investigations into allegations of misconduct within the Varsity network of credentialed coaches and vendors.

93.     As such, when an athlete reported an incident, they were directed to Defendant USASF.

94.     On December 7, 2020, Defendant USASF announced a universal system for reporting athlete safety concerns, as well as a central repository listing ineligible coaches and individuals.

95.     Defendant USASF stated that these measures "will provide a robust athlete safety infrastructure readily available across the entire cheer community."[8]

96.     As stated in the release: "USASF adult members are required to pass a background screening, complete the *U.S. Center for SafeSport Trained* course, and follow the USASF Professional Responsibility Code, which establishes principles that guide member conduct and disciplinary consequences for non-compliance."[9]

97.     The combination of these purported safety measures - credentialing, Codes of Conduct and Professional Responsibility, and the Unified Ineligibility List - all failed to adequately protect young athletes from harm.

98.     In fact, the number of coaches included on the Unified Ineligibility List has swelled to over 230 adults.

---

[8]     *See* Press Release December 7, 2020, USA Cheer and U.S. All Star Federation Launch Unified Athlete Safety Infrastructure, available at: USA Cheer & U.S. All Star Federation Launch Unified Athlete Safety Infrastructure (usasfmain.s3.amazonaws.com).
[9]     *Id.*

99.     Upon information and belief, the failure of the Varsity Defendants' and Defendant USASF's safety practices was not necessarily related to the failure of the written measures themselves, but, instead, a failure of execution, and systemic failures in the culture.

100.    As it relates to the Unified Ineligibility List, the majority of the suspected offenses relate to claims of sexual misconduct between minors and credentialed adults.

101.    Upon information and belief, many of these credentialed adults passed undetected through the Defendant USASF credentialing process. For example, and according to the expose in USA Today:

    a.  A Virginia gym owner was convicted of sexual battery and assault and placed on the sex offender registry after three girls he coached at his Virginia gym came forward. As of 2020, this coach was still listed as the gym's owner and was still USASF certified. Varsity continued to invite his gym to competitions. One of his victims had to stop cheering competitively because her convicted abuser was allowed to stay involved around children and in proximity to her.

    b.  A Charlotte coach who was arrested for two counts of sexual assault of a minor and lost his middle school teaching job continued to have access to minor participants afterward. Though the gym's owners claimed he was told he was no longer welcome to work with the gym's athletes after his arrest, he continued to appear in official social media accounts of the gym, was connected by the gym director to parents for private lessons and attended a Varsity event in Florida where he was photographed posing next to the gym's athletes in a gym uniform with the word "Coach" on his shorts.

    c.  A coach who had been fired from a gym and charged with child pornography was discovered to still be working in the cheer industry by the gym owner who had

originally fired him. The gym owner called Varsity, who told her his background check was fine. After she went to the courthouse to get the records of his conviction and sent them to Varsity, months passed and the man continued coaching children at Varsity events through USASF gyms.

d. A Washington gym owner was not banned by USASF until more than a year after the organization received reports in 2018 that he had been accused of sexual misconduct with minors.

102.     During the operative timeframe Defendant USASF refused or failed to report non-member coaches and adults accused of misconduct to law enforcement – contravening its representation that USASF and its members are mandatory reporters[10].

103.     Upon information and belief, Defendant USASF has received hundreds of complaints against coaches, choreographers, videographers, and others accused of sexual misconduct.

104.     Until recently, however, Defendant USASF failed to dedicate fulltime staff to managing investigations of these complaints.

105.     Ginger Wilczak, the part-time contract employee USASF eventually hired to field reports of misconduct, stated that she worked 10 hours per week at most.[11]

106.     In an interview with Mary Carillo in an HBO Real Sports investigative segment, Ginger Wilczak reported that she had been actively prevented from taking the necessary actions to perform her job.

---

[10]     *See* USASF Terms and Conditions of Coach Membership, available at: Coach Membership (usasf.net)

[11]     https://usatoday.com/in-depth/news/2020/12/23/cheerleading-cheer-sexual-misconduct-complaints-usasf/6484248002/

Electronically Filed 08/31/2023 08:55 / / CV 23 984774 / Confirmation Nbr. 2951614 / CLAJB

107.     Defendant USASF has also been slow to develop policies and procedures for keeping minor participants safe from sexual abuse.

108.     The Varsity Defendants and Defendant USASF failed to adequately implement appropriate safety measures to protect minor participants from sexual abuse despite that fact that youth sports organizations such as the Varsity Defendants and USASF have been dogged for decades by allegations of sexual abuse and sexual exploitation of minor children.

109.     As set forth herein, the Varsity Defendants and Defendant USASF failed to execute an operable plan to fight the scourge of minor sexual abuse and sexual exploitation within the Varsity network despite knowledge of specific abuse and misconduct within their own organization, as well as knowledge of rampant abuse and misconduct invading other similar youth and youth sports organizations.

110.     Meanwhile, according to its website: "USASF is the U.S. All Star Federation. It's about safety standards. It's about coaches' education. It's about providing a safe environment to allow for the continued growth of all-star cheerleading and dance across the country. *It's about parents knowing their children are being taught using safe methods that are in accordance with the standard of care*. It's about standardization of rules from one competition to the next. It's about time." (Emphasis added).

111.     In spite of this public proclamation however, Defendant USASF's gym and coach training has focused almost exclusively on avoiding physical injury to athletes.

112.     Meanwhile, Defendant USASF was not the only Defendant to make public representations and affirmations about its responsibility to keep minor participants safe.

113.     For example, the Varsity Defendants have publicly represented that Defendant Varsity Brands empowered a Safety Council, to include outside, independent experts, and to closely examine and evolve current minor participant safety guidance.

114.    Defendant Varsity Brands directed questions and concerns to safety@varsity.com.

115.    Defendant Varsity Brands also created "Varsity University," which is "an enterprise powered by Varsity Brands, [and which] offers comprehensive educational programming to schools and athletic programs,"[12] and consisting of a nine-course program that encompasses three specific areas: Life Skills, Social Media, and Leadership.

116.    Varsity University hosts annual conferences during which the adults are indoctrinated into the Varsity Defendants' culture.

117.    At these conferences, known as Varsity University events, upon information and belief, coaches, gym owners, and vendors are encouraged to drink alcohol and engage in debaucheries, and are inundated with promises of gifts and financial gain if the coaches continue to produce young member-athletes who promote the Varsity brand.

118.    Defendant Varsity Spirit has represented that it provides "training to Varsity Spirit instructors and staff regarding abuse and reporting."[13]

119.    As set forth on its website, "Varsity Spirit enforces its own policies that prohibit abuse and misconduct and are designed to reduce, monitor and govern the areas where potential abuse and misconduct might occur, in addition to the policies implemented by USA Cheer and USASF addressing certain types of abuse and misconduct. The following types of misconduct are specifically prohibited in these policies: (i) sexual abuse and misconduct; (ii) physical abuse and misconduct; (iii) emotional abuse and misconduct; (iv) bullying, threats, and harassment; (v) hazing."[14]

---

[12]    Information is available at Varsity University Online Education Programs Athletic Programs & Schools.
[13]    See Varsity Spirit - Athlete Protection - Varsity.com
[14]    Id.

120.   By creating their own internal policies and procedures aimed at mitigating and preventing minor participant sexual abuse, the Varsity Defendants not only undertook such a responsibility, but acknowledge their community-wide responsibility to protect minor participants within the Varsity network from sexual abuse.

121.   At all times relevant to this Complaint, Plaintiff John Doe 1 was one such minor participant.

122.   In addition to these affirmative representations related to safety compliance within the Varsity network, Defendant USASF and the Varsity Defendants have also made numerous misrepresentations about their affiliation with the U.S. Center for SafeSport[15], the Congressionally authorized independent non-profit charged with overseeing National Governing Bodies and other affiliates to prevent minor athlete sexual abuse and misconduct.

123.   At no point either during the timeframe relevant to this Complaint or since, have the Varsity Defendants or Defendant USASF actually participated in U.S. Center for SafeSport.

124.   Instead, the Varsity Defendants and Defendant USASF created their own version of SafeSport, Safe@allstar[16], using similar labeling, terminology, and even icons.

125.   The choice to continue operating completely independent from any outside oversight at a time when a Congressionally backed alternative existed was an affirmative decision by Defendants USASF and the Varsity Defendants.

126.   Moreover, these Defendants intended for parents and minor participants to rely on the public representations about Safe@allstar and its role in fortifying the Varsity network against the risk of sexual abuse.

127.   Plaintiff John Doe 1 relied on these representations.

---

[15]   *See* Preventing and Addressing Abuse | U.S. Center for SafeSport (uscenterforsafesport.org).
[16]   *See* Athlete Protection (usasf.net)

21

128.    Outside observers acknowledged that the Varsity Defendants' system was fraught with conflicts and pitfalls that favored the Varsity Defendants over participating athletes.

129.    John Patterson, a former staffer of the Nonprofit Risk Management Center who consulted on youth sports safety, said he has never heard of an arrangement quite like the one between Defendant Varsity Sprit and Defendant USASF.

130.    He said Varsity Spirit, LLC's control of USASF meant, "whatever Varsity wants, Varsity can get" in terms of rules and regulation of the cheer world.

131.    In 2020, W. Scott Lewis, partner at legal and risk management firm TNG, criticized Defendant USASF's handling of reports and complaints in that they often sat on their hands and did nothing, assuming law enforcement had been contacted by someone else.

132.    He said it was not typical for organizations to wait for law enforcement action before taking their own action unless they've explicitly been asked to do so.

133.    He said, "You don't want to be on the sideline saying, 'Well, we can't do anything because law enforcement's doing it,'" Lewis said. "You want them to have the ability to engage in interim measures or your own investigation, or both." In May of 2021, Defendant USASF hired TNG to consult on its athlete safety practices.

134.    At all times relevant to this complaint, and by virtue of the closed network they created, the Varsity Defendants obtained access to minor USASF members, including John Doe 1, marketing to them that participation with a USASF Certified gym would provide access to the highest echelon safety standards in the sport.[17]

135.    In addition to traveling to Varsity events, minor participants, such as Plaintiff John Doe 1, were required to participate in certain cheer camps and clinics, where USASF-certified

---

[17]    *See* "Sanctioned Competitions," USASF available at: Sanctioned Competitions - Cheer & Dance | USASF ("When All Star clubs attend USASF Sanctioned Competitions, they can be assured their athletes, coaches, and parents are attending events that comply with the sport's best safety practices.").

22

adults and organizations, were granted unfettered access to the minor participants for several days.

136.    During these camps and clinics, the Varsity Defendants and Defendant USASF knew, or should have known, the USASF-member coaches and choreographers who had access to the USASF minor participants would continue to follow or otherwise interact with these minors, including through social media.

137.    This continued personal contact between adults and minors posed a risk of sexual abuse of exploitation and a real risk for grooming behavior, and this risk was, at all times relevant to this complaint, well understood and acknowledged by sophisticated businesses in the industry including Defendants USASF and the Varsity Defendants.

138.    The Varsity Defendants and Defendant USASF knew or it was foreseeable that the USASF adult member coaches and choreographers, would be staying in hotels and other accommodations at the clinic locations.

139.    At each of these camps and clinics, it was therefore foreseeable that the USASF approved adults would co-mingle with the minor participants including during the camps and clinics, and after hours.

140.    This once again, promoted an unparalleled level of access between adults and minor participants within the Varsity network in intimate settings such as hotels.

141.    Any responsible person or entity should have known that this type of system, which was specifically engineered by the Varsity Defendants and USASF, would foster an environment where abuse and misconduct was likely if not entirely foreseeable.

142.    Any entity participating in or allowing such unfettered access was unreasonable, negligent, grossly negligent and reckless. .

143.    he Varsity Defendants and Defendant USASF know or have reason to know that minor athletes are being exposed to drugs and alcohol at these camps and clinics.

144.     To encourage even greater minor participation, the Varsity Defendants, in conjunction with their member gyms, coaches, and vendors, in 2011 created "Cheerlebrity," whereby the Varsity Defendants used their online, social media, and significant industry influence to promote coaches, vendors, athletes and gyms.

145.     "Cheerlebrity" became the impetus behind the Netflix show "Cheer" that propelled Jerry Harris[18] to fame.

146.     "Cheerlebrity" was a competition created by the Varsity Defendants in the image of *American Idol* which sought to promote Varsity All-star gyms and cheerleaders through social media presence.

147.     "Cheerlebrity" is one example of the Varsity Defendants' marketing and branding[19] that catered specifically to minor participants and was intended to increase youth participation.

148.     Upon information and belief, Defendants Davis, Hale, and ShowPro were well-known in the Varsity Defendants' community, enjoying status and promotion on the Varsity Defendants' website and social media.

149.     As such, and at all times relevant to this complaint, the Varsity Defendants boosted the reputations of Defendants Davis, Hale, and ShowPro in the cheer community, enabling these vendor Defendants' access to new crops of unsuspecting minor athletes.

---

[18]     In 2020, Jerry Harris was arrested on charges stemming from sexual abuse against two minor cheer athletes who he accessed by virtue of his influence in the All-star cheer community. In July, 2022, Harris was sentenced to twelve years in prison. *See* Jerry Harris of 'Cheer' fame gets 12 years for sex charges : NPR.

[19]     Big industries have long used targeted marketing to "hook" young participants. For example, one of the most notorious practices undertaken by the tobacco industry was to place ads and print campaigns in popular youth magazines and other media. *See* 10 Really Bad Things the Tobacco Industry Has Done to Entice Kids to Start Smoking, available at: 10 Really Bad Things the Tobacco Industry Has Done to Entice Kids to Start Smoking | State of Tobacco Control | American Lung Association.

150.     The Varsity Defendants and Defendant USASF have touted the safety and security of their affiliate-gyms, coaches, and vendors, and the Varsity Defendants' competitions, camps, and clinics to lull parents into complacency regarding the safety of their children when cheering for a Varsity-sanctioned gym or with a USASF member adult.

151.     The Varsity Defendants have perpetuated an atmosphere at their member gyms, as well as at camps and competitions, that encourages alcohol and drug use, and inappropriate contact between minor participants and adults, which does not adequately protect minor participants from harm.

152.     The Varsity Defendants and Defendant USASF have relied upon access to these children who compete at Varsity-affiliated gyms, and in Varsity competitions, and who further purchase Varsity products, uniforms, and merchandise.

153.     Defendant USASF outwardly undertook responsibility for creating and enforcing guidelines, policies, procedures, and processes for protecting Varsity-affiliated minor participants from sexual abuse and for reporting and investigating coaches and other certified adults accused of misconduct.

154.     Meanwhile, the Varsity Defendants were entirely self-regulated and were not answerable to any independent entity.

155.     Athletes and their families, including John Doe 1, understood Defendant USASF was responsible for protecting athletes from harm.

156.     The Varsity Defendants, through Defendant USASF, enforced bans of athletes, coaches, vendors, affiliates, and teams in competitions for minor rule infractions like the size of hairbows and the use of glitter.

157.    However, these Defendants repeatedly failed to enforce suspensions or bans of coaches, choreographers, and music producers, including the vendor Defendants, who are known or suspected to have committed child sexual abuse.

158.    For instance, Defendant Taji Davis has previously been placed on the unified ineligible list but was removed without warning or fanfare and has not subsequently been prevented from working with minor participants.

159.    In addition, Defendant Brandon Hale was not prevented from participating with minors, even following allegations of assault with significant bodily injury of his spouse, which was covered widely in the media, and which was known to Defendants USASF and the Varsity Defendants.

160.    During the interim of the allegations set forth in this Complaint related to Plaintiff John Doe 1, the Varsity Defendants, in conjunction with Defendant USASF, have hosted multiple competitive events, and have sponsored or endorsed camps and clinics throughout the United States including in Ohio.

161.    As set forth herein, it was contrary to the Varsity Defendants' business model for Defendant USASF to ban adult members from their system since very adult member represented a pipeline of current and future revenue for the Varsity Defendants.

162.    Rather, when allegations about a specific coach or Varsity affiliate were made, including allegations against Defendants Hale, and Davis, the Varsity Defendants and Defendant USASF either ignored the allegations, determined the allegations were not "credible" based upon arbitrary criteria, or allowed the would-be abuser to be cleared of the allegations.

163.    At all times relevant to this Complaint, the Varsity Defendants and Defendant USASF were not appropriately enforcing policies, processes, and procedures related to athlete

safety, and meanwhile, the Varsity Defendants continually allowed Defendants Hale, Davis and ShowPro to interact with minor participants.

164.    Upon information and belief, the policies, processes, failures, and general environment created and perpetuated by the Varsity Defendants and Defendant USASF, fostered and contributed to the sexual, mental, and physical abuse inflicted upon athletes in the Varsity network including Plaintiff John Doe 1.

**II.    The Abuse: John Doe 1**

165.    As stated herein, at all times relevant to this complaint, Defendants Hale, Davis, and ShowPro were certified members of Defendant USASF, and were authorized to interact with and provide choreography and coaching services to minor member athletes such as Plaintiff John Doe 1.

166.    In addition, Plaintiff John Doe 1 was a member of USASF, and paid dues, fees, and other valuable consideration associated with this membership, including choreography and music fees.

167.    In 2014, Defendants Hale, Davis, and ShowPro contracted to provide choreography services to Plaintiff John Doe 1's gym in Avondale, Ohio.

168.    At the time, Plaintiff John Doe 1 was 15 years old.

169.    During the initial meeting between John Doe I and Defendants Hale, Davis, they accompanied Plaintiff and his gym owners and other minor athletes on a day trip to Cedar Point Entertainment venue in Ohio.

170.    In late April, 2015, Plaintiff John Doe 1 moved to a new USASF-member gym in Brecksville, Ohio.

171.    This gym would also contract with Defendants Hale, Davis, and ShowPro for choreography services.

172.    Beginning in 2016, Defendants Hale and Davis began to exchange messages with Plaintiff John Doe 1 using an App.

173.    On or around July 28, 2016, when Plaintiff was 17 years old, Defendants Hale and Davis were back in Ohio to once again provide cheer training and choreography services to Plaintiff John Doe 1's former gym.

174.    During this July, 2016 trip to Ohio, Defendants Davis and Hale once again exchanged messages with Plaintiff John Doe 1.

175.    At all times relevant to this complaint, Defendants Davis and Hale knew that Plaintiff John Doe 1 was a minor under the age of 18, and that Plaintiff was a USASF member athlete.

176.    Despite knowledge of Plaintiff John Doe 1's status as a minor USASF member, Defendants Davis and Hale pressed Plaintiff John Doe 1 to come to their hotel room in Westlake, Ohio.

177.    Plaintiff John Doe 1 was hesitant and initially refused.

178.    Ultimately, Plaintiff went to Defendants' hotel room in Westlake, Ohio.

179.    When 17-year-old Plaintiff John Doe 1 appeared at the Defendants' Hale and Davis' hotel, Defendants took Plaintiff into their room, offered him alcohol which he refused and then coerced and cajoled him into having sex with them

180.    According to the report Plaintiff John Doe 1 provided to law enforcement, Defendants had sex with Plaintiff John Doe 1 multiple times despite the fact that Plaintiff John Doe 1 tried to refuse and attempted to leave.

181.    During this incident, Defendant Davis was 24, and Defendant Hale was 25.

182.    Only after Defendant Hale's choreography contract with Plaintiff John Doe 1's gym ended, Plaintiff John Doe 1 was called into a meeting with his gym owner to discuss potential inappropriate conduct between Plaintiff John Doe 1 and Defendant Hale.

183.    During this meeting, Plaintiff John Doe 1's gym did not express concern for Plaintiff John Doe 1's well-being. Rather, Plaintiff John Doe 1 was made aware of accusations that Defendant Hale was giving Plaintiff John Doe 1 preferential treatment.

184.    Other than this meeting asking Plaintiff John Doe 1 about possible preferential treatment, Plaintiff John Doe 1's gym made no other inquiries and took no other action, and Defendant Hale was allowed to continue as a choreographer within Defendant USASF's network.

185.    On or around June 20, 2020, and knowing that Defendants Hale and Davis were still working regularly within the All-star cheer community, interacting with minor members, Plaintiff John Doe 1 sent an anonymous email about the incident to two USASF-member gyms, California AllStars Ventura, and Cheer Extreme Allstars in North Carolina.

186.    Cheer Extreme Allstars never responded to the email.

187.    California Allstars requested Plaintiff John Doe 1's location, and an officer from local California law enforcement requested more information.

188.    On June 23, 2020, Defendant USASF's case manager Ginger Wilczak contacted the anonymous email asking Plaintiff John Doe 1 to disclose his identity.

189.    On June 25, 2020, Plaintiff John Doe 1 made a formal report to USASF.

190.    On June 28, 2020, Ms. Wiczak emailed Plaintiff John Doe 1 to confirm she was meeting with the Vice President of Membership about the allegations.

191.    On June 29, 2020, Ms. Wiczak notified Plaintiff that local Ohio law enforcement had been contacted.

192.     Beginning on July 2, 2020, Plaintiff John Doe 1 cooperated with Ohio law enforcement related to the allegations.

193.     Pursuant to the Ohio law enforcement investigation, on June 28, 2020, Amy Clark, Defendant USASF's Vice President of membership, emailed the police department related to the allegations against Defendants Davis and Hale. Per Ms. Clark's email:

> Thank you for taking the report from our internal SafeSport administrator. She will encourage the victim to come forward and pursue charges. I would like to share this perspective for both of you and your Lieutenant as well. We have a situation here, if true, where someone that was 7 years older than the minor invited an interaction that we could all agree was, at minimum, inappropriate. Their relationship and interaction was originally introduced as the minors [sic] participation in the sport – with an outside choreographer who came to his gym. They met because of the sport.
>
> The older person (24 years of age), who asked a minor (17 years of age) to come to his hotel room at 1:30 am – held, what could be argued, as a position of power over him. Although the age of consent is 16 in the state of Ohio, the difference in age was 7 years.
>
> At minimum, we have an alleged perpetrator, who used his position of power and age differential to "encourage" a 17 year old to come to his hotel room. At worse [sic], we have an alleged perpetrator who has demonstrated his modus operandus [sic], and *may have done the same thing to additional minor athletes in our sport*.
>
> And, is there a legal, moral, or ethical duty to investigate this situation even if the victim does not want to press charges?...I just have concerns that if it is not pursued – someone may find all of us negligent in our duty to protect minor athletes.

(Emphasis added). Email from Amy Clark to USASF Safe Sport to law enforcement, June 28, 2020.

194.     Plaintiff John Doe 1's report to USASF and the subsequent police report included screen shots of Defendants Hale and Davis soliciting Plaintiff John Doe 1 to come to their hotel room at 1:30 in the morning.

195.     On July 30, 2020, Plaintiff John Doe 1 was informed that Ohio law enforcement would not pursue charges against Defendants Hale and Davis because Plaintiff was over 16 years old at the time of the incident.

196.     The investigating detective nevertheless informed Plaintiff that what happened with Defendants Hale and Davis was inappropriate.

197.     At the same time, Plaintiff John Doe 1 continued to follow-up on his report to Defendant USASF.

198.     Not until September 18, 2020, nearly three months after the initial report, did Defendant USASF's SafeSport administrator confirm that Defendant USASF had initiated a third-party investigation.

199.     On September 22, 2020, Plaintiff John Doe 1 scheduled a call via Zoom with Kevin McNeil, an authorized representative of USASF.

200.     On September 23, 2020, Plaintiff John Doe 1 met with Mr. McNeil via Zoom, and provided details of the incident.

201.     Mr. McNeil asked Plaintiff John Doe 1 for character witnesses, and Plaintiff John Doe 1 provided names of two of his former teammates.

202.     During the interim of the allegations, Defendants Hale and Davis were temporarily suspended by Defendant USASF.

203.     On November 19, 2020, however, both Hale and Davis were mysteriously reinstated.

204.     Plaintiff John Doe 1 was not notified of the decision to reinstate Hale or Davis.

205.     On November 20, 2020, Plaintiff John Doe 1 emailed Amy Clark to request a meeting about Defendant USASF's decision to reinstate Defendants Hale and Davis.

206.   Ms. Clark notified Plaintiff John Doe 1 that he would be speaking instead with counsel for USASF.

207.   On November 23, 2020, Plaintiff John Doe 1 spoke with counsel for Defendant USASF about the incident.

208.   As set forth in the call:



14  ████████████ so we're both on the
15  same time. I get so confused out here
16  sometimes. I deal with people on both
17  coasts.
18  ████████████ Right.
19  ████████████ And it's hard to
20  keep it straight. I wanted to give you a
21  call. First, I don't make the decisions
22  in these cases myself. My job is just to
23  make sure that the procedures that have

Page 5

1  been established were followed. I know
2  that interviews were conducted of you, and
3  Davis and Hale, Detective Hale — by
4  Detective Hale. He is — he is an
5  independent person. He's not an employee
6  of US All Star.
7     He reported to us that he had to
8  conclude that the proof did not establish
9  a violation that occurred. He said that,
10  you know, you testified you were abused,
11  and they denied it. And there were no
12  witnesses to support your claims. So in
13  other words, he told us he couldn't go one
14  way or the other. So it's really what we
15  call a draw. So our hands are tied. It's
16  going to have to be closed, as far as
17  we're concerned, has been closed.

The call continued:

32

Page 6

1.      Now, beyond that, you know, what --
2.    what they did. you know, may in -- may
3.    call for other disciplinary measures, but
4.    I don't think that has been concluded yet.
5.                    So I just -- I also
6.    just want to be clear. So me having
7.    screen shots of messages of them,
8.    soliciting me to come to their hotel room
9.    at 1:00 in the morning, knowing that I'm a
10.   minor, as well as having at least three
11.   other people confirm my story to the
12.   investigator, that is not sufficient
13.   evidence. Is that -- is that what you are
14.   saying?
15.                    Well, I'm saying the
16.   evidence didn't quite turn out that way.
17.   The witnesses didn't witness the event
18.   that you're claiming happened.
19.                    Right. But they were
20.   aware of the event when it did -- when it
21.   was occurring.
22.                    Well, that's the
23.   problem, is that they didn't witness the

Page 7

1    event. They are accepting what you told
2    them as true,        . And I'm not saying
3    it's not, but I'm just saying it's just
4    not proof as far as the investigator was
5    concerned.
6                    But them soliciting me
7    to come to their hotel room was not
8    sufficient evidence either that that did
9    happen?
10                   That -- that is
11   something that is still, as I mentioned to
12   you, under consideration by the
13   disciplinary committee on what that might
14   -- what actions that might justify. But
15   the first thing was to determine whether
16   or not there was proof that the violation
17   had occurred. If it had been established,
18   they would be permanently ineligible, so
19   that was the first step.
20                   Okay. So it seems like
21   -- okay. I don't have anymore questions.
22                   Okay. Well, I'm
23   sorry. That's all I can -- you know, all



209.    Following this call, Plaintiff John Doe 1 never heard from Defendant USASF again, and Defendants Hale and Davis were allowed to continue working with minor children in Varsity-affiliated USASF member gyms.

210.    Plaintiff was never informed about Amy Clark's concerns, which she expressed to law enforcement, that Plaintiff was not Defendants' Hale and Davis' only victim.

211.    At all times relevant to this complaint, Defendants USASF, as authorized by the Varsity Defendants was responsible for the oversight and governance of All-star cheer, and was further responsible for ensuring the sport was safe and did not unduly expose athletes to the risk of harm, including sexual abuse.

212.    At all times relevant to this complaint, Defendants Hale, Davis, and ShowPro were certified members of Defendant USASF, a designation created by the Varsity Defendants and Defendant USASF to signify that an individual adult met All-star standards with respect to safety.

213.     At all times relevant to this Complaint, the Varsity Defendants warranted to minor participants and their families that the certification process was put in place to govern and empower All-star with only those adults who could be trusted to be around children.

214.     At all times relevant to this complaint, Amy Clark, Ginger Wiczak, and Kevin McNeil were employees and/or authorized representatives of Defendant USASF, working in the course and scope of their employment.

215.     Moreover, at all times relevant to this complaint, Defendant USASF and its authorized representatives, were also authorized representatives of the Varsity Defendants, charged with implementing the Varsity Defendants' participant protection function.

216.     At all times relevant to this complaint, Defendants Hale, Davis, and ShowPro could not have accessed minor USASF athletes without first being members of Defendant USASF.

217.     Moreover, at all times relevant to this complaint, Defendants USASF and the Varsity Defendants represented that Defendants Hale, Davis, and ShowPro were credentialed members of USASF or authorized by USASF to conduct business, adhering to Defendant USASF's policies and procedures protecting minors, including John Doe 1, from physical, sexual, and mental abuse.

218.     At all times relevant to this complaint, and upon information and belief, Defendant USASF and the Varsity Defendants, allowed, and represented that Defendants Hale, Davis, and ShowPro were qualified to train, mentor, and otherwise interact with minor participants, including Plaintiff John Doe 1, and so gave these Defendants wide access to minor athletes, including Plaintiff John Doe 1.

219.     Moreover, at all times relevant to this complaint, and upon information and belief, Defendant USASF authorized Defendant Hale and Defendant Davis' membership in USASF.

220.    In addition, and at all times relevant to this complaint, Defendant USASF and the Varsity Defendants knew, or had reason to know that Defendants Hale and Davis had engaged in misconduct with minor athletes, including Plaintiff John Doe 1.

221.    During the operative timeframe of this complaint, Defendants Hale and Davis were coached, trained, mentored, and/or acted as authorized representatives of Defendants USASF, and the Varsity Defendants, responsible for training and interacting with minor children, including Plaintiff John Doe 1.

222.    At all times relevant to this complaint, Defendants USASF, and the Varsity Defendants put Defendants Hale and Davis in positions of particular trust, and represented to the cheer community, including Plaintiff John Doe 1 that Hale and Davis were certified safe vendors and were   safe providers of choreography for minor athletes.

223.    Yet, at all times relevant to this complaint, Defendants Davis and Hale posed a danger to minor athletes such as Plaintiff John Doe 1, including a danger from sexual grooming, harassment, exploitation, and abuse.

224.    Members of Defendant USASF and the Varsity Defendants' organization knew or had reason to know of the abuse perpetrated upon Plaintiff John Doe 1 by Defendants Hale and Davis, yet did nothing.

225.    Defendants Hale, Davis, and ShowPro remained in lock step with the Varsity Defendants, working as authorized vendors or affiliates of the Varsity Defendants, promoting the Varsity Defendants' sanctioned events, and merchandise, participating in the Varsity University training conferences, and annually renewing their USASF memberships in order to continue their Varsity eligibility while exploiting minors under the ratification of all Defendants.

226.    Meanwhile, the Varsity Defendants and Defendant USASF knew or should have known of the abuse being perpetrated by their members, such as Defendants Hale and Davis.

## COUNT I
## GROSS NEGLIGENCE/RECKLESSNESS
## (ALL DEFENDANTS)

227.     Plaintiff hereby realleges the preceding paragraphs as though repeated verbatim herein.

228.     Plaintiff brings this claim for gross negligence against all Defendants.

229.     At all times relevant to this Complaint, Defendants have been responsible for the safety, health, and welfare of minor athletes, such as Plaintiff, who were members of Defendant USASF, participants in the Varsity Defendants' network, competing for Varsity-affiliated gyms, and under the care, custody, and control of each of Defendant USASF and the Varsity Defendants, respectively.

230.     At all times relevant to this Complaint, Defendant USASF and the Varsity Defendants made numerous representations and misrepresentations regarding their roles in safeguarding athletes against the threat of sexual abuse, and have also taken affirmative steps toward these representations including creating codes of conduct, policies, procedures, guidelines, and instating certain training and councils specifically geared toward protecting athletes within the Varsity network from sexual abuse.

231.     In addition, and as set forth herein, at all times relevant to this Complaint, Defendants USASF and the Varsity Defendants created the system of coach and vendor certification, and have held out to the All-star community, which included Plaintiff John Doe 1, that this credentialing was intended to and did in fact amount to a seal that Defendant USASF and the Varsity Defendants had specifically vetted and determined that coaches and vendors, including Defendants Hale and Davis were safe for interacting with minor athletes, including Plaintiff John Doe 1.

232.     As evidenced by Defendant USASF and the Varsity Defendants' representations, acts, and affirmative steps, at all times relevant to this complaint, Defendants have been aware that there are dangers associated with coaches training minor athletes, including risks associated with inappropriate, and non-consensual sexual touching, emotional, and physical abuse.

233.     At all times relevant to this Complaint, and as set forth above, Defendants represented that they had rules, policies and/or procedures specifically intended to address the risks of sexual, physical, and mental exploitation of minor athletes by coaches, and adults who interact with these athletes by virtue of the adults' positions of power. These policies, procedures, rules, and/or guidelines included representations related to SafeSport, and that Defendants USASF were uniquely situated to help govern and regulate All-star cheer.

234.     At all times relevant to this complaint, Defendants have represented that competing on behalf of the Varsity network, governed by Defendant USASF, was a means to maximize athlete protection for minor athletes such as Plaintiff John Doe 1.

235.     At all times relevant to this complaint, Defendants owed special duties to protect minor children, such as Plaintiff John Doe 1, a USASF-member athlete competing on behalf of a credentialed member club affiliated with the Varsity Defendants.

236.     In his capacity as a member athlete, Plaintiff John Doe 1 entrusted Defendants with Plaintiff John Doe 1's physical, mental, and emotional care and well-being, and Defendants held themselves out as being uniquely able to protect minors such as Plaintiff John Doe 1 from harm caused by physical or other abuse.

237.     Despite this, at all times relevant to this Complaint, Defendants have been aware that violations to their internal policies, processes, procedures, and guidelines related to athlete safety, and, in particular, safety against harm from sexual, physical, and emotional abuse and

exploitation has happened on a regular and continuous basis by and through USASF-certified adult members, including Defendants Hale and Davis.

238.     Defendants USASF, Varsity Defendants, and Defendants ShowPro, Davis, and Hale violated their responsibilities and duties to Plaintiff John Doe 1 in one or more of the following particulars:

      f. Allowing Defendants Davis, Hale, and ShowPro access to Plaintiff John Doe 1 when Defendants knew or reasonably should have known that Defendants Hale and Davis posed a threat of harm to Plaintiff John Doe 1;

      g. Permitting Defendants Hale and Davis to remain in positions of power and particular trust over minor athletes, such as Plaintiff John Doe 1;

      h. Disregarding and/or disobeying Defendant USASF and the Varsity Defendants Member Codes of Conduct and other policies and/or procedures related to misconduct with member-athletes;

      i. Failing to recognize and implement policies, procedures, and/or guidelines related to a known power imbalance between Plaintiff John Doe 1 and Defendants Hale and Davis;

      j. Allowing Defendants Hale and Davis to isolate Plaintiff John Doe 1 despite the known dangers associated with one-on-one coaching and interactions;

      k. Failing to enforce social media and other communications policies and procedures related to inappropriate conduct between minor athletes and adult members;

      l. Failing to report known instances of abuse or misconduct;

      m. Failing to adhere to SafeSport policy or procedure;

n. Failing to investigate potential misconduct, including among and between Defendants Hale, and Davis, and Plaintiff John Doe 1, despite knowledge that such inappropriate contact had occurred;

o. Engaging in a fraudulent and/or rubber stamped investigatory process, which amounted to little more than allowing the individual Defendants to deny Plaintiff's allegations of sexual abuse and/or misconduct;

p. Failing to train, supervise, monitor, or implement policies and procedures related to Defendants' employees and/or authorized representatives and their interactions with minors such as Plaintiff John Doe 1;

q. Failing to provide safe premises;

r. Failing to protect Plaintiff John Doe 1 from the foreseeable harm inflicted on him by a third party;

s. Failing to adequately certify and/or recertify member-adults including Hale and Davis, despite knowledge that these adults posed significant risks of harm to member-athletes including Plaintiff John Doe 1;

t. Continuing to hold Defendants Hale, Davis, and ShowPro out as trustworthy adults capable of providing safe services in the sport; and

u. Such other conduct as may be revealed.

239. At all times relevant to this complaint, Defendants USASF, Hale, Davis, ShowPro, and the Varsity Defendants have known that one-on-one coaching, and intimate coach contact is an enhanced feature of All-star coaching that generates a great deal of money for all Defendants in the enterprise.

240.     Defendants are also aware of the close personal relationships many of these coaches form with minor athletes who adult members gain access to by virtue of their USASF and USA Cheer credentials.

241.     At all times relevant to this complaint, Defendants USASF, Hale, Davis, ShowPro, and the Varsity Defendants have further known that one-on-one coaching, and intimate coach contact increases the likelihood of sexual abuse, and would exponentially increase the likelihood that Plaintiff John Doe 1 was abused by adult credentialed members.

242.     At all times relevant to this Complaint, and as set forth herein, Defendant USASF and the Varsity Defendants have been aware that, despite the known dangers of one-on-one contact, adult members routinely engage in intimate and exclusive contact with minor athletes, as well as travel with minors across state lines, even staying in the same hotel rooms with no other chaperone, while participating in competitions, camps, and clinics.

243.     At all times relevant to this Complaint, the abuse complained of occurred under circumstances that were contrived by, controlled by, and within the ability to control by Defendant USASF and the Varsity Defendants.

244.     As set forth herein, Defendants USASF and the Varsity Defendants were directly responsible for all clinics and credentialed adults operating within the Varsity network during the scope of that network.

245.     As set forth herein and above, Defendant USASF and the Varsity Defendants had specific knowledge related to the conduct and allegations of misconduct of Defendants Hale and Davis.

246.     As set forth herein, following the sham investigative process undertaken by Defendant USASF related to Plaintiff's allegations of sexual abuse, neither Defendant USASF nor

41

the Varsity Defendants permanently or otherwise impeded Defendants Hale, Davis, or ShowPro's access to minor children within the Varsity network.

247.    Defendants' actions and omissions, by and through their authorized agents, were unreasonable, constituted the total absence of care, and breached duties owed to Plaintiff, and actually and proximately contributed to and/or caused damages.

248.    Defendants' actions and omissions as described above, by and through authorized agents, were in violation of Defendants' own policies, procedures, and what would be reasonable under the circumstances.

249.    Each incident of abuse and exploitation detailed in this matter constitutes a separate occurrence.

250.    Plaintiff is entitled to damages pursuant to the laws of Ohio, including but not limiting to the following:

   a.   Compensatory, actual, and consequential damages;

   b.   Punitive damages; and

   c.   Any and all other and further relief as this Court may deem appropriate including pre and post judgment interest.

## COUNT II
## NEGLIGENT SUPERVISION
### (VARSITY DEFENDANTS, DEFENDANT USASF, AND DEFENDANT SHOWPRO)

251.     Plaintiff hereby realleges the foregoing paragraphs as though repeated verbatim herein.

252.     Throughout the relevant timeframe of this complaint, Defendant USASF, the Varsity Defendants, and Defendant ShowPro continued to employ, credential, and place Defendants Hale and Davis in particular and unique positions of trust by allowing access to minor athletes, such as Plaintiff John Doe 1.

253.     This control, credentialing, employment, and the unique positions of trust in which Defendants USASF, the Varsity Defendants, and Defendant ShowPro placed Defendants Hale and Davis included positions and circumstances where Defendants Hale and Davis were allowed to share and did in fact share contact information, social media profile information, certain online handles, and other information that facilitated one-on-one exchanges and communication by and between Defendants Hale and Davis and John Doe 1.

254.     Despite claiming to conduct background checks and make annual eligibility certifications for coaches, gyms, or adult members where complaints or reports of misconduct have been made, at all times relevant to this Complaint, Defendant USASF, the Varsity Defendants and Defendant ShowPro allowed Defendants Hale and Davis to operate, manage, and coach for Defendant ShowPro and to provide choreography services coming into direct contact with minor athletes including Plaintiff John Doe 1.

255.     At all times relevant to this Complaint, Defendant USASF, the Varsity Defendants, and Defendant ShowPro knew or should have known that Defendants Hale and Davis were reaching out to Plaintiff John Doe 1 in one-on-one settings and through electronic mediums in order to foster a relationship with John Doe 1 including a relationship outside of the strict confines

43

of cheer, and that this one-on-one communication was strictly prohibited as it increased the likelihood of inappropriate and sexually explicit behavior by adults within the Varsity Defendants' network and minor participants.

256.    At all times relevant to this Complaint, Defendant USASF, the Varsity Defendants, and Defendant ShowPro knew or should have known that Defendants Hale and Davis were engaged in inappropriate grooming and sexual misconduct related to Plaintiff John Doe 1, including via social media, and other electronic methods of communication, beginning when Plaintiff John Doe 1 was just 14 years of age and continuing until Plaintiff John Doe 1 was 17 years old.

257.    As set forth herein, despite knowledge of the one-on-one interaction by and between Defendants Hale, and Davis, and John Doe 1, Defendants USASF, ShowPro and the Varsity Defendants failed to take reasonable corrective action, instead preserving the reputation of the enterprise so that trust in its safety continued to generate income for the enterprise.

258.    Moreover, and as set forth herein, despite knowledge that Defendants Hale, and Davis were engaged in improper conduct with respect to Plaintiff John Doe 1.

259.    At all times relevant to this Complaint, Defendant USASF and the Varsity Defendants' business model relies upon certifying private gyms, coaches, and adult members pursuant to the USASF standards, which purport to place athlete health and safety above all else.

260.    Moreover, Defendant ShowPro's business model relies upon being an authorized choreographer, allowed to contact and provide services for Defendant USASF's minor athletes.

261.    In perpetuating a business model built on trust and athlete safety, Defendants specifically undertook a duty to ensure that reputation for trust and safety was earned and that dangerous individuals committing atrocious illegal acts were removed from the Varsity network.

262. Defendants breached this duty in a number of particulars including by credentialing Defendants Hale and Davis, allowing them to remain in settings with regular access to minor athletes when Defendants knew or should have known they posed a significant threat of harm, failing to act or otherwise disregarding reports of abuse, discounting or otherwise ignoring specific information about Defendants Hale and Davis and inappropriate interactions with Plaintiff John Doe 1 both prior to the night of the sexual assault recounted herein and thereafter, among other particulars.

263. Defendants' grossly negligent, willful and wanton conduct, set forth more fully herein, directly and proximately caused Plaintiff's injuries.

264. As a direct and proximate result of Defendants' conduct, the Plaintiff has sustained physical, mental, and emotional damages, among others.

265. Plaintiff is therefore entitled to a judgment against Defendants, and for such actual and consequential damages in an amount to be determined by a jury trial.

### COUNT III
### ASSAULT/BATTERY
### (DEFENDANT HALE, AND DEFENDANT DAVIS)

266. Plaintiff hereby realleges the foregoing paragraphs as though repeated verbatim herein.

267. At all times relevant to this complaint, the assault, battery, and abuse set forth herein, occurred while Plaintiff was a minor under eighteen years of age, and while he was a citizen and resident of Cuyahoga County, Ohio.

268. As set forth in this Complaint, Defendant ShowPro, Defendants Hale and Davis assaulted Plaintiff John Doe 1, imprisoning him within the confines of a hotel room, forcing him to engage in unwanted sexual acts, despite Plaintiff John Doe 1's efforts to refuse and to leave from Defendants' Hale and Davis' hotel room.

45

269.     As a direct and proximate result of these Defendants' conduct, set forth more expressly above, Plaintiff John Doe 1 experienced bodily injury, physical pain and suffering, and mental anguish and is entitled to an award of actual damages in an amount to be determined through a trial of this matter.

## COUNT IV
## UNJUST ENRICHMENT
## (AS TO DEFENDANT SHOWPRO, THE VARSITY
## DEFENDANTS, DEFENDANT USASF)

270.     Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

271.     At all times relevant to this Complaint, and as set forth herein, Plaintiff John Doe 1 was a member of Defendant USASF as a pre-requisite to competing for a gym affiliated with the all-powerful Varsity network.

272.     During the interim of his membership with Defendants USASF and the Varsity Defendants, Plaintiff John Doe 1 was forced to undergo a choreography clinic under the control of Defendants USASF and the Varsity Defendants and the tutelage of Defendant ShowPro.

273.     In this capacity, and at all times relevant to this Complaint, Plaintiff John Doe 1 conferred non-gratuitous benefits upon Defendants USASF, ShowPro and the Varsity Defendants including annual competition and membership fees, fees for the aforesaid clinic, and fees associated with music and choreography, as well as continuous revenue toward uniforms, accessories, private training, and other monetary benefits.

274.     Defendants realized the value of these benefits, including steady annual revenue from Plaintiff John Doe 1.

275.     As set forth herein, at least some of the monetary benefits conferred by Plaintiff John Doe 1 upon Defendants USASF and the Varsity Defendants were earmarked for specific safety measures promised by these Defendants but which these Defendants failed to deliver.

276.    In addition, and as it relates to Defendant ShowPro, Plaintiff John Doe 1 conferred monetary benefits upon Defendant ShowPro for choreography services, and it was not reasonably for Plaintiff to have been subjected to illicit and unwanted touching by Defendant ShowPro's agents.

277.    To date, none of the benefits Defendants realized have been returned or otherwise disgorged.

278.    Under the circumstances set forth herein and above, it would be inequitable for Defendants to retain the benefits conferred by Plaintiff John Doe 1.

279.    Plaintiff is therefore entitled as a matter of equity to recover these benefits from Defendants and for all such additional relief as this Court deems proper.

**COUNT V**
**NEGLIGENT SECURITY**
**(AS TO THE VARSITY DEFENDANTS, DEFENDANT**
**SHOWPRO, DEFENDANT USASF)**

280.    Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

281.    At all times relevant to this complaint, the Varsity Defendants, Defendant USASF, and Defendant ShowPro, sponsored, created, hosted, attended and oversaw private all-star gyms, camps, clinics, coaches, choreographers and competitions, all established and governed by the Varsity Defendants and Defendant USASF, and under the supervision of Defendants of the Varsity Defendants and Defendant USASF.

282.    At all times relevant to this complaint, if athletes competed at the private all-star gyms, camps, clinics and competitions hosted by the Varsity Defendants, the athletes had no meaningful choice but to attend at the locations, and under conditions, established by Defendants, including with adults who were self-selected by Defendants USASF and the Varsity Defendants.

283.   The Varsity Defendants, Defendant ShowPro and Defendant USASF received substantial revenue from these events either directly associated with these events, or with the fees and annual costs paid by athletes, including Plaintiff John Doe 1.

284.   As part of their promotion of these events, the Varsity Defendants, Defendant ShowPro, and Defendant USASF represented that the locations and events were safe for attendees including representing that adults with whom minor athletes would interact were duly certified and credentialed, a seal created by Defendants USASF and the Varsity Defendants as a guaranty of safety for a coach, or other approved vendor.

285.   At all times relevant to this Complaint, Defendants Hale, Davis, and ShowPro were duly credentialed coaches and businesses authorized to interact with minor athletes in the Varsity network specifically as a result of this credentialing and/or certification.

286.   At all times relevant to this Complaint, the locations where Plaintiff John Doe 1 interacted with Defendants Hale and Davis were under the express authority and control of Defendants USASF and the Varsity Defendants, and Defendants Hale and Davis were duly authorized agents and/or representatives of Defendants USASF, ShowPro and the Varsity Defendants.

287.   The Varsity Defendants, Defendant ShowPro, and Defendant USASF violated their responsibility to protect Plaintiff John Doe 1 in one or more of the following particulars:

> a.   Disparate enforcement of policies, procedures, and guidelines related to suspensions, with the result that coaches were still allowed to attend Varsity Competitions and represent Varsity-affiliated private all-star gyms;
>
> b.   Failure to provide adequate monitoring;
>
> c.   Failure to provide sufficient background checks;
>
> d.   Engaging in a rubber stamping certification and/or credentialing process;

e. Allowing Defendants Hale and Davis to access minor athletes despite the fact that they posed a known threat of harm;

f. Failing to monitor, enforce, or otherwise implement policies and procedures to ensure that minor athletes were not exposed to drugs and alcohol, and sexual solicitation and exploitation within the sport;

g. Failing to monitor, enforce, or otherwise implement policies and procedures to ensure that minor athletes were not exposed to pornographic images, or were not solicited to provide pornographic images while in the course and scope of the sport;

h. Failing to ensure that Varsity member coaches and adults were not forcing themselves upon minor athletes, including at Varsity member gyms and Varsity events;

i. Failing to ensure that underage athletes were not being forced into non-consensual sexual encounters with adults affiliated with Defendants;

j. Such additional conduct as may be revealed during discovery.

288.     As set forth in the Complaint, in an electronic message sent by Defendant USASF's authorized representative Amy Clark to local law enforcement, Clark expressly acknowledges that Defendants Davis and Hale may have done the same thing to additional minor athletes in Varsity cheer.

289.     Clark's message necessarily implies that Defendants USASF and the Varsity Defendants had, at the very least, prior reports of misconduct against Defendants Hale and Davis involving other minor athletes.

290.     As such, it was incumbent upon Defendants USASF, the Varsity Defendants, and Defendant ShowPro to monitor and reasonably protect minor participants from the foreseeable inappropriate communications and misconduct set forth in this Complaint.

291.    As a direct and proximate result of Defendants' conduct, Plaintiff has sustained and will continue to sustain significant mental, physical, and emotional injuries and damages.

292.    As a direct and proximate result of these Defendants' conduct, set forth more expressly above, Plaintiff John Doe 1 experienced bodily injury, physical pain and suffering, and mental anguish and is entitled to an award of actual damages in an amount to be determined through a trial of this matter.

## COUNT VI
## RESPONDEAT SUPERIOR
### (AS TO THE VARSITY DEFENDANTS, USASF, AND SHOWPRO)

362.    Plaintiff hereby realleges the foregoing paragraphs as though repeated verbatim herein.

363.    At all times relevant to this complaint, Defendant USASF employed and retained certain individuals, including Amy Clark and Ginger Wiczak to provide safety and regulatory services, including, without limitation, conducting investigations intended to prevent and mitigate athlete harm in USASF cheer.

364.    At all times relevant to this complaint, agents, employees, and/or authorized representatives of Defendant USASF were acting in the course and scope of their employment.

365.    At all times relevant to this complaint, Defendant ShowPro employed and retained Defendants Hale and Davis as coaches and choreographers and authorized Defendants' access to minor athletes including Plaintiff John Doe 1.

366.    During timeframes in this Complaint, including when they first met Plaintiff John Doe 1, familiarized themselves with Plaintiff John Doe 1, and ingratiated themselves with Plaintiff John Doe 1 and various of the private All-star gyms where Plaintiff John Doe 1 was a minor participant, Defendants Hale and Davis were acting in the course and scope of their employment,

as authorized representatives of Defendant ShowPro, Defendant USASF and the Varsity Defendants.

367.   At all times relevant to this complaint, the Varsity Defendants empowered and/or authorized Defendant USASF to operate as the Varsity Defendants' agent and/or representative with respect to athlete safety measures.

368.   As such, at all times relevant to this complaint, the Varsity Defendants, Defendants USASF and ShowPro were as responsible for the actions, inactions, omissions and failures of their employees, agents, and/or representatives as though they undertook the actions themselves.

369.   As set forth herein, these Defendants failed to properly train, supervise, provide monitoring, and/or to implement the policies, procedures, and guidelines, including those against one-on-one communications, greatly increasing the likelihood of bodily injury and harm to athletes such as Plaintiff John Doe 1.

370.   As set forth herein, Defendants Hale and Davis improperly contacted, committed sexual battery, non-consensual touching, and inappropriate acts against Plaintiff John Doe 1 all while in the course of a duly authorized choreography and skills clinic organized and overseen by the Varsity Defendants at a Varsity-affiliate gym.

371.   As set forth herein, Defendants Hale and Davis engaged in a course of conduct, including grooming conduct, that occurred over a period of several years from the time Plaintiff John Doe 1 was just fourteen or fifteen until he was seventeen and culminating in an unwanted sexual assault against Plaintiff John Doe 1.

372.   As set forth herein, the Varsity Defendants and Defendant USASF, by and through employees, representatives, and/or agents failed to appropriately monitor, report, and implement policies or procedures in All-star cheer, increasing the likelihood of harm against minor athletes, such as Plaintiff John Doe 1.

373.   This conduct directly and proximately caused Plaintiff John Doe 1 to sustain continuing and ongoing injuries, including physical and emotional damages.

374.   Plaintiff John Doe 1 therefore seeks an order from this court against Defendants, and is further entitled to actual, consequential, and such additional damages, including punitive damages as this court deems just and proper.

**COUNT VII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(AS TO ALL DEFENDANTS)**

375.   Plaintiff John Doe 1 realleges the preceding paragraphs as though repeated verbatim herein.

376.   As set forth herein and above, at all times relevant to this complaint, Defendants had a duty or duties to Plaintiff to use due and reasonable care to protect Plaintiff from foreseeable harm in a number of particulars, and not to inflict physical, emotional, or psychological injury upon the Plaintiff.

377.   As set forth herein and above, Defendants violated their responsibilities to Plaintiff John Doe 1 in one or more particulars, including:

a.   Certifying to Plaintiff that Defendants were responsible for providing safe gyms and competitive environments;

b.   Certifying to Plaintiff and his family that the adults involved in the competitions and training, including choreographers, had been duly vetted;

c.   Allowing coaches to continue participating and accessing child-athletes even after Defendants knew the coaches had exhibited disturbing behavior;

d.   Facilitating an unchaperoned environment for child-athletes;

e.   Fostering a party culture for child athletes, including an environment where alcohol and drugs were readily available;

f.      Encouraging coaches to create a steady stream of new child athletes for the time that the current athletes aged out;

g.      Failing to provide appropriate security to ensure a safe environment for child athletes free from harm;

h.      Failing to enforce, implement, or abide by policies and procedures related to vetting, security, and screening;

i.      Disparate enforcement of policies, procedures, and guidelines related to coaching suspensions, with the result that coaches and choreographers were still not permanently banned from interacting with minor athletes;

j.      Failure to provide adequate monitoring at the gyms, camps, events and competitions;

k.      Failure to undertake sufficient background checks;

l.      Failing to monitor, enforce, or otherwise implement policies and procedures to ensure that minor athletes were not exposed to drugs and alcohol;

m.      Failing to monitor, enforce, or otherwise implement policies and procedures to ensure that minor athletes were not exposed to pornographic images, or were not solicited to provide pornographic images while attending Varsity events or cheering for or on the premises of USASF member-gyms;

n.      Exposing minor athletes to potential harmful adults with knowledge or a reckless disregard for the safety of the minor athletes;

o.      Failing to ensure that adult coaches and athletes were not forcing themselves upon minor athletes;

p.      Failing to ensure that underage athletes were not being forced into non-consensual sexual encounters with adults;

q.      Such additional conduct as may be revealed during discovery.

378.    Defendants' conduct set forth above is so outrageous as to go beyond all bounds of decency and is to be regarded as odious and utterly intolerable and unacceptable in a civilized community.

379.    Moreover, Defendants' conduct has directly and proximately caused serious, severe, and pervasive emotional and mental injury to Plaintiff John Doe 1, including physical manifestations of harm such as disordered earing, which will require reasonably certain future care.

380.    Plaintiff John Doe 1 now seeks judgment against Defendants and for damages in an amount to compensate him for the physical, psychological and emotional harm caused by Defendants' conduct, as well as punitive damages, and such additional damages in law or equity as this court deems proper.

## COUNT VIII
## VIOLATION OF CONSUMER SALES PRACTICES ACT, R.C. 1345.02(A)
### (AS TO THE VARSITY DEFENDANTS, DEFENDANT USASF, AND DEFENDANT SHOWPRO)

381.    Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

382.    At all times relevant to this complaint, the above-named Defendants entered into contractual or quasi-contractual relationships with the Plaintiff and his family, taking fees for membership, training, choreography, competition, and travel, while promising safe environments overseen by vetted adult members of USASF.

383.    The safety and trust touted by these Defendants was material to Defendants' business model, and with the contractual arrangements and relationships entered into between Plaintiff and his family and the Defendants.

384.   The safety and trust referred to herein, which was a material representation by Defendants, caused Plaintiff and his family to pay copious annual fees and dues, as well as fees associated with competition, travel, music, choreography, uniforms, and other monetary assessments, all while Defendants knew or had reason to know that Plaintiff was being subjected to sexual and financial abuse and exploitation.

385.   When Defendants obtained knowledge of complaints about certain inappropriate or illicit activity by and between Defendants Davis and Hale and Plaintiff, the above-named Defendants failed to implement proper protocols, policies, and/or procedures, or failed to abide by same to ensure the ability of minor children, such as Plaintiff, to be free from sexual and/or physical and emotional harm.

386.   The Ohio Consumer Sales Practices Act ("CSPA"), R.C. 1345.02(A), prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with consumer transactions.

387.   Defendants are "suppliers" as they are engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer.

388.   Defendants' conduct constitutes deceptive practices in connection with consumer transactions, as evidence by the fact that numerous Plaintiffs, who were minors at the time of the alleged misconduct, have come forward with similar information related to Defendants' conduct, failures, act, and/or omissions in overseeing, enforcing, and providing a secure and safe environment for Plaintiff and other child athletes.

389.   Defendants' unfair and deceptive methods and practices have directly and proximately resulted in harm to Plaintiff John Doe 1, including physical harm, as well as harm related to contractual duties and responsibilities Defendants held themselves out as providing to Plaintiff, and which Defendants neither executed upon nor delivered.

390.    Plaintiff is entitled to damages pursuant to the laws of the State of Ohio, including but not limited to:

    a.   Compensatory, actual, and consequential damages;

    b.   Reasonable attorney's fees and costs;

    c.   Punitive damages where available; and

    d.   Such additional and further relief as this Court may deem appropriate including pre- and post-judgment interest.

## COUNT IX
## (ALL DEFENDANTS – PUNITIVE DAMAGES)

391.    Plaintiff realleges the preceding paragraphs as though repeated verbatim herein.

392.    The acts and conduct alleged herein were committed by Defendants in violation of their legal duties to Plaintiff John Doe 1 and were committed intentionally, deliberately, and/or recklessly with wanton and reckless disregard for John Doe 1's rights and safety.

393.    As a direct and proximate result of Defendants' deliberate, wanton, and/or reckless misconduct, Plaintiff John Doe 1 suffered severe emotional and physical harm.

394.    As a direct and proximate result of the intentional, deliberate, wanton, and reckless conduct, acts, and omissions of Defendants, John Doe 1 incurred damages as outlined herein and above and will continue to incur damages in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by the laws of the United States and Ohio, including but not limited to the following:

    a.   Compensatory, actual, and consequential damages to Plaintiff, trebled where permitted by statute;

56

b.    Alternatively, liquidated damages as to Count I;

c.    Costs of this action and attorneys' fees to Plaintiff;

d.    Punitive damages where permitted; and,

e.    Any and all other and further relief as this Court may deem appropriate.

Respectfully submitted,

/s/ Chelsea C. Weaver
Chelsea C. Weaver          (0096850)
COOPER ELLIOTT
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (Facsimile)
chelseaw@cooperelliott.com

Bakari T. Sellers*
Amy E. Willbanks*
Mario A. Pacella*
Jessica L. Fickling*
Alexandra Benevento*
STROM LAW FIRM
6923 North Trenholm Road, Suite 200
Columbia, South Carolina 29206
(803) 252-4800
(803) 252-4801 (Facsimile)
bsellers@stromlaw.com
awillbanks@stromlaw.com
mpacella@stromlaw.com
jfickling@stromlaw.com
abenevento@stromlaw.com

S. Randall Hood*
Chad A. McGowan*
1539 Health Care Drive*
MCGOWAN, HOOD, FELDER & PHILLIPS, LLC
Rock Hill, South Carolina 29732
(803) 327-7800
(803) 324-1483 (Facsimile)
rhood@mcgowanhood.com
cmcgowan@mcgowanhood.com

Whitney Boykin Harrison*
MCGOWAN, HOOD, FELDER & PHILLIPS, LLC
1517 Hampton Street
Columbia, South Carolina 29201
(803) 779-0100
(803) 787-0750 (Facsimile)
wharrison@mcgowanhood.com

*Petition to be Admitted Pro Hac Vice to Follow*

*ATTORNEYS FOR THE PLAINTIFF*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Chelsea C. Weaver