# Exhibit 3

**AXA**

October 6, 2023

<u>Via Email</u>
([alistangle@usasf.net](alistangle@usasf.net))

Alison Stangle
Executive Director
US All Star Federation dba IASF
8275 Tournament Drive
Suite 325
Memphis, TN  38115

**<u>PARTIAL DECLINATION,
RESERVATION OF RIGHTS AND
REQUEST FOR INFORMATION</u>**

| | | |
|---|---|---|
| Re: | Insured: | US All Star Federation dba IASF. |
| | Lawsuit: | *John Doe 1 v. Varsity Spirit, LLC et al., Case No. CV 23 984774 (Court of Common Pleas, Cuyahoga County, Ohio)* |
| | Greenwich Policies: | ASG0896965 (10/22/14-15) |
| | | ASX0896975 (10/22/14-15) |
| | | ASG089696501 (10/22/15-16) |
| | | ASX089697501 (10/22/15-16) |
| | | ASG089696502 (10/22/16-17) |
| | | ASX089697502 (10/22/16-17) |
| | Claim No.: | 51253100101 |

Dear Ms. Stangle:

I write on behalf of Greenwich Insurance Company ("Greenwich") regarding the above-referenced matter. Greenwich acknowledges receipt of the tender by US All Star Federation dba IASF ("USASF") of the referenced lawsuit (the "Ohio State Court Action") under the referenced policies (collectively, the "Greenwich Policies").  This letter sets forth Greenwich's coverage position under the policies with respect to the Ohio State Court Action and requests certain documents and information.

For the reasons set forth below, Greenwich agrees to defend USASF in the Ohio State Court Action under policy No. ASG089696501 (10/22/15-16), subject to a full and complete reservation of rights. Greenwich declines coverage under policy Nos. ASG0896965 (10/22/14-15) and ASX0896975 (10/22/14-15), as the acts of abuse alleged in the complaint did not take place until after the expiration of those policies.  Greenwich further declines coverage under policy Nos. ASG089696502 (10/22/16-17) and ASX089697502, as the acts of abuse alleged in the complaint took place prior to the inception of those policies.  Moreover, as discussed in more detail below, many of the claims asserted in the Ohio State Court Action are not covered under the policies.  Greenwich reserves the right to decline coverage and withdraw from the defense of the Ohio State Court Action should it be determined that none of the claims are covered under the policies.

In considering the request for coverage, we have reviewed the referenced Policies, as well as the allegations concerning the claims. No other policies were considered. If USASF asserts a right to coverage under any other policy issued by Greenwich, please submit notice pursuant to the notice provisions contained in that policy.

**Facts**

On November 28, 2022, Plaintiff filed a lawsuit against USASF and others in the United States District Court for the Northern District of Ohio, Eastern Division at Cleveland ("Federal Court Action"). By letter dated February 7, 2023, Greenwich agreed to defend USASF in the Federal Court Action under policy No. ASG089696501 (10/22/15-16), subject to a full and complete reservation of rights. On August 2, 2023, the court dismissed Counts 1 and 2 of the Federal Court Action complaint as against USASF and other defendants, and declined to exercise supplemental jurisdiction over the remaining state-law claims. Accordingly, the Federal Court Action was terminated.

Plaintiff filed a new complaint in Ohio State Court on August 31, 2023, which USASF forwarded to American Specialty Insurance and Risk Services on or about September 12, 2023. In addition to USASF, the complaint names as defendants Varsity Brands Holding Company, Inc., Varsity Spirit, LLC and Varsity Brands, LLC (collectively, "Varsity" or "Varsity Defendants"), ShowPro Choreography ("ShowPro"), Taji Davis ("Davis") and Brandon Hale ("Hale").

Plaintiff alleges that defendants Hale, Davis and ShowPro contracted to provide choreography services to a gym that Plaintiff attended in Avon Lake, Ohio in 2014 and in Brecksville, Ohio in 2015-2016. Defendants Hale, Davis and ShowPro are alleged to have been credentialed members of USASF or authorized by USASF to conduct business. Defendants Hale, Davis, and ShowPro allegedly acted in lock step with the Varsity Defendants, working as authorized vendors or affiliates, promoting the Varsity Defendants' sanctioned events and merchandise, participating in training conferences and annually renewing their USASF membership.

The Varsity Defendants allegedly started in the 1980s as a provider of private cheer camps, and then expanded into apparel, organizing competitions and operating sanctioning boards. Varsity Spirit, its affiliates and subsidiaries, allegedly provide branding and merchandise, competitions and camps, and defendant USASF is in charge of the regulatory side of cheer.

According to the complaint, the Varsity Defendants essentially created the world of competitive cheer, an environment with little adult supervision where young athletes are exposed to drugs, alcohol, and predatory conduct by coaches, choreographers, vendors and others. Plaintiff alleges that minor member athletes are required to participate in certain cheer camps and clinics, whereby USASF-approved vendors such as Davis, Hale and ShowPro are granted access to the athletes to teach certain cheer skills, stunts and tumbling. By representing a facially safe and superior environment, defendants collectively allegedly sought to create a revolving door of young athletes to perpetuate the organization, with each athlete spending tens of thousands of dollars each year for coaching, uniforms, camps, training competitions, and other merchandise, until the athletes either came of age or became coaches and gym owners.

In or around 2006, the Varsity Defendants allegedly began promoting certain All-Star member clubs and coaches as being "USASF Certified," a seal that Defendants represented was synonymous with a warranty that a gym, coach, choreographer, or any other adult or entity certified by USASF was held to the highest standards and followed best safety practices, including preventing athlete abuse. All-Star athletes competing on behalf of Varsity member gyms pay monthly or annual fees to the gym as

well as annual fees to the Varsity Defendants and USASF. The Varsity Defendants host "sanctioned" events, governed by USASF, which requires USASF membership in order to participate.

Plaintiff alleges that the Varsity Defendants and USASF created an illusion of a safe system in order to draw more members in so they could sell more merchandise and collect more fees for events and camps, knowing their young members were at risk and that they were doing nothing about investigating or removing the coaches, affiliates, gym owners or vendors creating that risk. Plaintiff alleges that the scheme to anoint specific coaches, choreographers, and vendors at the expense of best safety practices occurred as the Varsity Defendants were creating and expanding a business model reliant upon a pipeline of young cheer participants, each of whom was a member of a Varsity-affiliated gym, and each of whom represented a significant contribution to the Varsity Defendants' billion-dollar empire.

The complaint alleges that Plaintiff was a member of private gyms in Avon Lake, Ohio (2014) and Brecksville, Ohio (2015-2016), and that these gyms contracted with ShowPro, Davis and Hale to provide choreography services. ShowPro, Davis and Hale were all USASF members. Plaintiff alleges that he first met Hale and Davis in 2014 in connection with the Avon Lake, Ohio gym, and met them again in 2016 in connection with the Brecksville, Ohio gym. Plaintiff alleges that Hale/Davis "systematically groomed and sexually abused Plaintiff". Beginning in 2016, defendants Hale/Davis began to exchange messages with Plaintiff (via an app). On or around July 28, 2016 (when Plaintiff was 17 years old), Hale and Davis returned to Ohio to provide services to Plaintiff's former gym. In July 2016, fully aware that Plaintiff was a minor and a USASF member, Davis/Hale exchanged messages with Plaintiff and pressed Plaintiff to come to their hotel room in Westlake, Ohio. Plaintiff went to the hotel room; defendants offered liquor (plaintiff refused); and defendants commenced to have sex with Plaintiff.

According to a report provided to law enforcement, defendants Hale and Davis had sex with Plaintiff multiple times. At the time of the incident, plaintiff was 17 years old, which is over the age of consent in Ohio. Davis was 24, and Hale was 25.

Plaintiff anonymously reported the incident in June of 2020 and made a formal report to USASF on June 25, 2020. USASF contacted Ohio law enforcement. On July 30, 2020, Plaintiff was informed that Ohio law enforcement would not pursue charges against Hale/Davis because Plaintiff was over 16 years old when the incident occurred.

The complaint sets forth the following causes of action:

- **Count I – Gross Negligence/Recklessness (All Defendants).** Plaintiff alleges that the defendants represented they had rules, policies and/or procedures intended to address the risks of sexual, physical and mental exploitation of minor athletes by coaches and adults who interact with these athletes by virtue of the adults' positions of power; that they owed special duties to protect minor children; that they were aware that violations to their internal policies, processes, procedures and guidelines related to athlete safety happened on a regular and continuous basis; and that their actions and omissions were unreasonable, constituted the total absence of care and breached duties owed to Plaintiff. Plaintiff seeks compensatory, actual, consequential and punitive damages.

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

- **Count II – Negligent Supervision (Varsity Defendants, USASF, ShowPro).** Defendants employed, credentialed and placed Hale/Davis in positions of trust by allowing access to minor athletes; they allowed Hale/Davis to operate, manage, coach and provide choreography services despite complaints or reports of misconduct; they undertook a duty to ensure that their reputation for trust and safety was earned and that dangerous individuals committing atrocious illegal acts were removed; they breached this duty; and their grossly negligent, willful and wanton conduct caused Plaintiff's injuries. Plaintiff seeks actual and consequential damages.

- **Count III – Assault/Battery (Hale and Davis).** Plaintiff seeks actual damages.

- **Count IV – Unjust Enrichment (Varsity Defendants, ShowPro, USASF).** Plaintiff alleges that he "conferred non-gratuitous benefits" upon defendants, including annual competition and membership fees, payments for uniforms and accessories, private training and other monetary benefits; that he was forced to undergo a choreography clinic under the control of the Varsity Defendants, USASF and the tutelage of ShowPro, for which he had to pay fees; that some of the fees received by the Varsity Defendants and USASF were earmarked for safety measures that were not implemented; and that under the circumstances it would be inequitable for Defendants to retain the benefits conferred. Plaintiff seeks to recover these benefits as a matter of equity.

- **Count V – Negligent Security (Varsity Defendants, ShowPro, USASF).** Plaintiff alleges that the defendants sponsored, created, hosted, attended and oversaw private All-Star gyms, camps. clinics, coaches, choreographers and competitions; that athletes had no meaningful choice but to attend at the locations and under the conditions established by defendants; that defendants undertook a responsibility to ensure that the locations and events were safe for attendees; that all of Plaintiff's interactions with Hale/Davis were at locations under the express authority and control of USASF and the Varsity Defendants; that Hale/Davis were duly authorized agents and/or representative of USASF, ShowPro; and the Varsity Defendants; and that the defendants violated their responsibility to provide safe premises free from harm from third parties. Plaintiff seeks compensatory damages for physical and emotional harm.

- **Count VI – Respondeat Superior (Varsity Defendants, USASF, ShowPro).** Plaintiff alleges that USASF employees were supposed to provide safety and regulatory services, including conducting investigations to prevent and mitigate athlete harm; that the Varsity Defendants empowered/authorized USASF to operate as the Varsity Defendants' agent/representative with respect to athlete safety; and that defendants failed to properly train, supervise, provide monitoring, and/or to implement policies intended to prevent harm to athletes, resulting in harm to the Plaintiff while in the course of a duly authorized choreography and skills clinic organized and overseen by the Varsity Defendants at a Varsity-affiliated gym. Plaintiff seeks actual, consequential and punitive damages.

- **Count VII – Intentional Infliction of Emotional Distress (All Defendants).** Plaintiff alleges that defendants had a duty to use due and reasonable care to protect Plaintiff from foreseeable harm and not to inflict physical, emotional, or psychological injury; that they violated their responsibilities to Plaintiff; that their conduct was so outrageous as to go beyond all bounds of decency and is to be regarded as odious and utterly intolerable as to be unacceptable in a civilized community; and that their conduct caused serious, severe, and pervasive emotional

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

and mental injury. Plaintiff seeks compensatory damages for physical, psychological and emotional harm and punitive damages.

- **Count VIII – Violation of Consumer Sales Practice Act, R.C. 1345.02(A) (Varsity Defendants, USASF, ShowPro).** Plaintiff alleges that he entered into contractual relationships with defendants pursuant to which they took fees for membership, training, choreography, competition and travel while promising safe environments overseen by vetted adult members of USASF; that the safety and trust touted by defendants was material to their business model and was a material representation that caused Plaintiff to pay fees, dues and other costs; that the Ohio statute prohibits suppliers from committing unfair, deceptive or unconscionable acts or practices in connection with consumer transactions; that defendants are suppliers and their conduct constitutes deceptive practices; and that their unfair and deceptive methods and practices have directly and proximately resulted in harm to Plaintiff, including physical harm, as well as harm related to contractual duties and responsibilities. Plaintiff seeks compensatory, actual, consequential and punitive damages as well as attorneys' fees and costs.

- **Count IX – Punitive Damages (All Defendants).**

### The Policies

Greenwich issued the following three commercial general liability policies to US All Star Federation dba IASF (collectively, the "Primary Policies"):

ASG0896965 (10/22/14-15)
ASG089696501 (10/22/15-16)
ASG089696502 (10/22/16-17)

Pursuant to Section II – Who Is An Insured, executive officers and directors are insureds, but only with respect to their duties as officers and directors.

Via Commercial General Liability Extension Endorsement, Section II – Who Is An Insured is amended to include as insureds:

4. Any person or organization with respect to their liability arising out of:
   a. Their financial control of you; . . .

Each of the Primary Policies has limits of $1 million each occurrence, $1 million personal and advertising injury (any one person or organization), $5 million general aggregate (other than Products-Completed Operations), and $5 million products/completed operations aggregate.

The Insured's Business Description is stated as "Camps/Clinics."

The Primary Policies are substantially identical. The Insuring Agreement of Section I – Coverages, Coverage A - Bodily Injury and Property Damage Liability of the policies provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" occurring during the policy period caused by an "occurrence". The Insuring Agreement of Section I – Coverages, Coverage B - Personal and Advertising Injury Liability provides

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

coverage for "personal and advertising injury" caused by certain enumerated offenses arising out of the insured's business. The claims at issue in this matter do not implicate Coverage B.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

By endorsement, "bodily injury" is defined as:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, and includes mental anguish, mental injury, shock or humiliation resulting from these. Except for mental anguish, mental injury, shock or humiliation, "bodily injury" also includes death resulting from such bodily injury, sickness or disease.

"Personal and Advertising Injury," as modified by the Commercial General Liability Extension Endorsement, is defined as injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
> b. Malicious prosecution or abuse of process;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises. . . ;
> d. Oral or written publication . . . of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication . . . of material that violates a person's right to privacy;
> f. The use of another's advertising idea in your 'advertisement'' or
> g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'
> h. Discrimination based on race, color, religion, sex, age or national origin . . .

The following Coverage A exclusions are potentially relevant:

> This insurance does not apply to:
>
> a. **Expected or Intended Injury**
>
> "Bodily injury" . . . expected or intended from the standpoint of the insured . . . .
>
> b. **Contractual Liability**
>
> "Bodily injury" . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> (1) That the insured would have in the absence of the contract or agreement; . . .
>
> \*   \*   \*
>
> o. Personal and Advertising Injury

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

> "Bodily injury" arising out of "personal and advertising injury".

The following Coverage B exclusions are potentially relevant:

> This insurance does not apply to:
>
>   a. Knowing Violation of Rights of Another
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".
>
>   d. Criminal Acts
>
> "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.
>
>   e. Contractual Liability
>
> "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement . . .
>
>   f. Breach Of Contract
>
> "Personal and advertising injury" arising out of a breach of contract . . .

The Primary Policies also contain the following Abuse and Molestation Exclusion Endorsement to both Section I – Coverage A and Section I – Coverage B, which provides that:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>
> **1.** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>
> **2.** The negligent:
>     **a.** Employment;
>     **b.** Investigation;
>     **c.** Supervision;
>     **d.** Reporting to the proper authorities, or failure to so report; or
>     **e.** Retention;
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

In addition, the policies contain a Child Care or Supervision Exclusion Endorsement, which excludes

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children."

**The Excess Policies**

Greenwich issued three commercial excess liability policies to US All Star Federation dba IASF (collectively, the "Excess Policies"):

    ASX0896975 (10/22/14-15)
    ASX089697501 (10/22/15-16)
    ASX089697502 (10/22/16-17)

Each of the Excess Policies has limits of $2 million each occurrence, $2 million general aggregate, and $2 million products/completed work hazard aggregate.

The Excess Policies provide excess liability coverage under Coverage E – Excess Liability for:

    1) "bodily injury" or "property damage" that:

        a)    is caused by an "occurrence" that takes place in the "coverage territory";
        b)    occurs during the policy period of this policy; and
        c)    is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

    2) "personal and advertising injury" that:

        a)    arises out of an offense committed in the course of "your" business if the offense is committed:

            (1) within the "coverage territory"; and
            (2) during the policy period of this policy; and

        b)    is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, or judgments; and

    3)    any other injury or damage that:

        a)    arises out of a negligent act, error, omission, injury, event, incident, or offense; and

> b) is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

The excess liability coverage excludes "injury or damage that is not covered by 'underlying insurance' for any reason other than exhaustion of its 'limit'."

The Excess Policies define bodily injury as follows:

> "Bodily injury" means bodily harm, sickness, or disease sustained by a person. "Bodily Injury" includes death that results at any time from bodily harm, sickness, or disease.
>
> However, "bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from physical injury, sickness, or disease.

The Excess Policies define "Occurrence" as "an accident and includes continuous or repeated exposures to similar conditions."

"Insured" is defined as including "persons or organizations included as 'insureds' or additional insureds in 'underlying insurance'."

## PARTIAL DECLINATION AND RESERVATION OF RIGHTS

Coverage B of the Primary Policies provides coverage for **"personal and advertising injury"** caused by certain enumerated offenses arising out of the Insured's business. None of the enumerated offenses are implicated by the claims in the Ohio State Court Action. Accordingly, there is no coverage under Coverage B of the policies for the Ohio State Court Action.

Plaintiff alleges that the sexual abuse took place on or about July 28, 2016. There is no coverage for this matter under policy Nos. ASG0896965 (10/22/14-15) or ASX0896975 (10/22/14-15), as those policies expired prior to the date of the alleged abuse. There also is no coverage under policy Nos. ASG089696502 (10/22/16-17) or ASX089697502 (10/22/16-17), as those policies did not incept until after the date of the alleged abuse. Accordingly, Greenwich declines coverage for the Ohio State Court Action under these policies.

There is no coverage under the Greenwich policies for the Unjust Enrichment claim (Count IV of the complaint). Plaintiff alleges that he "conferred non-gratuitous benefits" upon defendants, including annual competition and membership fees, payments for uniforms and accessories, private training and other monetary benefits; and it would be inequitable for defendants to retain the benefits conferred. Plaintiff seeks to recover these benefits as a matter of equity. This claim does not seek damages because of "bodily injury" or "property damage" caused by an "occurrence", as required by the Coverage A Insuring Agreement.

There is no coverage under the Greenwich policies for the claim alleging Intentional Infliction of

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

Emotional Distress (Count VII of the complaint). This claim requires an intent to injure, which is not an "occurrence" (i.e. an accident) under the policies. The claim is also barred by the Coverage A. exclusion for injuries that are expected or intended (Exclusion a.).

There is no coverage under the Greenwich policies for the claim asserting violations of the Ohio Consumer Sales Practice Act (Count VIII of the complaint). Plaintiff alleges that defendants entered into contractual relationships with him and his family, taking fees for membership, training, choreography, competition and travel while promising safe environments overseen by vetted adult members of USASF. Plaintiff asserts that the safety and trust touted by defendants was material to their business model and was a material representation which caused Plaintiff to pay fees, dues and other costs, and further, that the Ohio statute prohibits suppliers from committing unfair, deceptive or unconscionable acts or practices in connection with consumer transactions. This claim is premised upon a breach of contract. To the extent that Plaintiff seeks only monetary (and punitive) damages as a result of the breach, the claim does not allege "bodily injury" or an "occurrence", and thus is not covered under Coverage A. To the extent that the Plaintiff is alleging that the insureds have assumed, in a contract or agreement, liability for Plaintiff's alleged "bodily injuries", such claim is barred by Coverage A, Exclusion b. (Contractual Liability). Further, to the extent the claim alleges intentional conduct, such acts are not an "occurrence", as required by the Coverage A Insuring Agreement in the policies, and are further excluded from coverage by Coverage A, Exclusion a (Expected or Intended Injury).

Greenwich reserves its rights with regard to the Gross Negligence claims. Plaintiff alleges that Defendants have been responsible for the safety, health, and welfare of the minor athletes who were members of USASF and "under the care, custody, and control of each of Defendant USASF and the Varsity Defendants, respectively". Plaintiff alleges that Defendants "represented that they had rules, policies, and/or procedures specifically intended to address the risks of sexual, physical, and mental exploitation of minor athletes by coaches, and adults who interact with the athletes by virtue of the adults' position of power" but that violations of the rules related to athlete safety and harm from sexual, physical and emotional abuse happened regularly at USASF certified gyms by USASF certified coaches. Plaintiff alleges that Defendants' actions and omissions "were unreasonable, constituted the total absence of care, and breached duties owed to Plaintiff" and "were in violation of Defendants' own policies".

To the extent the claims for gross negligence (Count I) and Negligent Security (Count V) claims involve negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible, in connection with the actual or threatened abuse or molestation of any person in his/her care, custody or control, the claims are excluded from coverage under the Primary Policies by the Abuse or Molestation Exclusion. To the extent the claims are premised on the alleged sexual abuse and molestation, the Primary Policies exclude bodily injury arising out of "the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured". Moreover, the Primary Policies provide no coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children." Accordingly, Greenwich reserves the right to decline coverage for the gross negligence (Count I) and Negligent Security (Count V) claims in the Lawsuit should the facts reveal that such claims are barred by the Abuse or Molestation Exclusion and/or the Child Care or Supervision Exclusion Endorsement in the Primary Policies.

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

There is no coverage under the Primary Policies for the Negligent Supervision claim (Count II). Plaintiff alleges defendants employed, credentialed and placed Hale/Davis in positions of trust by allowing access to minor athletes; they allowed Hale/Davis to operate, manage, coach and provide choreography services despite complaints or reports of misconduct; they undertook a duty to ensure that their reputation for trust and safety was earned and that dangerous individuals committing atrocious illegal acts were removed; and they breached this duty, causing harm to Plaintiff. The Abuse or Molestation Exclusion in the Primary Policies excludes coverage for negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible. Further, the claims allege intentional conduct (i.e., that defendants knew of the inappropriate conduct and failed to act). Intentional acts are not an "occurrence", as defined in the policies, and are further excluded from coverage by Coverage A, Exclusion a. (Expected or Intended Injury).

There is no coverage for the Respondeat Superior claim (Count VI) in the complaint. Plaintiff alleges that USASF employees were supposed to provide safety and regulatory services, including conducting investigations to prevent and mitigate athlete harm; that the Varsity Defendants empowered/authorized USASF to operate as the Varsity Defendants' agent/representative with respect to athlete safety; and that defendants failed to properly train, supervise, provide monitoring, and/or to implement policies intended to prevent harm to athletes, resulting in harm to the Plaintiff while in the course of a duly authorized choreography and skills clinic organized and overseen by the Varsity Defendants at a Varsity-affiliated gym. This claim alleges negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible in connection with the actual or threatened abuse or molestation of any person in his/her care, custody or control, and is thus excluded by the Abuse or Molestation Exclusion in the Primary Policies.

The complaint in the Ohio State Court Action seeks punitive damages. Punitive damages are often excluded by applicable state law as a matter of public policy. Such damages are also frequently of an expected and intended nature, and thus would be excluded by the Greenwich policies. Greenwich reserves its right to decline coverage for any punitive damages, should the facts so warrant.

The Excess Policies provide coverage for "bodily injury" that, among other things, "is covered by 'underlying insurance' or that would have been covered by 'underlying insurance' but for the exhaustion of 'underlying insurance' 'limits'. . .", the above analysis applies to the Excess Policies as well. As the Excess Policies have not yet been triggered, Greenwich reserves all rights in connection with same.

Any payments that may be made by Greenwich in connection with the Ohio State Court Action are subject to the applicable limits of liability.

Notwithstanding the foregoing, Greenwich will provide a defense to USASF in the Ohio State Court Action under policy No. ASG089696501 (10/22/15-16) pursuant to a full reservation of its rights under the terms, provisions and exclusions of the policy, whether or not expressly set forth in this letter, including without limitation the right to decline coverage for any damages that may be awarded to Plaintiff. Greenwich will retain Lewis Brisbois to represent USASF in this matter, as that firm previously represented USASF in the Ohio Federal Court Action. We will assume that this

representation is acceptable unless we hear otherwise from you.

Should it ultimately be determined by a court of competent jurisdiction that the acts/omissions alleged in the Ohio State Court Action fall outside the scope of, or are otherwise excluded from, coverage under the policies, Greenwich reserves the right to seek reimbursement from USASF for all attorneys' fees and costs expended by Greenwich on behalf of USASF in providing it a defense to the Ohio State Court Action.

We ask that you provide us information regarding any other coverage available to USASF, and advise whether this matter has been tendered to other insurers. If USASF has not already done so, Greenwich requests that it tender the Ohio State Court Action to all insurers whose policies are potentially triggered.

In connection with Greenwich's continuing investigation of this matter, Greenwich requests that you provide the following documents and information at your earliest convenience:

1. Documents, including emails and letters, between USASF and any other person or entity regarding allegations or reports of alleged sexual or other abuse of minor athletes at any time between 2014 and 2018.
2. Copies of any and all contracts between USASF and Plaintiff in the Ohio Action.
3. Copies of any and all contracts between USASF and Taji Davis, Brandon Hale and/or Show Pro; any and all contracts between ShowPro and Taji Davis and Brandon Hale; any and all contracts between USASF and the Avon Lake, Ohio and/or Brecksville, Ohio gyms; and any and all contracts between the Avon Lake, Ohio and/or Brecksville, Ohio gyms and Taji Davis, Brandon Hale and/or or ShowPro.
4. Copies of any medical records for the Plaintiff in the Ohio Action.
5. Copies of any internal evaluations with respect to the claims alleged in the Ohio Action prepared by, for or on behalf of USASF.
6. Copies of any police reports with respect to the claims alleged in the Ohio Action.

This request for information is not intended to be exhaustive. Greenwich reserves the right to request additional information and/or documentation as required. If you have any additional documents or information that you would like us to consider, please forward the same to me at your earliest convenience. As stated above, Greenwich's review and evaluation of this matter is subject to a full and complete reservation of rights.

This letter is based upon the limited factual information currently available to Greenwich. This letter is necessarily preliminary and subject to revision as additional facts may develop, and as additional information may arise that is pertinent to the Greenwich policies. Greenwich reserves the right to supplement or amend its coverage position should facts and circumstances indicate the need to do so in connection with the Ohio State Court Action. By reserving its rights on the bases described above, Greenwich does not waive or limit any of its rights, positions, or defenses under the Greenwich policies or at law or in equity. To the contrary, Greenwich reserves all such rights, including but not limited to the right to raise additional policy terms, conditions, exclusions, limitations, or endorsements to coverage as applicable. No action taken by Greenwich to date or that it may take in the future is deemed a waiver of those rights, positions, or defenses. Furthermore, any failure to quote or refer to a

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

particular policy term, condition, exclusion, limitation, or endorsement in the body of this letter or otherwise is not deemed a waiver of that provision.

If you have any questions or comments regarding this reservation of rights, please do not hesitate to contact the undersigned. Similarly, if you believe that Greenwich is incorrect in any respect or wishes to bring any matter to its attention, please do not hesitate to contact me.  Greenwich is prepared to consider additional information and reassess its position should the circumstances so warrant.

Very truly yours,

*Paul Jakaitis*
Paul Jakaitis


cc:    Cathy Schell (via email only)
       American Specialty Insurance & Risk Services, Inc.
       cschell@americanspecialty.com

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281