# Exhibit 5

**AXA**

October 25th, 2023

**Certified Mail, Return Receipt Requested
& Email**

Alison Stangle
Executive Director
US All Star Federation dba IASF
8275 Tournament Drive
Suite 325
Memphis, TN  38115

**PARTIAL DECLINATION,
RESERVATION OF RIGHTS AND
REQUEST FOR INFORMATION**

|  |  |  |
|---|---|---|
| Re: | Insured: | **US All Star Federation dba IASF.** |
|  | Lawsuit: | *Jane Doe v. Texas Wolverine All-Stars, Inc., et. al, Case No. 2022CI19481, 225th Judicial Dist. Court, Bexar County, Texas* |
|  | Greenwich Policies: | ASG0896965 (10/22/14-15) |
|  |  | ASX0896975 (10/22/14-15) |
|  |  | ASG089696501 (10/22/15-16) |
|  |  | ASX089697501 (10/22/15-16) |
|  |  | ASG089696502 (10/22/16-17) |
|  |  | ASX089697502 (10/22/16-17) |
|  | Claim No.: | 51663400101 |

Dear Ms. Stangle:

I write on behalf of Greenwich Insurance Company ("Greenwich") regarding the above-referenced matter. Greenwich acknowledges receipt of the tender by US All Star Federation dba IASF ("USASF") of the referenced lawsuit (the "Bexar County Action") under the referenced policies (collectively, the "Greenwich Policies").  This letter sets forth Greenwich's coverage position under the policies with respect to the Bexar County Action and requests certain documents and information.

For the reasons set forth below, Greenwich agrees to defend USASF in the Bexar County Court Action under policy No. ASG089696502 (10/22/16-17), subject to a full and complete reservation of rights. Greenwich declines coverage under policy Nos. ASG0896965 (10/22/14-15), ASX0896975 (10/22/14-15), ASG089696501 (10/22/15-16) and ASX089697501 (10/22/15-16) as the acts of abuse alleged in the complaint did not take place until after the expiration of those policies. Moreover, as discussed in more detail below, many of the claims asserted in the Bexar County Action are not covered under the policies.  Greenwich reserves the right to decline coverage and withdraw from the defense of the Bexar County Action and seek reimbursement of defense costs should it be determined that none of the claims are covered under the policies.

**AXA**

In considering the request for coverage, we have reviewed the referenced Policies, as well as the allegations concerning the claims. No other policies were considered. If USASF asserts a right to coverage under any other policy issued by Greenwich, please submit notice pursuant to the notice provisions contained in that policy.

### Facts

On or about September 20, 2023, USASF's counsel notified American Specialty Insurance and Risk Services, Inc. of the Lawsuit filed against USASF in Texas state court. Other Defendants include: Texas Wolverine All-Stars, Inc. ("Texas Wolverine"), Lex Luis Bazan ("Lex Bazan"), Luis Bazan, SF Commercial, LP, and SF Commercial GP, LLC.

The Amended Petition, filed on January 1, 2023, alleges Plaintiff Jane Doe was involved in the sport of competitive cheer – a multi-billion dollar industry. Plaintiff alleges that she joined a cheerleading program at Texas Wolverine in **2017** and cheered there for 5 years. Texas Wolverine is owned by Luis Bazan and his son, Lex Bazan, who was employed by Texas Wolverine as a cheerleading coach, trainer, mentor, and agent of the programs, camps, and events. He coached Plaintiff's team and gave private lessons to Plaintiff. In 2017, Bazan was 20/21 years old while Plaintiff was 12/13 years old. Plaintiff alleges that between **2017 and 2021**, Lex Bazan "engaged in many instances of inappropriate and sexual contact with Plaintiff, who was a minor" including: touching Plaintiff's buttocks, groping her inner thigh, including her groin area, hugging and touching Plaintiff, making sexual references to Plaintiff, instructing Plaintiff to remove her sports bra and touching Plaintiff in sexual manners that made Plaintiff feel uncomfortable. Plaintiff alleges that this abuse "eventually progressed to aggravated sexual assault which at all times would occur on the premises of the Defendants' facilities."

The Amended Petition further alleges that USASF is the cheerleading governing body founded in part to make cheerleading and cheer gyms safer for the children participating in cheerleading by setting guidelines and rules for gyms and competitions the gyms are involved in. USASF requires all cheer gyms, all cheerleaders, and all cheer coaches to become USASF members before being permitted to participate in USASF-sanctioned events. USASF requires coaches and cheerleader to undergo USASF training. USASF is a mandatory reporter of abuse under the Texas Family Code Section 261.01 and must report suspected abuse to law enforcement before USASF. USASF also requires members to use SafeSport, which it purports "create[s] a safe environment for minor cheerleaders with respect to the cheerleader's physical, emotional, and psychological well-being, by promoting abuse- and misconduct free gyms and events." However, despite its policies and procedures, Plaintiff alleges that USASF "engaged in a pattern and practice of failing to adequately supervise, hire, train, retain, retrain, and/or remove sexually abusive members of its organizations, who is represented to parents, cheerleader's and other minors and members of the public, to be safe for the public and minor cheerleaders."

The Amended Complaint contains the following seven (7) causes of action:

> **Cause of Action A – Sexual Assault/Aggravated Sexual Assault of Child** (Lex Bazan). Plaintiff alleges that Bazan's actions constitute sexually assault of a child and violates

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

Texas Penal Code: Section 22.011 (sexual assault of a child), Section 22.021 (aggravated sexual assault of a child), and Section 21.02 (continuous sexual abuse of young child).

**Cause of Action B – Negligence** (all Defendants). Plaintiff alleges that Defendants owed a duty of reasonable care to Plaintiff and breached this duty by: (a) failing to exercise reasonable care; (b) failing to properly screen, retain, hire, train, and/or supervise; (c) failing to promulgate effective safety policies; (d) failing to protect minor athletes; (e) failing to prevent persons in positions of power from being alone with a single minor child without supervision or other safeguards to protect the minor child; (f) failing to properly investigate; (g) failing to notify; (h) failing to ensure safety policies and procedures were implemented and followed; (i) failing to ensure safety policies and procedures were enforced; and, (j) failing to exercise reasonable control over employees, agents and/or contractors. These acts or omissions proximately caused Plaintiff's injuries.

**Cause of Action C – Agency, Respondeat Superior and Vicarious Liability** (all Defendants). Plaintiff alleges that Defendants were responsible for the conduct of their coaches, employees, and/or agents due to the relationship that existed, among other acts and omissions of negligence, including duties owed to ensure its coaches were not harming children in Defendants' gym.

**Cause of Action D – Negligent Hiring, Retention, Training, Screening, Supervision, and Failure to Warn** (all Defendants). Plaintiff alleges that Defendants failed to properly screen, hire, and train their employees, staff, coaches, and other agents, including Bazan; that Defendants knew or should have known that Bazan should not have been permitted to interact with minor athletes, but continued to allow him direct access to minors. Plaintiff alleges these acts or omissions were the proximate cause of her injuries and damages.

**Cause of Action E – Intentional Infliction of Emotional Distress** (Lex Bazan).

**Cause of Action F – Premises Liability** (SF Commercial, LP, SF Commercial GP, LLC).

**Cause of Action G – Gross Negligence** (all Defendants). Plaintiff alleges that the Defendants' acts or omissions involved an extreme risk considering the probability and magnitude of the potential harm to others and that Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded in conscious indifference to the rights, safety, and/or welfare of others, including Plaintiff. Plaintiff seeks punitive damages.

With respect to all causes of action, Plaintiff generally seeks compensatory, actual, consequential, and punitive damages.

### The Policies

Greenwich issued the following three commercial general liability policies to US All Star Federation dba IASF (collectively, the "Primary Policies"):

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281



ASG0896965 (10/22/14-15)
ASG089696501 (10/22/15-16)
ASG089696502 (10/22/16-17)

Pursuant to Section II – Who Is An Insured, executive officers and directors are insureds, but only with respect to their duties as officers and directors.

Via Commercial General Liability Extension Endorsement, Section II – Who Is An Insured is amended to include as insureds:

    4. Any person or organization with respect to their liability arising out of:
        a. Their financial control of you; . . .

Each of the Primary Policies has limits of $1 million each occurrence, $1 million personal and advertising injury (any one person or organization), $5 million general aggregate (other than Products-Completed Operations), and $5 million products/completed operations aggregate.

The Insured's Business Description is stated as "Camps/Clinics."

The Primary Policies are substantially identical. The Insuring Agreement of Section I – Coverages, Coverage A - Bodily Injury and Property Damage Liability of the policies provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" occurring during the policy period caused by an "occurrence". The Insuring Agreement of Section I – Coverages, Coverage B - Personal and Advertising Injury Liability provides coverage for "personal and advertising injury" caused by certain enumerated offenses arising out of the insured's business. The claims at issue in this matter do not implicate Coverage B.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

By endorsement, "bodily injury" is defined as:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, and includes mental anguish, mental injury, shock or humiliation resulting from these. Except for mental anguish, mental injury, shock or humiliation, "bodily injury" also includes death resulting from such bodily injury, sickness or disease.

"Personal and Advertising Injury," as modified by the Commercial General Liability Extension Endorsement, is defined as injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;
    b. Malicious prosecution or abuse of process;

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises. . . ;
    d. Oral or written publication . . . of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e. Oral or written publication . . . of material that violates a person's right to privacy;
    f. The use of another's advertising idea in your 'advertisement'' or
    g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'
    h. Discrimination based on race, color, religion, sex, age or national origin . . .

The following Coverage A exclusions are potentially relevant:

This insurance does not apply to:

    a. **Expected or Intended Injury**

        "Bodily injury" . . . expected or intended from the standpoint of the insured . . . .

    b. **Contractual Liability**

        "Bodily injury" . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1) That the insured would have in the absence of the contract or agreement; . . .

        \*    \*    \*

    o. Personal and Advertising Injury

      "Bodily injury" arising out of "personal and advertising injury".

The following Coverage B exclusions are potentially relevant:

This insurance does not apply to:

    a. Knowing Violation of Rights of Another

    "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    d. Criminal Acts

    "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement . . .

f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract . . .

The Primary Policies also contain the following Abuse and Molestation Exclusion Endorsement to both Section I – Coverage A and Section I – Coverage B, which provides that:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

**2.** The negligent:
    **a.** Employment;
    **b.** Investigation;
    **c.** Supervision;
    **d.** Reporting to the proper authorities, or failure to so report; or
    **e.** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

In addition, the policies contain a Child Care or Supervision Exclusion Endorsement, which excludes coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children."

**The Excess Policies**

Greenwich issued three commercial excess liability policies to US All Star Federation dba IASF (collectively, the "Excess Policies"):

    ASX0896975 (10/22/14-15)
    ASX089697501 (10/22/15-16)
    ASX089697502 (10/22/16-17)

Each of the Excess Policies has limits of $2 million each occurrence, $2 million general aggregate, and $2 million products/completed work hazard aggregate.

The Excess Policies provide excess liability coverage under Coverage E – Excess Liability for:

    1) "bodily injury" or "property damage" that:

        a)    is caused by an "occurrence" that takes place in the "coverage territory";
        b)    occurs during the policy period of this policy; and
        c)    is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

    2) "personal and advertising injury" that:

        a)    arises out of an offense committed in the course of "your" business if the offense is committed:

            (1) within the "coverage territory"; and
            (2) during the policy period of this policy; and

        b)    is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, or judgments; and

    3)    any other injury or damage that:

        a)    arises out of a negligent act, error, omission, injury, event, incident, or offense; and

        b)    is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

The excess liability coverage excludes "injury or damage that is not covered by 'underlying insurance' for any reason other than exhaustion of its 'limit'."

The Excess Policies define bodily injury as follows:

    "Bodily injury" means bodily harm, sickness, or disease sustained by a person. "Bodily Injury" includes death that results at any time from bodily harm, sickness, or disease.

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

However, "bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from physical injury, sickness, or disease.

The Excess Policies define "Occurrence" as "an accident and includes continuous or repeated exposures to similar conditions."

"Insured" is defined as including "persons or organizations included as 'insureds' or additional insureds in 'underlying insurance'."

## PARTIAL DECLINATION AND RESERVATION OF RIGHTS

Coverage B of the Primary Policies provides coverage for **"personal and advertising injury"** caused by certain enumerated offenses arising out of the Insured's business. None of the enumerated offenses are implicated by the claims in the Bexar County Action. Accordingly, there is no coverage under Coverage B of the policies for the Bexar County Action.

Plaintiff alleges that the sexual abuse took between 2017 and 2021. There is no coverage for this matter under policy Nos. ASG0896965 (10/22/14-15), ASX0896975 (10/22/14-15), ASG089696501 (10/22/15-16) and ASX089697501 (10/22/15-16) as those policies expired prior to the dates of the alleged abuse. Accordingly, Greenwich declines coverage for the Bexar County Action under these policies.

It is unclear from the complaint whether any of the incidents complained of took place in 2017 or, if so, the specific date(s) in 2017 when they took place. Policy Nos. ASG089696502 (and ASX089697502 expired on October 22, 2017. Accordingly, Greenwich reserves the right to decline coverage under these policies should it be determined that the incidents complained of took place after October 22, 2017.

Greenwich reserves its rights with regard to the Negligence (Cause of Action B) and Gross Negligence (Cause of Action G) claim. Plaintiff alleges that Defendants have been responsible for the safety, health, and welfare of the minor athletes who were members of USASF, participants in USASF events, and competed at USASF-sanctioned competitions. Plaintiff alleges that she was "under Defendants' complete dominion, control, and supervision." Plaintiff alleges that USASF "requires members use SafeSport, which USASF purports to create a safe environment for minor cheerleaders with respect to the cheerleader's physical, emotional, and psychological well-being, by promoting abuse- and misconduct free gyms and events. USASF SafeSport policies are aimed specifically at ridding cheerleading from abuse and misconduct by requiring monitoring and control over areas at risk for abuse and misconduct." However, Plaintiff alleges that "USASF has engaged in a pattern and practice of failing to adequately supervise, hire, train, retain, retrain, and/or remove sexually abusive members of its organizations, who is represented to parents, cheerleader's and other minors and members of the public, to be safe for the public and minor cheerleaders."

In support of the Negligence cause of action, Plaintiff specifically alleges that Defendants breached

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

the duty of reasonable care owed to Plaintiff by their failure to: (i) exercise reasonable care; (ii) properly screen, retain, hire, train, and/or supervise; (iii) promulgate effective safety policies; (iv) protect minor athletes; (v) prevent persons in positions of power from being alone with a single minor child without supervision or other safeguards to protect the minor child; (vi) properly investigate; (vii) notify; (viii) ensure safety policies and procedures were implemented and followed; (ix) ensure safety policies and procedures were enforced; and (ix) exercise reasonable control over employees, agents and/or contractors. In support of the Gross Negligence cause of action, Plaintiff alleges that "Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded in conscious indifference to the rights, safety, and/or welfare of others, including Plaintiff."

To the extent the claims for Negligence (Cause of Action B) and Gross Negligence (Cause of Action G) claims involve negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible, in connection with the actual or threatened abuse or molestation of any person in his/her care, custody or control, the claims are excluded from coverage under the Primary Policies by the Abuse or Molestation Exclusion. To the extent the claims are premised on the alleged sexual abuse and molestation, the Primary Policies exclude bodily injury arising out of "the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured". Moreover, the Primary Policies provide no coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children." Accordingly, Greenwich reserves the right to decline coverage for the Negligence and Gross Negligence should the facts reveal that such claims are barred by the Abuse or Molestation Exclusion and/or the Child Care or Supervision Exclusion Endorsement in the Primary Policies.

Greenwich reserves its rights with respect to the Agency, Respondeat Superior and Vicarious Liability claim (Cause of Action C) in the complaint. Plaintiff alleges that Defendants, including USASF, "are responsible for the conduct of their coaches, employees, and/or agents due to the relationship that existed" and owed Plaintiff a duty to ensure its coaches were not harming children. Plaintiff alleges that "USASF membership requires individuals (both coaches and cheerleaders) to obtain USASF training, abide by all USASF rules and regulations, and procedures before being allowed to compete in USASF events. Defendant USASF employs, trains, and retains agents, servants, volunteers, and members that interact directly with minor children as an ordinary course of their responsibilities." To the extent that the claim alleges negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible in connection with the actual or threatened abuse or molestation of any person in his/her care, custody or control, it is thus excluded by the Abuse or Molestation Exclusion in the Primary Policies. To the extent the claims are premised on the alleged sexual abuse and molestation, the Primary Policies exclude bodily injury arising out of "the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured". Moreover, the Primary Policies provide no coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children." Accordingly, Greenwich reserves the right to decline coverage for the Agency, Respondeat Superior and

Vicarious Liability causes of action should the facts reveal that such claims are barred by the Abuse or Molestation Exclusion and/or the Child Care or Supervision Exclusion Endorsement in the Primary Policies.

There is no coverage under the Primary Policies for the Negligent Hiring, Retention, Training, Screening, Supervision, and Failure to Warn claim (Cause of Action D). Plaintiff alleges Defendants knew or should have known that Lex Bazan should not have been permitted to interact with minor athletes, but continued to allow him to access minors, despite failing to adequately investigate, regulate, monitor, and supervise him. These alleged actions allegedly were proximately caused Plaintiff's injuries. The Abuse or Molestation Exclusion in the Primary Policies excludes coverage for negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible. Further, the claims allege intentional conduct (i.e., that defendants knew of the inappropriate conduct and failed to act). Intentional acts are not an "occurrence", as defined in the policies, and are further excluded from coverage by Coverage A, Exclusion a. (Expected or Intended Injury).

The complaint seeks punitive damages. Punitive damages are often excluded by applicable state law as a matter of public policy. Such damages are also frequently of an expected and intended nature, and thus would be excluded by the Greenwich policies. Greenwich reserves its right to decline coverage for any punitive damages, should the facts so warrant.

The Excess Policies provide coverage for "bodily injury" that, among other things, "is covered by 'underlying insurance' or that would have been covered by 'underlying insurance' but for the exhaustion of 'underlying insurance' 'limits'. . .", the above analysis applies to the Excess Policies as well. As the Excess Policies have not yet been triggered, Greenwich reserves all rights in connection with same.

Any payments that may be made by Greenwich in connection with the Bexar County Action are subject to the applicable limits of liability.

Notwithstanding the foregoing, Greenwich will provide a defense to USASF in the Bexar County Action under policy No. ASG089696502 (10/22/16-17) pursuant to a full reservation of its rights under the terms, provisions and exclusions of the policy, whether or not expressly set forth in this letter, including without limitation the right to decline coverage for any damages that may be awarded to Plaintiff. Greenwich will retain Lewis Brisbois to represent USASF in this matter. We will assume that this representation is acceptable unless we hear otherwise from you.

Should it ultimately be determined by a court of competent jurisdiction that the acts/omissions alleged in the Bexar County Action fall outside the scope of, or are otherwise excluded from, coverage under the policies, Greenwich reserves the right to seek reimbursement from USASF for all attorneys' fees and costs expended by Greenwich on behalf of USASF in providing it a defense to the Bexar County Action.

We ask that you provide us information regarding any other coverage available to USASF, and

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

advise whether this matter has been tendered to other insurers. If USASF has not already done so, Greenwich requests that it tender the Bexar County Action to all insurers whose policies are potentially triggered.

In connection with Greenwich's continuing investigation of this matter, Greenwich requests that you provide the following documents and information at your earliest convenience:

1. Documents, including emails and letters, between USASF and any other person or entity regarding allegations or reports of alleged sexual or other abuse of minor athletes at any time between 2014 and 2018.
2. Information regarding the specific dates of the incidents alleged in the Complaint.
3. Copies of any and all contracts between USASF and Plaintiff in the Bexar County Action.
4. Copies of any and all contracts between USASF and Lex Bezan and any and all contracts between USASF and Texas Wolverine.
5. Copies of any medical records for the Plaintiff in the Bexar County Action.
6. Copies of any evaluations with respect to the claims alleged in the Bexar County Action prepared by, for or on behalf of USASF.
7. Copies of any police reports with respect to the claims alleged in the Bexar County Action.

This request for information is not intended to be exhaustive. Greenwich reserves the right to request additional information and/or documentation as required. If you have any additional documents or information that you would like us to consider, please forward the same to me at your earliest convenience. As stated above, Greenwich's review and evaluation of this matter is subject to a full and complete reservation of rights.

This letter is based upon the limited factual information currently available to Greenwich. This letter is necessarily preliminary and subject to revision as additional facts may develop, and as additional information may arise that is pertinent to the Greenwich policies. Greenwich reserves the right to supplement or amend its coverage position should facts and circumstances indicate the need to do so in connection with the Bexar County Action. By reserving its rights on the bases described above, Greenwich does not waive or limit any of its rights, positions, or defenses under the Greenwich policies or at law or in equity. To the contrary, Greenwich reserves all such rights, including but not limited to the right to raise additional policy terms, conditions, exclusions, limitations, or endorsements to coverage as applicable. No action taken by Greenwich to date or that it may take in the future is deemed a waiver of those rights, positions, or defenses. Furthermore, any failure to quote or refer to a particular policy term, condition, exclusion, limitation, or endorsement in the body of this letter or otherwise is not deemed a waiver of that provision.

If you have any questions or comments regarding this reservation of rights, please do not hesitate to contact the undersigned. Similarly, if you believe that Greenwich is incorrect in any respect or wishes to bring any matter to its attention, please do not hesitate to contact me. Greenwich is

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281

prepared to consider additional information and reassess its position should the circumstances so warrant.

Very truly yours,

*Paul Jakaitis*

Paul Jakaitis

cc: Cathy Schell (via email only)
American Specialty Insurance & Risk Services, Inc.
cschell@americanspecialty.com

AXA Liabilities Managers, Inc.
200 Liberty Street, 22nd floor
New York, NY 10281