**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**

---

GREENWICH INSURANCE COMPANY,

               Plaintiff,

        -against-

US ALL STAR FEDERATION d/b/a IASF,

             Defendant.

Case No. 2:23-cv-02285-JTF-atc

**FIRST AMENDED COMPLAINT**
**FOR DECLARATORY RELIEF**

---

      Plaintiff, Greenwich Insurance Company ("Greenwich"), by its undersigned counsel, files this First Amended Complaint for declaratory relief against Defendant, US All Star Federation d/b/a IASF ("USASF"), and states:

**INTRODUCTION**

      1.    This is an action for declaratory relief, in which Greenwich seeks a judgment that no insurance coverage is available to USASF under Greenwich Commercial General Liability Policy Nos. ASG0896965, ASG08969650, and ASG089696502, and Greenwich Commercial Excess Liability Policy Nos. ASX0896975, ASX089697501, and ASX089697502 (collectively, the "Greenwich Policies") for any claims for relief asserted or that may be asserted by the plaintiffs in numerous underlying lawsuits as further described below.

      2.    Greenwich avers that it is entitled to have its rights declared pursuant to the Declaratory Judgment Act, Tenn. Code Ann. §29-14-101 *et seq.*

      3.    The Declaratory Judgment Act states that "[c]ourts of records within their respective jurisdictions have the power to declare rights, status, or other legal relations whether or not further relief is or could be claimed." Tenn. Code Ann. §29-14-102. "The declaration may

be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree." *Id.*

4.     Further Tenn. Code Ann. §29-14-103 provides that "[a]ny person's interest under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

## PARTIES, JURISDICTION, AND VENUE

5.     Greenwich is a Delaware corporation with its principal place of business in Stamford, Connecticut. It is a citizen of Delaware and Connecticut.

6.     USASF is a Tennessee non-profit corporation with its principal place of business in Memphis, Tennessee. USASF is a citizen of Tennessee.

7.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     The Court has jurisdiction under 28 U.S.C. § 1332 over this lawsuit between citizens of different states, with an amount in controversy in excess of $75,000, exclusive of interest and costs.

9.     Venue is proper in this Court pursuant to 28 U.S. Code § 1391 because defendant in a resident of Tennessee.

## FACTS

A.     **The Underlying Lawsuits**

10.     USASF seeks coverage under the Greenwich Policies with respect to the following eight (8) lawsuits filed against USASF and others (collectively, the "Underlying Lawsuits"):

a.  *John Doe 1 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation, et al.* filed on or about October 26, 2022 in the United States District Court for the Eastern District of North Carolina, Raleigh Division as Case No. 5:22-cv-00430-M. A copy of the Complaint is attached hereto as Exhibit A;

b.  *Jane Doe 1-7, John Doe 1-2, et al v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., U.S. All Star Federation, et al.*, filed on or about September 1, 2022[1] in the United States District Court for the District of South Carolina, Greenville Division as Case No. 6:22-cv-02957-HMH. A copy of the Amended Complaint is attached hereto as Exhibit B;

c.  *John Doe 3 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation, et al.*, filed on or about October 11, 2022 in the United States District Court for the District of South Carolina, Greenville Division as Case No. 6:22-cv-03510-HMH. A copy of the Complaint is attached hereto as Exhibit C;

d.  *Jane Doe 8 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation, et al.*, filed on or about October 11, 2022 in the United States District Court for the District of South Carolina, Greenville Division as Case No. 6:22-cv-03508-HMH. A copy of the Complaint is attached hereto as Exhibit D;

e.  *Jane Doe 9 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation, et al.* filed on or about October 11, 2022 in the United States District Court for the District of South Carolina, Greenville Division as Case No. 6:22-cv-03509-HMH. A copy of the Complaint is attached hereto as Exhibit E;

f.  *John Doe 1 v. Varsity Brands, LLC, Varsity Spirit, LLC, Varsity Brands Holding Company, Inc., U.S. All Star Federation, Inc. d/b/a U.S. All Star Federation, et al.*, filed on or about November 28, 2022 in the United States District Court for the Northern District of Ohio, Eastern Division at Cleveland as Case No. 1:22-cv-02139. A copy of the Complaint is attached hereto as Exhibit F. This matter was terminated and refiled as *John Doe 1 v. Varsity Spirit, LLC et al.*, on or about August 31, 2023 in the Court of Common Pleas, Cuyahoga County, Ohio as Case No. CV 23 984774. A copy of the Complaint is attached hereto as Exhibit O;

g.  *Hannah Gerlacher and Jessica Gerlacher v. Cheer Athletics, Inc., Cheer Athletics-Plano, LLC, Cheer Athletics-Frisco, LLC, Cheer Athletics Holdings, LLC, United All Star Federation, and Jason McCartney*, filed on or about July 19, 2021 in the District Court, Travis County Texas, 126th District Court as Case No. D-1-GN-21-003338. A copy of the Complaint is attached hereto as Exhibit G;

---

[1] This complaint was later amended to include additional plaintiffs Jane Doe 5-7.

h.  *Jane Doe v. Texas Wolverine All-Stars, Inc., et. al*., filed on or about October 3, 2022 in the 225th Judicial District Court, Bexar County, Texas as Case No. 2022CI19481. A copy of the Complaint is attached hereto as Exhibit P.

11.     The plaintiffs in the Underlying Lawsuits generally allege that they are or were involved in the sport of competitive cheer.

12.     The Underlying Lawsuits allege that the world of competitive cheer as created by Varsity[2], USASF, and other defendants in the Underlying Lawsuits is a competitive environment with little adult supervision where young athletes are exposed to drugs, alcohol, and predatory conduct by coaches and others.

13.     The plaintiffs in the Underlying Lawsuits allege that USASF and USA Federation for Sport Cheering d/b/a USA Cheer ("USA Cheer") are in charge of the regulatory side of cheer.

14.     The plaintiffs in the Underlying Lawsuits allege that USASF was established by Varsity to be the "sanctioning body" that would regulate All-Star cheer by setting guidelines, policies, procedures, and processes to ensure an environment that was safe for young athletes in the private gym sector.

15.     The plaintiffs in the Underlying Lawsuits further allege that, beginning around 2006, Varsity began promoting certain All-Star (i.e. private) member gyms as being "USASF Certified", which the plaintiffs claim is "a seal that the industry represented as synonymous with a warranty that the gym, its coaches and its choreographers were safe, and followed best practices including to prevent athlete abuse."

16.     Gyms and coaches pay monthly or annual fees to USASF, USA Cheer, and Varsity.

---

[2] "Varsity" refers collectively to Varsity Brands Holding Company, Inc., Varsity Spirit, LLC and Varsity Brands, LLC who are named as defendants in the Underlying Lawsuits.

i.   *The South Carolina Federal Lawsuits*

17.     In the South Carolina federal lawsuits identified in Paragraphs 10(b)-(e) above, the plaintiffs[3] generally allege sexual molestation and other predatory conduct in connection with a cheer gym located in Greenville, South Carolina named Rockstar Greenville ("Rockstar") or a cheer gym called Carolina All-Stars.

18.     The plaintiffs in the South Carolina federal lawsuits allege that Rockstar was a private cheer, dance and tumbling gym owned and managed by defendants Scott and Kathy Foster.

19.     The plaintiffs in the South Carolina federal lawsuits allege that Rockstar was certified by USASF as meeting All-Star standards with respect to coach credentials, program quality and athlete safety.

20.     The plaintiffs in the South Carolina federal lawsuits allege that USASF and certain other defendants "were made aware of serious and disturbing allegations related to many of the Varsity coaches, including Defendant Scott Foster".

21.     John Doe 2 alleges that after he joined Rockstar in 2014, two Rockstar coaches began sexually harassing him and pressured him to go to "the Rockstar house", where the athletes and coaches did drugs and drank alcohol. John Doe 2 alleges that he was improperly solicited and subjected to sexual and physical abuse.

22.     Jane Doe 1 alleges that she began cheering with Carolina All-Stars when she was 15, and that defendant Foster began having sexual discussions with her soon thereafter. When she was 17, she went to a Varsity competition at the University of Louisville where Foster came into her room and "came onto" her.

---

[3] With respect to the lawsuit identified in Paragraph 10(b) above, Greenwich declined coverage for the claims asserted by John Doe 1 and Jane Does 1, 2, 3, 4, 5, and 6 as they involve incidents and allege injuries that took place prior to the inception of the first Greenwich Policy or after the expiration of the last of the Greenwich Policies.

23.     Jane Doe 3 alleges that when she was 15 or 16, she traveled to a competition with the cheer team where she was sexually assaulted by one of the coaches, who subsequently raped her again when she was sent to him by defendant Foster for a private lesson.

24.     Jane Doe 5 alleges that she cheered at Rockstar, where she was sexually assaulted by a Rockstar coach.

25.     Jane Doe 6 alleges that she was given a date rape drug by defendant Foster and believes she was sexually assaulted.

26.     Jane Doe 7 alleges that she cheered at Rockstar, where she was sexually harassed and molested by Nathan Alan Plank, a Rockstar coach. She further alleges that she was molested and forced to perform oral sex on another Rockstar coach.

27.     Jane Doe 8 alleges that in or around 2015, when she was 15 and cheering for Rockstar, she met and had sex with one of the Rockstar coaches. She further alleges that in 2016, a different coach began sexually harassing her, and molested her.

28.     Jane Doe 9 alleges that when she was 15-17, she spent a lot of time at "Rockstar house", where she was given alcohol and drugs by adult coaches. She allegedly engaged in sexual acts and was sexually assaulted by another Rockstar coach in April 2017.

29.     John Doe 3 alleges that one of the Rockstar coaches engaged in sexual intercourse with him on numerous occasions in 2014 and 2015.

30.     All of the South Carolina federal lawsuits contain the following counts against USASF:

   a.   Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. §2255 ("the Sexual Abuse Act")
        Plaintiffs allege that USASF and the other defendants held out the gyms, their owners and coaches as part of a network of safe and trustworthy cheer coaching gyms. Plaintiffs further allege that they were minors when they were sexually

6

abused, exploited, assaulted, transported across state lines for illegal sexual activity and/or used in creating or receiving illegal and obscene digital materials.[4]

b.  <u>Civil Conspiracy in Violation of RICO (18 U.S.C. §§ 1962(c) and (d))</u>
Plaintiffs allege that USASF and the other defendants' conduct constitutes a pattern of racketeering activity, including mail fraud, wire fraud, sexual exploitation of minors and/or creating obscene materials. Plaintiffs allege that the gym defendants, their owners, Varsity and USASF formed an Enterprise within the meaning of 18 U.S.C. §1961(4); that other defendants funded the Enterprise; that the Enterprise had the common purpose of recklessly, intentionally and willfully endangering the plaintiffs by exposing them to sexual abuse and exploitation while taking money from them and assuring their parents that the minors were safe; and that all of the defendants in concert with the Enterprise engaged in misleading and fraudulent messaging to children and their families which they knew or should have known endangered the children.

c.  <u>Violation of the South Carolina Unfair Trade Practices Act</u>
Plaintiffs allege that they entered into a contractual relationship with USASF and certain other defendants in which took fees from plaintiffs while promising safe environments and vetted coaches. Defendants allegedly knew of complaints of inappropriate or illegal activity with minors, but failed to report it.

d.  <u>Gross Negligence</u>
Plaintiffs allege that defendants represented that they had rules, policies and procedures to address the risks of sexual, physical and mental exploitation of minors by coaches and adults; that defendants knew of violations to their policies, processes, procedures and guidelines but disregarded/ failed to report complaints of illegal activity; and that defendants thus breached their duty to the athletes.

e.  <u>Negligent Supervision</u>
Plaintiffs claim that USASF and other defendants, in perpetuating a business model built on trust and athlete safety, undertook a duty to ensure that dangerous individuals committing illegal acts were removed from the competitive cheer network, and that defendants breached this duty by failing to act or otherwise disregarding reports of abuse of minors, allowing coaches who were accused of such conduct to remain working with minor athletes or to transfer to other gyms without notifying their current gym of the allegations.

---

[4] On or about June 21, 2023, the South Carolina Federal Court in the lawsuit identified in paragraph 10(b) dismissed the followings counts asserted against USASF: Violation of the Protecting Young Victims from Sexual Abuse Act, 18 U.S.C. §2255; Civil Conspiracy in Violation of RICO (18 U.S.C. §§ 1962(c) and (d)); Violation of the South Carolina Unfair Trade Practices Act; Negligent Supervision; Fraud; and Civil Conspiracy. Thus, only the counts against USASF for Gross Negligence; Breach of Contract; Unjust Enrichment; and Negligent Security are still pending.

f.  Breach of Contract
    Plaintiffs allege they had contracts with Varsity and USASF whereby, in exchange for "valuable consideration", Varsity and USASF agreed to provide a competitive environment that was safe, secure and free from harm, which Varsity and USASF allegedly breached. Plaintiffs seek an order rescinding the contracts and remitting the amounts plaintiffs paid to Varsity and USASF.

g.  Unjust Enrichment
    Plaintiffs allege that they "conferred non-gratuitous benefits" upon USASF and other defendants including annual competition and membership fees, payments for uniforms and accessories, private training and others, and that it would be inequitable to permit USASF and others to retain these benefits under the circumstances.  Plaintiffs seek the return of these benefits as a matter of equity.

h.  Fraud
    Plaintiffs allege that they were parties to contracts whereby they agreed to pay USASF and other defendants recurring fees in exchange for a safe competitive and training facility, and that USASF and other defendants knew or had a reckless disregard for whether the environment facilitated access to underage athletes by predators and nevertheless entered into the agreements.

i.  Negligent Security
    Plaintiffs allege that athletes who want to cheer at private all-star gyms, camps and competitions hosted by USASF and other defendants had no choice but to attend at the locations, and under conditions, established by the defendants. Defendants, who received revenue from these events, undertook to ensure that the locations and events were safe for attendees, but failed to do so, resulting in injuries to the plaintiffs.

j.  Civil Conspiracy
    Plaintiffs allege that USASF and the other defendants, jointly and severally and in concert, recklessly, intentionally and willfully endangering the plaintiffs by exposing them to illegal substance abuse, sexual abuse and exploitations while assuring them and their families that the defendants were providing safe conditions and premises for the athletes. Defendants allegedly were motivated by profit. Defendants knew or should have known about and reported the abuses but instead allowed, endorsed and financially supported the abuses, all in a scheme to defraud the athletes and their families out of money and property.

ii.  *The North Carolina Federal Lawsuit*

31.   In the North Carolina federal lawsuit identified in Paragraph 10(a) above, the plaintiff John Doe 1 alleges that when he was 15 or 16 years old, he began cheering for Cheer Extreme Raleigh, LLC ("Cheer Extreme"), where an "older male coach" initiated a sexual

relationship with him. The owners and coaches at Cheer Extreme allegedly were aware of the sexual relationship. He also allegedly was sexually harassed by a coach from a different gym, which he reported to one of the Cheer Extreme coaches, who did nothing.

32.     The complaint in the North Carolina federal lawsuit contains the same counts against USASF as are asserted in the South Carolina federal lawsuits, except that the count for violation of the Unfair and Deceptive Trade Practices Act is for the relevant North Carolina state statute.

       *iii.*   *The Ohio State Lawsuit*

33.     In the Ohio state lawsuit identified in Paragraph 10(f) above, the plaintiff John Doe 1 alleges that he was a member of private cheer gyms in Avon Lake, Ohio and Brecksville, Ohio. John Doe 1 alleges that these gyms contracted for choreography services from certain credentialed members of USASF (coaches and/or members) and/or entities authorized by USASF, including two men who allegedly "systematically groomed and sexually abused Plaintiff" commencing in 2014. Further, in July 2016, fully aware that he was a minor and a USASF member, those men allegedly convinced plaintiff him to come to their hotel room, gave him alcohol, and had sex with him.  John Doe 1 alleges that he made a formal report to USASF on June 25, 2020, and that USASF contacted Ohio law enforcement.

34.     The Ohio state lawsuit includes the following causes of action against USASF: (i) Gross Negligence/Recklessness; (ii) Negligent Supervision; (iii) Unjust Enrichment; (iv) Negligent Security; (v) Respondeat Superior; (vi) Intentional Infliction of Emotional Distress; (vii) Violation of Consumer Sales Practice Act, R.C. 1345.02(A); and (viii) Punitive Damages.

       *iv.*   *The Texas State Lawsuit (Travis County)*

35.     In the Travis County, Texas state lawsuit identified in Paragraph 10(g) above, the plaintiffs Hannah Gerlacher and Jessica Gerlacher (the "Gerlachers") allege that they are current

national level cheer athletes who were members of Cheer Athletics gyms. The Gerlachers allege that they took private lessons from coach and trainer Jason McCartney, who repeatedly engaged in inappropriate and unlawful sexual contact with them beginning in 2015. The Gerlachers allege that they filed a general/joint complaint with USASF on its website but USASF took no action, and McCartney continues to coach.

36.     The Travis County, Texas state lawsuit includes the following causes of action against USASF: (i) Negligence; (ii) Agency, Respondeat Superior and Vicarious Liability; (iii) Negligent Hiring, Retention, Training Screening, and Supervision and Failure to Warn; and (iv) Gross Negligence.

v.     *The Texas State Lawsuit (Bexar County)*

37.     In the Bexar County, Texas state lawsuit identified in Paragraph 10(h) above, the plaintiff Jane Doe alleges that she joined a cheerleading program at Texas Wolverine in 2017 and cheered there for 5 years. Texas Wolverine is owned by Luis Bazan and his son, Lex Bazan, who was employed by Texas Wolverine as a cheerleading coach, trainer, mentor, and agent of the programs, camps, and events. He coached Jane Doe's team and gave private lessons to Jane Doe. Jane Doe alleges that between 2017 and 2021, Lex Bazan "engaged in many instances of inappropriate and sexual contact with Plaintiff, who was a minor" including: touching Jane Doe's buttocks, groping her inner thigh, including her groin area, hugging and touching her, making sexual references to her, instructing her to remove her sports bra and touching her in sexual manners that made her feel uncomfortable. Jane Doe alleges that this abuse "eventually progressed to aggravated sexual assault which at all times would occur on the premises of the Defendants' facilities."

38.     The Bexar County, Texas state lawsuit includes the following causes of action against USASF: (i) Negligence; (ii) Agency, Respondeat Superior and Vicarious Liability; (iii) Negligent Hiring, Retention, Training Screening, and Supervision and Failure to Warn; and (iv) Gross Negligence.

B.      **The Greenwich Policies**

39.     Greenwich issued the following three commercial general liability policies to USASF: Policy No. ASG0896965, issued for the period October 22, 2014 to October 22, 2015; Policy No. ASG089696501, issued for the period October 22, 2015 to October 22, 2016; and Policy No. ASG089696502, issued for the period October 22, 2016 to October 22, 2017 (collectively, the "Primary Policies"). Copies of the Primary Policies are annexed hereto as Exhibits H-J.

40.     Each of the Primary Policies has limits of liability of $1 million each occurrence, $1 million personal and advertising injury (any one person or organization), $5 million general aggregate (other than Products-Completed Operations), and $5 million products/completed operations aggregate.

41.     Greenwich also issued the following three commercial excess liability policies to USASF: Policy No. ASX0896975, effective for the period October 22, 2014 to October 22, 2015; Policy No. ASX089697501, issued for the period October 22, 2015 through October 22, 2016; and Policy No. ASX089697502, issued for the period October 22, 2016 through October 22, 2017 (collectively, the "Excess Policies"). Copies of the Excess Policies are annexed hereto as Exhibit K-M.

42.     Each of the Excess Policies has limits of $2 million each occurrence, $2 million general aggregate, and $2 million products/completed work aggregate.

43.     The Primary Policies provide in Section I – Coverages, "Coverage A – Bodily Injury and Property Damage Liability", in relevant part:

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

                    *          *          *

b.      This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; . . . .

44.     The Primary Policies define "Occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

45.     The Primary Policies define "Bodily Injury" in the Commercial General Liability Extension Endorsement as "bodily injury, sickness or disease sustained by a person, and includes mental anguish, mental injury, shock or humiliation resulting from these. Except for mental anguish, mental injury, shock or humiliation, 'bodily injury' also includes death resulting from such bodily injury, sickness or disease."

46.     Coverage A, Exclusion a. of the Primary Policies excludes coverage for:

a.      **Expected or Intended Injury**

"Bodily injury" . . . expected or intended from the standpoint of the insured . . . .

47.     Coverage A, Exclusion b. of the Primary Policies excludes coverage for:

b.     **Contractual Liability**

"Bodily injury" . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; . . .

48.     The Primary Policies contain the following Abuse or Molestation Exclusion Endorsement:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.**     The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

**2.**     The negligent:
    **a.**     Employment;
    **b.**     Investigation;
    **c.**     Supervision;
    **d.**     Reporting to the proper authorities, or failure to so report; or
    **e.**     Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

49.     The Primary Policies contain a Child Care or Supervision Exclusion Endorsement, which excludes coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children."

50.     The Excess Policies provide excess liability coverage under Coverage E – Excess Liability for:

1)     "bodily injury" or "property damage" that:

a)     is caused by an "occurrence" that takes place in the "coverage territory";
b)     occurs during the policy period of this policy; and

     c)     is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

51.     The Excess Policies do not provide coverage unless the injury would have been covered by the Primary Policies.

C.     **USASF's Tender to Greenwich**

52.     USASF first reported the Underlying Lawsuits identified in Paragraphs 10(a)-(f) to American Specialty Insurance and Risk Services on or about December 9, 2022.[5]

53.     On or about December 17, 2022, USASF notified American Specialty Insurance and Risk Services of the Underlying Lawsuit identified in Paragraph 10(g).

54.     On February 7, 2023, Greenwich agreed to defend USASF in the Underlying Lawsuits above under a full and complete reservation of rights.[6] A copy of Greenwich's position letter is attached as Exhibit N.

55.     USASF first reported the Ohio state court lawsuit identified in Paragraph 10(f) to American Specialty Insurance and Risk Services on or about September 12, 2023.

56.     On or about October 6, 2023, Greenwich agreed to defend USASF in the Ohio state court lawsuit identified in Paragraph 10(f) under policy No. ASG089696501 (10/22/15-16), subject to a full and complete reservation of rights. A copy of Greenwich's October 6, 2023 position letter is attached hereto as Exhibit Q.

57.     USASF first reported the Bexar County, Texas state court lawsuit identified in Paragraph 10(h) to American Specialty Insurance and Risk Services on or about October 3, 2023.

---

[5] This does not include the Ohio state court lawsuit referenced in Paragraph 10(f).
[6] Greenwich declined coverage for plaintiffs John Doe 1 and Jane Does 2 and 4 in the Underlying Lawsuit referenced in Paragraph 10(b) as their claims involve incidents that took place after the expiration of the Greenwich Policies. After receipt of further information, Greenwich also declined coverage for plaintiffs Jane Doe 1, 3, 5 and 6 in the Underlying Lawsuit referenced in Paragraph 10(b) as their claims involve incidents that took place prior to the inception of or after the expiration of the Greenwich Policies.

58.    On or about October 25, 2023, Greenwich agreed to defend USASF in the Bexar County, Texas state court lawsuit identified in Paragraph 10(h) under policy No. ASG089696502 (10/22/16-17), subject to a full and complete reservation of rights. A copy of Greenwich's October 25, 2023 position letter is attached hereto as Exhibit R.

59.    Greenwich disclaimed coverage for the following causes of action:

a.  The Violations of the Sexual Abuse Act;
b.  Civil Conspiracy in Violation of RICO 18 U.S.C. §§ 1962(c) and (d);
c.  The South Carolina, North Carolina, and Ohio Unfair Trade Practices / Consumer Sales Practices claims;
d.  Negligent Supervision;
e.  Breach of Contract;
f.  Unjust Enrichment;
g.  Fraud;
h.  Civil Conspiracy;
i.  Intentional Infliction of Emotional Distress;
j.  Negligent Hiring, Retention, Training, Screening and Supervision, and Failure to Warn (Texas state lawsuits);
k.  Agency/Respondeat Superior/Vicarious Liability (Texas state lawsuit);
l.  Respondeat Superior (Ohio state lawsuit);
m.  Punitive Damages (Ohio state lawsuit).

60.    With respect to the Counts in the Underlying Lawsuits alleging Negligence, Gross Negligence, Negligent Security (Ohio state lawsuit), and Agency, Respondeat Superior and Vicarious Liability (Bexar County, Texas lawsuit), Greenwich reserved its right to decline coverage based upon exclusions in the Primary Policies.

61.    Greenwich now seeks a declaration that the exclusions in the Primary Policies preclude coverage under the Primary Policies for all of the claims on which Greenwich reserved its rights, and that Greenwich has no obligation to defend or indemnify USASF in the Underlying Lawsuits.

## COUNT I – DECLARATORY RELIEF
## (ABUSE OR MOLESTATION EXCLUSION)

62.     Greenwich incorporates by reference all preceding allegations of this pleading as if fully set forth herein.

63.     The Underlying Lawsuits allege damages arising from the actual or threatened abuse or molestation of the plaintiffs.

64.     USASF itself is not alleged to have perpetrated the actual or threatened abuse or molestation of the plaintiffs in the Underlying Lawsuits.

65.     Instead, the plaintiffs seek to hold USASF liable on several negligence-based theories, including but not limited to:

   a.   negligent supervision;

   b.   failure to appropriately enforce policies, processes, and procedures related to athlete safety;

   c.   defendants were hosting events without regard for and in contravention of the safety of student athletes;

   d.   defendants "created rules specifically intended to address the risks of sexual, physical, and mental exploitation of minor athletes by coaches, and adults who come into contact with the athletes by virtue of the adults' position of power" but that violations of the rules related to athlete safety and harm from sexual, physical and emotional abuse happened regularly at USASF-certified gyms by USASF-certified coaches;

   e.   defendants' actions and omissions "were unreasonable, constituted the total absence of care, and breached duties owed to the plaintiffs" and "were in violation of Defendants' own policies";

   f.   failing to act or disregarding reports of abuse of minors and allowing coaches who were accused of such conduct to remain working with minor athletes or to transfer to other gyms without notifying their current gym of the allegations;

   g.   gross negligence based upon a duty allegedly owed to the plaintiffs by the gyms, their owners and employees, and by USASF as a result of their "certification" of private coaches and gyms; and

     h.    defendants were responsible for the safety, health, and welfare of the minor athletes who were members of USASF and "under the care, custody, and control of each of the Defendants".

66.    Thus, the plaintiffs allege that the actual or threatened abuse or molestation of the plaintiffs occurred while the plaintiffs were in the care, custody, or control of USASF.

67.    The Abuse or Molestation Exclusion Endorsement in the Primary Policies excludes: 1) "bodily injury", "property damage" or "personal and advertising injury" arising out of "the actual or threatened abuse or molestation by anyone of a person while in the care, custody or control of any insured";  or 2) the negligent employment, retention, investigation, supervision, reporting to the authorities or failure to report to the authorities of a person for whom any insured is or ever was responsible and whose conduct would be excluded by 1).

68.    The claims for negligence, negligent security, gross negligence, respondeat superior, and any other negligence-based claims are excluded from coverage under the Primary Policies by Paragraph 1 of the Abuse or Molestation Exclusion Endorsement.

69.    Additionally, many of the claims in support of the negligence-based causes of action involve negligent: employment; investigation; supervision; reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible in connection with the actual or threatened abuse or molestation of any person in his/her care, custody or control.

70.    Plaintiffs' allegations include:

    a.    USASF's negligent supervision;

    b.    USASF and others continued to let the gyms operate and failed to report the criminal activities to law enforcement;

    c.    USASF knew or should have known of the alleged abuse, and failed to report it;

d.  USASF and others breached a duty owed by failing to act or disregarding reports of abuse of minors and allowing coaches who were accused of such conduct to remain working with minor athletes or to transfer to other gyms without notifying their current gym of the allegations;

e.  Negligent hiring, retention, training, screening and supervision, and failure to warn, which, as asserted in the Texas state lawsuit, alleges that USASF and others failed to properly screen, hire and train their coaches;

f.  USASF and others, as asserted in the Texas state lawsuit, should have known that McCartney should not have been interacting with minor athletes but allowed him to do so, which constitutes a failure to adequately investigate, regulate, monitor, and supervise McCartney;

g.  The Bexar County, Texas state lawsuit asserts a cause of action for agency, respondeat superior and vicarious liability against USASF, which alleges that USASF was responsible for the conduct of their coaches, employees, and/or agents due to the relationship that existed, among other acts and omissions of negligence, including duties owed to ensure its coaches were not harming children in the gyms;

h.  In support of the negligence claim in the Texas state lawsuits, plaintiffs allege that defendants breached the duty of reasonable care owed to plaintiffs through their failure to: (i) exercise reasonable care; (ii) properly screen, retain, hire, train, and/or supervise; (iii) promulgate effective safety policies; (iv) protect minor athletes; (v) properly investigate; (vi) notify; (vii) ensure safety policies and procedures were followed; (viii) ensure safety policies and procedures were enforced; and (ix) exercise reasonable control over employees, agents and/or contractors;

i.  The Ohio state lawsuit asserts a cause of action for negligent security against USASF, which alleges USASF and the other the defendants sponsored, created, hosted, attended and oversaw private All-Star gyms, camps. clinics, coaches, choreographers and competitions; that athletes had no meaningful choice but to attend at the locations and under the conditions established by defendants; that defendants undertook a responsibility to ensure that the locations and events were safe for attendees; that all of Plaintiff's interactions with the perpetrators were at locations under the express authority and control of USASF and the Varsity Defendants; that the perpetrators were duly authorized agents and/or representative of USASF; and that USASF and the other defendants violated their responsibility to provide safe premises free from harm from third parties.

71.  Coverage for these enumerated negligent acts or omissions is excluded by Paragraph 2 of the Abuse or Molestation Exclusion in the Primary Policies.

72.     Accordingly, Greenwich is entitled to a declaration that it is not obligated to defend or indemnify USASF under the Greenwich Policies with respect to the Underlying Lawsuits or any other existing or future lawsuits tendered to it under the Greenwich Policies asserting substantially similar facts and causes of action.

### COUNT II – DECLARATORY RELIEF
### (EXPECTED OR INTENDED INJURY EXCLUSION)

73.     Greenwich incorporates by reference all preceding allegations of this pleading as if fully set forth herein.

74.     Coverage A, Exclusion a. excludes coverage for "Expected or Intended Injury."

75.     To the extent that the causes of actions for the negligence-based claims involve intentional acts or expected or intended injuries, such claims are excluded by Coverage A., Exclusion a.

76.     Accordingly, Greenwich is entitled to a declaration that it is not obligated to defend or indemnify USASF under the Greenwich Policies with respect to the Underlying Lawsuits or any other existing or future lawsuits tendered to it under the Greenwich Policies asserting substantially similar facts and causes of action.

### COUNT III – DECLARATORY RELIEF
### (CONTRACTUAL LIABILITY EXCLUSION)

77.     Greenwich incorporates by reference all preceding allegations of this pleading as if fully set forth herein.

78.     Coverage A, Exclusion b. of the Primary Policies excludes "Bodily injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

79.     To the extent that the plaintiffs in the Underlying Lawsuits are alleging that USASF assumed, in a contract or agreement, liability for the plaintiffs' alleged "bodily injuries" in connection with their negligence-based claims, such claims are barred by Coverage A, Exclusion b.

80.     Accordingly, Greenwich is entitled to a declaration that it is not obligated to defend or indemnify USASF under the Greenwich Policies with respect to the above claims in the Underlying Lawsuits or any other existing or future lawsuits tendered to it under the Greenwich Policies asserting substantially similar facts and causes of action.

## COUNT IV – DECLARATORY RELIEF
## (CHILD CARE EXCLUSION)

81.     Greenwich incorporates by reference all preceding allegations of this pleading as if fully set forth herein.

82.     The Child Care or Supervision Exclusion Endorsement to the Primary Policies excludes coverage for "losses or damages arising out of and in the course of the insured's performance of babysitting, child care services, or any other similar activity involving the care or supervision of children."

83.     To the extent that the abuse or molestation took place while any of the minor plaintiffs were in the care or supervision of USASF, such claims are barred by this exclusion.

84.     Accordingly, Greenwich is entitled to a declaration that it is not obligated to defend or indemnify USASF under the Greenwich Policies with respect to the above claims in the Underlying Lawsuits or any other existing or future lawsuits tendered to it under the Greenwich Policies asserting substantially similar facts and causes of action.

## COUNT V —DECLARATORY RELIEF AS TO DEFENSE

85.     Greenwich incorporates by reference all preceding allegations of this pleading.

86.     USASF has tendered its defense of the Underlying Lawsuits to Greenwich and contends that Greenwich has a duty to defend it in the Underlying Lawsuits.

87.     While Greenwich is providing a defense for the Underlying Lawsuits as set forth above, it contends that it has no duty to defend under the Primary Policies.

88.     To the extent that the Court rules that Greenwich has no duty to defend under the Primary Policies, Greenwich also seeks a declaration allowing it to withdraw from the defense of the Underlying Lawsuits and to obtain reimbursement of defense costs.

89.     An actual and justiciable controversy exists between Greenwich and USASF as to these matters.

## COUNT VI — DECLARATORY RELIEF AS TO INDEMNITY

90.     Greenwich incorporates by reference all preceding allegations of this pleading.

91.     USASF contends that Greenwich has a duty to indemnify it in the Underlying Lawsuits.

92.     Greenwich contends that the aforementioned policy provisions bar or limit coverage for any judgment or settlement in the Underlying Lawsuits.

93.     An actual and justiciable controversy exists between Greenwich and USASF as to these matters.

**WHEREFORE**, Greenwich respectfully requests that the Court issue judgment that it has no duty to defend and indemnify USASF in the Underlying Lawsuits or any other existing or

future lawsuits tendered to it under the Greenwich Policies asserting substantially similar facts

and causes of action, along with such other and further relief as this Court deems just and proper.

Dated:          October 31, 2023

                                         Respectfully submitted,

                                         MOUND COTTON WOLLAN & GREENGRASS
                                         LLP

                                         *s/ Kristen C. Kish*
                                         Lloyd A. Gura, Esq. (admitted pro hac vice)
                                         Ellen G. Margolis, Esq.(admitted pro hac vice)
                                         Kristen C. Kish (admitted pro hac vice)
                                         Mound Cotton Wollan & Greengrass, LLP
                                         One New York Plaza
                                         New York, NY  10004
                                         212-804-4200

                                                  &

                                         THOMAS P. CASSIDY, JR., TN 13186
                                         ROBERT TURNER, IV, 035364
                                         MCANGUS GOUDELOCK & COURIE, LLC
                                         Post Office Box 171446
                                         5350 Poplar Avenue, Suite 800 (38119)
                                         Memphis, Tennessee 38187
                                         Phone: (901) 682-3436
                                         Facsimile: (901) 339-0683
                                         Email: tom.cassidy@mgclaw.com
                                         Email: rob.turner@mgclaw.com