# Exhibit G

7/19/2021 9:00 AM
**Velva L. Price
District Clerk
Travis County
D-1-GN-21-003338
Ruben Tamez**

CAUSE NO. D-1-GN-21-003338

| HANNAH GERLACHER AND | § | IN THE DISTRICT COURT OF |
| JESSICA GERLACHER | § | |
| | § | |
| | § | |
| V. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| | § | |
| | § | |
| | § | |
| CHEER ATHLETICS, INC., CHEER | § | 126TH DISTRICT COURT |
| ATHLETICS-PLANO, LLC, CHEER | § | |
| ATHLETICS-FRISCO, LLC, CHEER | § | |
| ATHLETICS HOLDINGS, LLC, UNITED | § | |
| STATES ALL STAR FEDERATION, and | § | |
| JASON MCCARTNEY | § | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COME Plaintiffs Hannah Gerlacher and Jessica Gerlacher, who file this Original Petition, complaining of Defendants Cheer Athletics, Inc., Cheer Athletics-Plano, LLC, Cheer Athletics-Frisco, LLC, Cheer Athletics Holdings, LLC, United States All Star Federation, and Jason McCartney, and would respectfully show the following:

### I.    PARTIES

1.    Plaintiff Hannah Gerlacher is an individual residing in Texas.

2.    Plaintiff Jessica Gerlacher is an individual residing in Texas.

3.    Defendant Cheer Athletics, Inc. is a corporation doing business in Texas. Defendant may be served through its registered agent: Joseph K. Melton, 1300 E. Plano Pkwy., Ste. C, Plano, TX 75074.

4. Defendant Cheer Athletics-Plano, LLC is a limited liability company doing business in Texas. Defendant may be served through its registered agent: Joseph K. Melton, 1300 E. Plano Pkwy., Ste. C, Plano, TX 75074.

5. Defendant Cheer Athletics-Frisco, LLC is a limited liability company doing business in Texas. Defendant may be served through its registered agent: Joseph K. Melton, 1300 E. Plano Pkwy., Ste. C, Plano, TX 75074.

6. Defendant Cheer Athletics Holdings, LLC is a limited liability company doing business in Texas. Defendant may be served through its registered agent: Joseph K. Melton, 1300 E. Plano Pkwy., Ste. C, Plano, TX 75074.

7. Defendant United States All Star Federation is a corporation doing business in Texas. Defendant does not have a registered agent with the Texas Secretary of State. Defendant may be served through its registered agent: Jim Chadwick, 8275 Tournament Dr., Ste. 325, Memphis, TN 38125.

8. Defendant Jason McCartney is an individual residing in Texas. Specifically, Defendant maintains his residence in Travis County. Defendant may be served wherever he may be found.

9. Plaintiffs specifically invokes the right to institute this suit against whatever entities were conducting business using the assumed or common name of "Cheer Athletics" with regard to the events described in this Petition. The Cheer Athletics Defendants will be referred to herein as "Cheer Athletics." Plaintiffs expressly invoke their right under Rule 28 of the Texas Rules of Civil Procedure to have the name of these parties substituted at a later time, upon the motion of any party or one of the Court.

## II.   DISCOVERY CONTROL PLAN

10.     Plaintiffs intend to conduct discovery under Level 2.

### III.     JURISDICTION AND VENUE

11.     This Court has jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.  Plaintiffs seek monetary relief over $10,000,000.  Additionally, removal to federal court would be improper because this lawsuit does not involve a federal question, this lawsuit lacks diversity and/or because of the forum defendant rule.

12.     Venue is proper in this County under Texas Civil Practice & Remedies Code § 15.002 because this is the county in which one Defendant maintains a residence or principal office.

### IV.     FACTUAL SUMMARY

13.     Hannah and Jessica Gerlacher are twin sisters and current national level cheer athletes.  The Gerlacher sisters have had an illustrious career in cheerleading.  They have been household names in the cheerleading world, serving as inspiration for young women across the country, as evidenced by their reputation and following.

14.     In this multi-billion-dollar industry, Cheer Athletics competes with Varsity for enrollment and to be the home of the country's most competitive and talented athletes.  Cheer Athletics operates a dozen gyms across the country, including locations in Texas, New York, Colorado, Florida and Pennsylvania.  Cheer Athletics' Plano gym—its flagship gym—was even featured on the acclaimed Netflix series *Cheer*.

15.     Jason McCartney worked as a coach at Cheer Athletics' Frisco and Plano gyms. McCartney then became a co-owner at Cheer Athletics' Austin gym.

16.     The U.S. All Star Federation (referred to herein as "USASF") is the rule-making body over the discipline of All Star cheer, which usually runs through privately owned gyms.

3

USASF has a membership program, whereby individuals register with USASF, undergo training, and agree to abide by rules, in order to even participate in USASF-sanctioned events.

17.     According to its Bylaws, the mission and purpose of USASF are: "to establish rules for sanctioning and providing governance for cheerleading, dance and spirit-related competitions and events; to provide counseling in the administration of cheerleading, dance and spirit-related competitions and events; and to provide educational and counseling services in the fields of cheerleading, dance and spirit related competition and events."

18.     Cheer clubs must be "member clubs" with USASF in order to participate as USASF-sanctioned events and competitions.   Indeed, according to the USASF website, membership is required for the US based organizations from which one or more team attends USASF sanctioned events.

19.     USASF membership is similarly required for all athletes competing or performing in a US based-All Star Cheer Dance Program, including athletes on Novice, Prep Teams, Show and Exhibition Teams.

20.     USASF membership is also required for individuals who are actively coaching All Star athletes and are associated with an active U.S. All Star Club member.   The general term "member" at USASF includes several classes of membership, including coaches, clubs and athletes.

21.     Defendant USASF purposefully conducts substantial, continuous, and purposely conducts substantial business activities in the State of Texas, routinely holding regional, national and international events throughout the State of Texas.   Upon information and belief, Defendant USASF has dozens of member clubs in the State of Texas, all of whom were mandated by USASF policy to adopt and enforce certain SafeSport policies and procedures.   Defendant USASF actively

recruits young cheer athletes from the State of Texas and receives a constant flow of funding from the State of Texas, including funding from membership dues, as well as periodic regional, state-wide, and national events held in the State of Texas.  Defendant USASF derives substantial economic benefit from the State of Texas.

22.     Defendant USASF employs and retains agents, servants, volunteers, and members that interact directly with minor children as an ordinary course of their responsibilities.  As such, all such employees, agents, volunteers, servants and members at Defendant USASF are mandated reporters under Texas Family Code section 261.01, et seq.  Moreover, under USASF policy, specifically, members of USASF who suspect sexual or physical abuse or misconduct are required to report the allegations to law enforcement before they report it to the USASF.

23.     Defendant McCartney was employed by Cheer athletics as a coach, trainer, mentor, and agent of Cheer Athletics through programs, camps, events, and attending competitions, including serving in such capacities at regional summits and competitions where Cheer Athletics competed such as ACA and NCA.  McCartney served as a coach, trainer, mentor, and agent of USASF and Cheer Athletics through USASF and Cheer Athletics' programs, camps, events, and competitions.

24.     At the time of these acts described herein, Hannah and Jessica Gerlacher were minor cheer athletes competing in events and competitions, as well as training under Cheer Athletics, USASF and McCartney.

25.     Cheer Athletics' gyms have class programs and open gym programs, among others. Thousands of athletes over the years, including Hannah and Jessica Gerlacher, have called Cheer Athletics and its gyms home.  Cheer Athletics' success is undeniable, as it has more regional,

national, and world championship titles in the cheerleading industry than any other program in the country.

27.     Underneath all the success the Cheer Athletics Defendants have had is the fact that there are sexual predators in plain sight.

28.     Tolerance of sexual abuse in the cheerleading world is pervasive—at the individual level, the owner level, and the governing body level.  In other industries (*e.g.* Weinstein's assaults and rape of actresses and the USA Gymnastics sex abuse scandal, among many others), it took courageous individuals speaking up, for others to speak up.  Plaintiffs are two victims in a potential sea of voices, attempting to enact change in—not dismantle—the cheerleading industry. Cheerleading is an important outlet for many children to fulfill their athletic and personal potential, and Plaintiffs hope for this industry to be around well into the future.  But until Cheer Athletics properly screens, trains, and supervises its coaches, there will continue to be victims.

29.     It is well-documented that Defendants have failed in regards to the protection of minor athletes from sexual predators both prior to, during, and after the abuse of Plaintiffs. Defendants have had a troubled history of failing to timely suspend and remove predators, turning a blind eye to sexual predators, not adequately screening coaches, publicly supporting predators after accusations of sexual misconduct, continuing to communicate with sexual predators, and even warning them of an impending police investigation.  Those actions have put countless minor athletes at risk.

30.     Cheerleading has been Hannah and Jessica's life passion.  The twin sisters began private lessons with Defendant McCartney because he assured the minor athletes he could take them to the highest team level at the time in the sport of cheer, the Level 5 Team.  McCartney did

in fact get the twins to the Level 5 team, but also used his access to groom and abuse the minor athletes.

31.     The abuse of Hannah and Jessica Gerlacher began in 2015.  The abuse began shortly after Hannah suffered a head injury while training at Cheer Athletics.  The head injury, while not the subject injury of this lawsuit, did result in Hannah having problems and difficulty coping.  This vulnerability, in addition to her young age, allowed McCartney to abuse her even more severely than her twin sister Jessica, who did not have a head injury during the time period of the abuse.

32.     McCartney repeatedly engaged in inappropriate and unlawful sexual contact with Hannah and Jessica Gerlacher, taking their innocence away.  McCartney pushed up against Jessica and Hannah with an erection on numerous occasions.  McCartney would instruct Hannah to sit in his lap where he would hold and touch her.

33.     On one instance, McCartney forced Hannah into the pro shop room at Cheer Athletics' facility during team tryouts, an event where parents were specifically forbidden from being present in the gym, and he pressed her up against the cabinets.  McCartney had one hand on her neck, while his body was pushed up against hers.  Hannah was too frightened to make any noise as he touched her body.

34.     On numerous occasions, McCartney groped Jessica's breasts over her bra. McCartney would use any opportunity he could to "spot" the twins and to touch the twins in areas that were unnecessary for spotting at their level so he could have his hands on their private areas such as their breasts, crotches, and buttocks.  Hannah and Jessica, who now serve as cheer coaches at a different club/gym, look back and know the level of spotting McCartney used on them was not necessary and was not for their safety, but rather for his own sick pleasure.

35.     McCartney would touch Hannah's genitals  and would make stroking motions with his fingers and thumb, and would attempt to penetrate her digitally, with only a thin layer of spandex underwear between his finger and Hannah's genitals.  McCartney would touch Hannah like this when he instructed her to sit in his lap in Cheer Athletics gym on numerous occasions. McCartney would also touch underneath Hannah's clothes.

36.     For years, Hannah and Jessica felt shame about what had happened to them as minor athletes and they were both fearful of speaking out.

37.     Eventually after to coming to terms with the abuse, Jessica and Hannah filed a general/joint complaint with USASF on its website.  Hannah and Jessica left their names anonymous, but specifically identified McCartney as the abuser.  **Defendants took no action.** There was no investigation.  Defendants did not notify any parents.  No one reached out to the individuals or minor athletes who had been on the teams of McCartney inquiring into their interactions with McCartney.  No one suspended McCartney.  Defendants simply buried it. Meanwhile, McCartney has continued to have unfettered access to minor children.

38.     Instead of any investigation and any consequence for what transpired, Cheer Athletics has continued to grow its base of athletes, and also revenue.  McCartney is currently a co-owner of the Austin location of Cheer Athletics, where he has continued exposure to minor athletes.

39.     Plaintiffs believe they are not the only ones who have been abused by McCartney. But Plaintiffs hope McCartney will never have the opportunity to abuse anyone further.

40.     Angela Rogers, one of Cheer Athletics' owners, has previously stated: "We want everyone to know that the protection of our athletes is first and foremost to us."  Cheer Athletics markets itself by stating it has "a knack for building champions but our main goal always has been

and always will be to build the best you."  McCartney has worked with Cheer Athletics at various gyms since 2005.  McCartney claims on Cheer Athletics' site that he wants to be able to create a "safe place for young people."  These words ring hollow.  Cheer Athletics and its owners have had no reservations supporting sexual predators.  Jerry Harris—a star on the acclaimed Netflix show *Cheer*—is currently in detention, facing federal charges of child pornography and child sexual exploitation of numerous minors across three states.  The U.S. Attorney's office, in court filings, indicated that an individual had "tipped off" Harris about an investigation,[1] and that Harris told authorities he got rid of his cell phone because he knew it contained evidence.  Harris then bought a new phone and continued preying on minors.  After learning of sexual misconduct allegations, Cheer Athletics and its owners continued to post public supportive comments regarding Harris.

41.     Here, Plaintiffs have reported these acts to the authorities.  Through the potential criminal action, as well as through this civil lawsuit, Plaintiffs hope to hold Defendants accountable and protect athletes in the future.

42.     Defendants' actions have changed Plaintiffs' lives.  Plaintiffs will have to live with the deep-rooted mental trauma.  Plaintiffs frequently attend counseling sessions to manage the trauma.  Plaintiffs also take antidepressants.

43.     Defendants' collective revenues are in the tens of millions.  Defendants had no incentive to suspend McCartney.  Cheer Athletics' reputation (and that of its owners and coaches, including McCartney) is critical to its ability to recruit new athletes and retain current ones.  Meanwhile, USASF is not motivated to thoroughly investigate coaches and member organizations, especially one as successful as Cheer Athletics.  Simply put, Defendants put financial gain above their athletes' safety.

---

[1] Plaintiffs in that lawsuit added Rogers as a defendant, claiming she was the gym owner who tipped off Harris about the investigation.

## V. <u>CAUSES OF ACTION</u>

**A.  SEXUAL ASSAULT, ASSAULT, AND BATTERY (MCCARTNEY)**

44.     Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

45.     The acts committed by McCartney constitute assault.  McCartney's actions resulted in harmful and offensive contact with Plaintiffs.

**B.  NEGLIGENCE (ALL DEFENDANTS)**

46.     Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

47.     Defendants owed a duty of reasonable care to Plaintiffs.  Defendants breached this duty in several ways, including but not limited to, the following:

1.  Failing to exercise reasonable care;

2.  Failing to properly screen, retain, hire, train, and/or supervise;

3.  Failing to promulgate effective safety policies;

4.  Failing to protect minor athletes;

5.  Failing to properly investigate;

6.  Failing to notify;

7.  Failing to ensure safety policies and procedures were followed;

8.  Failing to ensure safety policies and procedures were enforced; and

9.  Failing to exercise reasonable control over employees, agents and/or contractors.

48.     Each of these acts and omissions, singularly or in combination with others, constitute negligence which was the proximate cause of Plaintiffs' injuries.

**C.  AGENCY, RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY (ALL DEFENDANTS)**

49.    Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

50.    Defendants are responsible for the conduct of their coaches, employees, and/or agents due to the relationship that existed, among other acts and omissions of negligence which may be shown during the trial of this cause.

## D.    NEGLIGENT HIRING, RETENTION, TRAINING, SCREENING, AND SUPERVISION, AND FAILURE TO WARN (ALL DEFENDANTS)

51.    Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

52.    Defendants failed to properly screen, hire and train their coaches, including McCartney;

53.    Defendants knew or should have known that McCartney should not have been interacting with minor athletes;

54.    Defendants provided McCartney direct and continued access to minors, despite failing to adequately investigate, regulate, monitor, and supervise McCartney.

## E.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (MCCARTNEY)

55.    Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

## F.    GROSS NEGLIGENCE (ALL DEFENDANTS)

56.    Plaintiffs re-allege each aforementioned allegation as if fully incorporated below.

57.    Plaintiffs will further show that the acts and/or omissions of Defendants, when viewed objectively from Defendants' standpoint, involved an extreme risk considering the probability and magnitude of the potential harm to others.  Defendants had actual subjective awareness of the risk involved, but nevertheless proceeded in conscious indifference to the rights, safety, and/or welfare of others, including Plaintiffs.  As such, Defendants' actions and omissions constitute gross negligence.  Therefore, Plaintiffs pray that punitive damages be awarded against

Defendants.

## VI.   **DAMAGES**

58.     Plaintiffs seek damages for physical pain and suffering in the past and future; mental anguish in the past and future; medical expenses in the past and future; loss of earning capacity in the past and future; loss of household services in the past and future; costs of suit; and pre-judgment and post-judgment interest at the appropriate rate allowed by law.

59.     Plaintiffs seek any other and further relief to which Plaintiffs may be justly entitled, including punitive damages for Defendants' actions.  Plaintiffs also plead that due to the felony acts that occurred, there is no limitation on exemplary damages.

## VII.   **JURY DEMAND**

60.     Plaintiffs respectfully demand a jury trial.

## VIII.   **PRESERVATION NOTICE**

61.     Plaintiffs request that Defendants preserve any and all related evidence, reports, statements, notes, logs, website submission data, internal communications, emails, text messages, materials, communications with governmental entities, photos, and videos.  Defendants' failure to preserve relevant evidence may warrant a spoliation instruction at trial which creates a presumption that if the evidence was preserved, it would weigh against the respective party.

## IX.   **PRAYER**

62.     Plaintiffs ask that Defendants be cited to appear and answer this suit.  Plaintiffs pray for any and all other relief to which they may be justly entitled.

*(signature on following page)*

Respectfully submitted,


By: */s/ Michelle Simpson Tuegel*
THE SIMPSON TUEGEL LAW FIRM, PLLC
Michelle Simpson Tuegel
State Bar No. 24075187
3301 Elm St.
Dallas, Texas 75226
(214) 774-9121
(214) 614-9218 (fax)
michelle@stfirm.com

-and-

*/s/ Andrew Dao*
DALY & BLACK, P.C.
John Scott Black
State Bar No. 24012292
jblack@dalyblack.com
Andrew Dao
Texas Bar No. 24082895
adao@dalyblack.com
2211 Norfolk, Suite 800
Houston, Texas 77098
Telephone: (713) 655-1405
Facsimile: (713) 655-1587
ecfs@dalyblack.com (service)

**ATTORNEYS FOR PLAINTIFFS**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Richard Daly on behalf of Andrew Dao
Bar No. 24082895
ecfs@dalyblack.com
Envelope ID: 55456531
Status as of 7/20/2021 1:28 PM CST

Associated Case Party: HANNAH GERLACHER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew Dao | | adao@dalyblack.com | 7/19/2021 9:00:47 AM | SENT |
| Lauren Connon | | lconnon@dalyblack.com | 7/19/2021 9:00:47 AM | SENT |
| Richard D.Daly | | ecfs@dalyblack.com | 7/19/2021 9:00:47 AM | SENT |
| Ajay Ketkar | | aketkar@dalyblack.com | 7/19/2021 9:00:47 AM | SENT |