# Exhibit K

**ENDORSEMENT #**01

This endorsement, effective 02/25/15 12:01 a.m., forms a part of

Policy No. ASX0896975 issued to US All Star Federation dba IASF

by Greenwich Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**EXCESS LIABILITY**

It is hereby understood and agreed that the Named Insured's Mailing Address is amended to read as follows:

8275 Tournament Drive Suite 325
Memphis, TN  38125

No additional premium due.

All other terms and conditions remain unchanged.

          © 2010 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| --- | --- |
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING**: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Pennsylvania | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| Puerto Rico | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

PRIVACY POLICY

The XL America, Inc. insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality.  For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies.  For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way.  In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

**Our Privacy Promise**

Your privacy and the confidentiality of your business records are important to us.  Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products.  We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you.  Accordingly, we promise that:

1.  We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2.  We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3.  We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4.  We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5.  We will not disclose information about you or your business to any organization outside the XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6.  We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7.  We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8.  We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

**Collection and Sources of Information**

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services.  The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you.  The information we collect will vary with the type of insurance you seek;
- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

## NOTICE TO POLICYHOLDERS

- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and

- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;

## NOTICE TO POLICYHOLDERS

- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

<u>Violation of the Privacy Policy</u>

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State.  **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons*.  This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government. Business transactions with any of these entities are expressly prohibited.  These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran*.  This list can be found on the U.S. Department of the Treasury's web site - http://www.treas.gov/offices/enforcement/lists/

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 1010

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
©2010 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

## NOTICE TO POLICYHOLDERS

**INDIANA - NOTICE**

**Questions regarding your policy or coverage should be directed to:**

XL Insurance
SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT  06902-6040
800-622-7311

If you (a) need the assistance of the governmental agency that regulates insurance; or (b) have a complaint you have been unable to resolve with your insurer you may contact the Department of Insurance by mail, telephone or email:

State of Indiana Department of Insurance
Consumer Services Division
311 West Washington Street, Suite 300
Indianapolis, Indiana 46204

Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi

 © 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

## NOTICE TO POLICYHOLDERS

**TENNESSEE**

**FOR INFORMATION, OR
TO MAKE A COMPLAINT, CALL:
1-800-622-7311
XL INSURANCE
SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT  06902-6040**



**Regulatory Office**
505 Eagleview Blvd. Suite 100
Dept: Regulatory
Exton, PA 19341-1120
Telephone: 800-688-1840

COMPANY PROVIDING COVERAGE:

**Greenwich Insurance Company**

## Commercial Excess/Umbrella Liability Certificate Holder Declarations

Certificate Number: ASX0896975
This Certificate Forms a Part of Master Policy Number: ASU0890007
Renewal of Certificate Number: New

Producer: American Specialty Insurance & Risk Services, Inc.

Named Insured and Mailing Address (number, street, town, or city, county, state, ZIP code):
US All Star Federation dba IASF
6745 Lenox Center Court, Suite 300
Memphis, TN  38115

( ) Individual      ( ) Joint Venture      ( ) Partnership      ( ) Limited Liability Company
(X) Corporation    ( ) Other (describe)

Description of Business: Camps/Clinics

Policy Term:     From 10/22/14 to 10/22/15
                 12:01 am Standard Time at your mailing address shown above.

Retroactive Date (if any):        N/A        (Applicable to <u>Claims-Made</u> Coverage Only)

This replaces all previously issued policy Declarations, if any. This policy applies only to accidents, occurrences, offenses, or losses that happen during the policy term shown above. If the policy is written on a continuous basis, each period of one year ending on the anniversary date of this policy constitutes a separate policy period.

---

### Commercial Excess/Umbrella Liability Coverage

| Limits of Insurance: | | |
|---|---|---|
| | Each Occurrence Limit | $2,000,000. |
| | Products/Completed Work Hazard Aggregate Limit | $2,000,000. |
| | General Aggregate Limit | $2,000,000. |
| Self-insured Retention | | $N/A |

---

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material with permission of American Association of Insurance Services, Inc.

Certificate Premium $23,653.00 Deposit Premium $N/A          Minimum Earned Premium $N/A

Surcharge or Taxes (If Applicable) $N/A

Premium for Certified Acts of Terrorism $1,126.(included in Certificate Premium listed above)

Audit Period (if applicable)
      Annual       Semi-Annual      Quarterly      Monthly

## SCHEDULE OF UNDERLYING INSURANCE
### (Show insurer, policy number, policy period, coverage, and limits of insurance)

_

| **Commercial Liability Limits:** | Each Occurrence | $1,000,000 |
|---|---|---|
| __X__  w/Personal Injury | Personal and Advertising Injury Liability | $1,000,000 |
| and Advertising | General Aggregate | $5,000,000 |
| Liability Coverage | Products/Completed Operations Aggregate | $5,000,000 |
| | Employee Benefits Liability | $N/A |
| ____  w/Non-Owned Auto | Employment Practices Liability | $N/A |
| Liability Coverage/ | Other N/A | $N/A |
| Hired Auto Liability | Other N/A | $N/A |
| Coverage | | |

__X__  Occurrence Form
____  Claims-Made Form

Retroactive Date:     N/A
Insurer:           Greenwich Insurance Company
Policy Number:    ASG0896965
Policy Period:     10/22/14-10/22/15

_

| **Commercial Auto Liability Limits:** | Combined Single Limit  Or | $1,000,000 NOHA only |
|---|---|---|
| __X__  w/Non-Owned Auto | Bodily Injury-Each Person | $N/A |
| Liability Coverage/ | Bodily Injury-Each Accident | $N/A |
| Hired Auto Liability | Property Damage-Each Accident | $N/A |
| Coverage | Garage Aggregate Limit for Other | |
| | Than Autos (if applicable) | $N/A |

Insurer:           Greenwich Insurance Company
Policy Number:    ASA0896976
Policy Period:     10/22/14-10/22/15

_

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material with permission of American Association of Insurance Services, Inc.

**Employer's Liability Limits:**          Combined Single Limit; Or          $N/A
                                          Bodily Injury by Accident-Each Accident   $500,000
                                          Bodily Injury by Disease-Policy Limit     $500,000
                                          Bodily Injury by Disease-Each Employee    $500,000

Insurer:          Liberty Mutual Insurance Company
Policy Number:    WCCZ91456776014
Policy Period:    04/21/14-04/21/15

---

_

**Watercraft Liability Limits:**          Combined Single Limit; Or          $N/A
                                          Bodily Injury-Each Person          $N/A
                                          Bodily Injury-Each Accident        $N/A
                                          Property Damage-Each Accident      $N/A

Insurer:          N/A
Policy Number:    N/A
Policy Period:    N/A

---

_

**Liquor Liability Limits:**          Each Common Cause          $N/A
                                      Aggregate                  $N/A

____  Occurrence Form
____  Claims-Made Form

Retroactive Date:    N/A
Insurer:             N/A
Policy Number:       N/A
Policy Period:       N/A

---

_

**Miscellaneous Liability:**          Each Occurrence          $N/A
Type: N/A                             Aggregate                $N/A
        (Describe)

____  Occurrence Form
____  Claims-Made Form

Retroactive Date:    N/A
Insurer:             N/A
Policy Number:       N/A
Policy Period:       N/A

---

_

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material with permission of American Association of Insurance Services, Inc.

**Miscellaneous Liability:**          Each Occurrence          $N/A
Type: N/A                            Aggregate                $N/A
    (Describe)

\_\_\_\_   Occurrence Form
\_\_\_\_   Claims-Made Form

Retroactive Date:       N/A
Insurer:                N/A
Policy Number:          N/A
Policy Period:          N/A

---

**Miscellaneous Liability:**          Each Occurrence          $N/A
Type: N/A                            Aggregate                $N/A
    (Describe)

\_\_\_\_   Occurrence Form
\_\_\_\_   Claims-Made Form

Retroactive Date:       N/A
Insurer:                N/A
Policy Number:          N/A
Policy Period:          N/A

---

**Miscellaneous Liability:**          Each Occurrence          $N/A
Type: N/A                            Aggregate                $N/A
    (Describe)

\_\_\_\_   Occurrence Form
\_\_\_\_   Claims-Made Form

Retroactive Date:       N/A
Insurer:                N/A
Policy Number:          N/A
Policy Period:          N/A

---

**Forms and Endorsements That Apply To This Policy:**  (Title, Form Number, and Edition)

---

By: _Anthony L. Witt_____
     (Authorized Representative)

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
Includes copyrighted material with permission of American Association of Insurance Services, Inc.

# IN WITNESS

## GREENWICH INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-0636
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Seraina Maag
President

Toni Ann Perkins
Secretary

IL MP 9104 0211 GIC
©2011 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

# FORMS SCHEDULE

**POLICY NUMBER: ASX0896975**

**POLICY PERIOD: 10/22/2014-10/22/2015**

**NAMED INSURED: US All Star Federation dba IASF**

| Name | Description |
|------|-------------|
| PNC W01(06/13) | Fraud Warning Notice |
| PNC W02(05/05) | Privacy Policy |
| PNC W05(10/10) | U.S Treasury Department's Office of Foreign Assets Control ("OFAC") |
| PNI N01(05/11) | Indiana - Notice |
| PNT N01(05/11) | Tennessee Notice (Complaint) |
| GXA U001(11/13) | Commercial Excess/Umbrella Liability Certificate Holder Declarations |
| IL MP9104XLGEN(02/11) | In Witness Endorsement |
| XAI 300(10/06) | Forms Schedule |
| CU 0001(09/10) | Commercial Excess/Umbrella Liability Coverage |
| CU 0115(07/13) | Amendatory Endorsement - Indiana |
| CU 0144(09/10) | Amendatory Endorsement - Tennessee |
| CU 0730(09/10) | EXCLUSION - UMBRELLA LIABILITY COVERAGE U |
| CU 1301(09/10) | Certified Terrorism Loss |
| GXA U404(11/13) | Purchasing Group Conversion Endorsement |

**Information Notices**
Included above

**ASX0896975AAIS**
**CU 0001 09 10**
**Page 1 of 32**

**THIS IS A LEGAL CONTRACT**
**-- PLEASE READ THIS CAREFULLY --**

# COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGE

## (THIS POLICY MAY INCLUDE CLAIMS-MADE COVERAGE)

The following Table of Contents shows how this policy is organized. It will help "you" locate particular sections of this form.

### TABLE OF CONTENTS

**Page**

Agreement ............................................................................... 1

Definitions ............................................................................. 2

Commercial Excess/Umbrella Liability Coverages ............................... 9

Coverage E -- Excess Liability .................................................... 9
    Insuring Agreement .............................................................. 9
    Exclusions ....................................................................... 13

Coverage U -- Umbrella Liability ................................................. 17
    Insuring Agreement ............................................................. 17
    Exclusions ....................................................................... 18

Supplemental Payments ............................................................. 24

What Must Be Done In Case Of Loss ............................................... 25

How Much We Pay .................................................................... 26

Conditions .......................................................................... 27

Nuclear Energy Liability Exclusion ............................................... 31

A state-specific amendatory endorsement applies to this policy. Other endorsements and schedules may also apply. They are identified on the "declarations".

Refer to the Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks.

## AGREEMENT

Subject to all the "terms" that apply, and in return for "your" payment of the required premium, "we" provide the coverages described in this policy.

Copyright, American Association of Insurance Services, Inc., 2010

## DEFINITIONS

1. "You" and "your" --

   a. "You" and "your" mean the person, persons, entity, or organization named as the insured on the "declarations".

   b. Except with respect to any applicable "terms" of this policy that address cancellation, nonrenewal, renewal, or premium, "you" and "your" also include any organization (other than a joint venture, partnership, or limited liability company) newly acquired or formed by the person, persons, entity, or organization named as the insured on the "declarations" and over which such person, persons, entity, or organization maintains ownership or a majority interest.

      However, "you" and "your" do not include any such organization:

      1) if there is other similar insurance available to it;
      2) after 90 days immediately following the acquisition or formation of the organization or the end of the policy period, whichever is earlier;
      3) with respect to "bodily injury" or "property damage" that occurred prior to the acquisition or formation of the organization; or
      4) with respect to "personal and advertising injury" arising out of an offense committed prior to the acquisition or formation of the organization.

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Advertisement" means a public notice or announcement, including but not limited to one found in electronic communication or on the Internet, offering "your" goods, products, or services:

   a. for sale, rent, lease, or other purpose to potential buyers, clients, customers, or patrons; or

   b. for promotion to and consideration by potential supporters.

   With respect to "advertisements" that appear on websites, only that part of a website that offers "your" goods, products, or services:

   a. for sale, rent, lease, or other purpose to potential buyers, clients, customers, or patrons; or

   b. for promotion to and consideration by potential supporters;

   is considered an "advertisement".

4. "Auto" means:

   a. a land motor vehicle, a trailer, or a semi-trailer which is designed for travel on public roads, including attached machinery and equipment; or

   b. any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

5. "Bodily injury" means bodily harm, sickness, or disease sustained by a person. "Bodily injury" includes death that results at any time from bodily harm, sickness, or disease.

   However, "bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from physical injury, sickness, or disease.

Copyright, American Association of Insurance Services, Inc., 2010

6. "Claims-made" means liability insurance coverage provisions that apply to a claim for injury or damage if:

   a. the claim is first made against an "insured" during the policy period or an extended reporting period; and

   b. the injury or damage occurs on or after the retroactive date shown on the declarations of the "claims-made" policy and prior to the termination of the policy period of that insurance.

7. "Coverage territory" --

   a. Under Coverage E -- Excess Liability, "coverage territory" means those countries, territories, possessions, international waters, airspace, and other parts of the world that fall within the coverage territory recognized by the applicable "underlying insurance".

   b. Under Coverage U -- Umbrella Liability, "coverage territory" means the world except for any foreign country, nation, or jurisdiction upon which the United States of America has imposed an embargo or other economic sanctions.

8. "Covered contract" --

   a. "Covered contract" means:

     1) a lease of premises;
     2) an easement or license agreement.

     However, this does not include an agreement in connection with any construction or demolition operation within 50 feet of a railroad;

     3) a responsibility to indemnify a municipality if required by an ordinance.

     However, this does not apply in connection with work done for the municipality;

     4) a sidetrack agreement;
     5) an elevator maintenance agreement; or

     6) any part of any other contract or agreement relating to the conduct of "your" business (including an indemnification of a municipality in connection with work done for the municipality) under which "you" assume the tort liability of another person or organization to pay "damages" because of "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   b. However, "covered contract" does not include that part of any contract or agreement:

     1) that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass, or crossing;
     2) that indemnifies any person or organization for damage by fire to premises rented or loaned to "you";
     3) that indemnifies an architect, engineer, or surveyor for injury or damage arising out of:

       a) preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or
       b) giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

     4) under which the "insured", if an architect, engineer, or surveyor, assumes liability for injury or damage arising out of the "insured's" rendering or failing to render professional services, including those listed in 3)a) above, and supervisory, inspection, or engineering services.

Copyright, American Association of Insurance Services, Inc., 2010

9. "Damages" means compensation in the form of money for a person or organization who claims to have suffered an injury.

10. "Data records" means files, documents, and information in an electronic format that are stored on instruments used with computer hardware, networks, or other computer programs and applications, including those used with electronically controlled equipment.

11. "Declarations" are all pages labeled "declarations", supplemental declarations, or schedules, which pertain to this policy.

12. "Designated insured" means:

 a. all individuals listed in b.1), b.2), b.3), b.4), and b.5) of the definition of "insured"; and

 b. any "employee" who is authorized to give or receive notice of an "occurrence" or a claim.

13. "Employee" includes a "leased worker".

 However, "employee" does not include a "temporary worker".

14. "Executive officer" means a person holding any of the officer positions created by "your" charter, constitution, by-laws, or any other similar governing document.

15. "Impaired property" means tangible property other than "products" or "your work":

 a. that is less useful or no longer useable because:

 1) it includes "products" or "your work" that is, or is believed to be, deficient or dangerous; or
 2) "you" failed to carry out the terms of a contract or agreement; and

 b. which can be restored to use by:

 1) the repair, replacement, adjustment, or removal of "products" or "your work"; or
 2) "your" fulfilling the terms of the contract or agreement.

16. "Indemnitee" means a person or organization for whom an "insured" has assumed liability for "damages" due to "bodily injury" or "property damage" under a "covered contract".

17. "Insured" --

 a. Under Coverage E -- Excess Liability, "insured" means:

 1) "you"; and
 2) persons or organizations included as "insureds" or additional insureds in "underlying insurance".

 However, such persons or organizations are "insureds" under the "terms" of this policy only to the extent that they are covered by "underlying insurance".

 b. Under Coverage U -- Umbrella Liability, "insured" means:

 1) "you" and "your" spouse, but only with respect to the conduct of a business of which "you" are the sole owner, if "you" are shown on the "declarations" as an individual;
 2) "you" and "your" partners or members and their spouses, but only with respect to the conduct of "your" business, if "you" are shown on the "declarations" as a partnership or joint venture;
 3) "you" and "your" members, but only with respect to the conduct of "your" business, if "you" are shown on the "declarations" as a limited liability company. "Your" managers are also "insureds", but only with respect to their duties as managers;
 4) "you" and "your" trustees, but only while acting within the scope of their duties as trustees, if "you" are shown on the "declarations" as a trust; or

Copyright, American Association of Insurance Services, Inc., 2010

5) "you" and "your" "executive officers" and directors, but only while acting within the scope of their duties as "executive officers" or directors, if "you" are shown on the "declarations" as an organization other than a partnership, joint venture, or limited liability company. "Insured" also includes "your" stockholders, but only for their liability as stockholders.

c. Under Coverage U, "insured" also means:

1) any person or organization, except "your" "employee" or "volunteer worker", while acting as "your" real estate manager;

2) if "you" die during the policy period, "your" legal representative while acting within the scope of such duties, or a person or organization who has temporary custody of "your" property with respect to liability arising out of the maintenance or use of that property until "your" legal representative is appointed. "Your" legal representative has all of "your" rights and duties under this coverage; and

3) "your" "employees" for acts within the scope of their employment by "you", and "your" "employees" and "volunteer workers" while in the course of performing duties related to the conduct of "your" business.

However, this does not include "your" managers if "you" are a limited liability company or "your" "executive officers" if "you" are an organization other than a partnership, joint venture, or limited liability company.

None of these "employees" or "volunteer workers" are "insureds" for:

a) "bodily injury" or "personal and advertising injury":

(1) to "you", to "your" partners or members (if "you" are a partnership or joint venture), to "your" members (if "you" are a limited liability company), to fellow "employees" while in the course of employment or while performing duties related to the conduct of "your" business, or to "your" other "volunteer workers" while performing duties related to the conduct of "your" business;

(2) to a spouse, child, parent, brother, or sister of that injured fellow "employee" or "volunteer worker" as described in a)(1) above; or

(3) for which there is an obligation to fully or partially reimburse a third party for "damages" arising out of injury described in a)(1) or a)(2) above; or

b) "property damage" to property owned by; occupied by; used by; rented to; loaned to; in the care, custody, or control of; or over which physical control is being applied by "you", "your" "employees", "your" "volunteer workers", any of "your" partners or members (if "you" are a joint venture or a partnership), or any of "your" members (if "you" are a limited liability company).

No person or organization is an "insured" with respect to the conduct of a current or past partnership, joint venture, or limited liability company that is not named on the "declarations" as an "insured".

18. "Leased worker" means a person whom "you" lease from a labor leasing firm under a contract or agreement to perform duties related to the conduct of "your" business.

Copyright, American Association of Insurance Services, Inc., 2010

However, "leased worker" does not include a "temporary worker".

19. "Limit" means the amount of coverage that applies.

20. "Loading or unloading" --

a. "Loading or unloading" means the handling of property:

1) starting after it is removed from the point where it has been accepted for transit by "auto", aircraft, or watercraft;
2) continuing while it is in or on such vehicle; and
3) ending when it has been removed from the vehicle to the point of final delivery.

b. "Loading or unloading" includes the movement of property by a mechanical device, but only if the mechanical device is:

1) a hand truck; or
2) attached to the transporting vehicle.

21. "Mobile equipment" --

a. "Mobile equipment" means land vehicles, including attached machinery or equipment, that meet one or more of the following criteria:

1) those which are used only on premises (including adjoining ways) owned by or rented to "you";
2) those which are designed primarily for use off public roads, including bulldozers, farm machinery, and forklifts;
3) those which travel on crawler treads;
4) those, whether self-propelled or not, designed or used primarily to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:

a) power cranes, shovels, loaders, diggers, or drills; and

b) graders, scrapers, rollers, and other road construction or repair equipment;

5) those not described in a.1), a.2), a.3), or a.4) above which are not self-propelled, but are used primarily to afford mobility to the following types of permanently attached equipment:

a) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment);
b) geophysical exploration, lighting, and well servicing equipment; and
c) cherry pickers and similar devices used to raise and lower workers; or

6) those not described in a.1), a.2), a.3), or a.4) above which are primarily maintained for other than the purpose of transporting persons or cargo.

b. However, "mobile equipment" does not include self-propelled vehicles with the following types of permanently attached equipment:

1) equipment designed primarily for snow removal, street cleaning, or road maintenance other than road construction or resurfacing;
2) cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers;
3) air compressors, pumps, and generators (this includes spraying, welding, and building cleaning equipment); or
4) geophysical exploration, lighting, and well servicing equipment.

The vehicles described in b. above are considered "autos".

Copyright, American Association of Insurance Services, Inc., 2010

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

22. "Occurrence" means an accident and includes continuous or repeated exposures to similar conditions.

23. "Personal and advertising injury" means injury, including "bodily injury" that is a consequence thereof, arising out of one or more of the following offenses:

a. oral or written publication, including electronic publication, of material that:

   1) slanders or libels a person or organization;
   2) disparages a person's or organization's goods, products, or services; or
   3) violates a person's right of privacy;

b. false arrest, detention, or imprisonment;

c. malicious prosecution;

d. misappropriation of advertising ideas in "your" "advertisement";

e. infringement of the copyright, slogan, or trade-dress of another in "your" "advertisement"; or

f. wrongful entry into, wrongful eviction from, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies. This offense must be committed by or on behalf of the owner, landlord, or lessor of the room, dwelling, or premises.

24. "Pollutant" means:

a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, reconditioned, or disposed of; or

b. electrical, magnetic, or electromagnetic particles and fields, whether visible or invisible, and sound.

25. "Products" --

a. "Products" means goods or products manufactured, sold, handled, distributed, or disposed of by "you", others trading under "your" name, or a person or organization whose business assets "you" have acquired.

b. "Products" includes:

   1) warranties or representations made at any time regarding the quality, fitness, durability, performance, or use of "products";
   2) containers (other than vehicles), materials, parts, or equipment furnished in connection with such "products"; and
   3) providing or failing to provide warnings or instructions.

c. However, "products" does not include:

   1) vending machines or other property that is rented to or placed for the use of others, but not sold; or
   2) real property.

26. "Products/completed work hazard" --

a. "Products hazard" includes "bodily injury" or "property damage" occurring away from premises "you" own or rent and arising out of "products" after physical possession of the "products" has been relinquished to others.

Copyright, American Association of Insurance Services, Inc., 2010

b.  "Completed work hazard" includes "bodily injury" or "property damage" occurring away from premises "you" own or rent and arising out of "your work".

However, it does not include work that has not been completed or that has not been abandoned.

"Your work" is deemed completed at the earliest of the following times:

1)  when all work specified in "your" contract has been completed;
2)  when all work to be done at a job site has been completed if "your" contract includes work at more than one job site; or
3)  when that part of the work at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work which requires further service, maintenance, correction, repair, or replacement because of defect or deficiency, but which is otherwise complete, will be deemed completed.

c.  However, neither the "products hazard" nor the "completed work hazard" includes "bodily injury" or "property damage" arising out of:

1)  the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned by or operated by "you", and that condition was created by any "insured's" "loading or unloading" of the vehicle;
2)  the presence of tools, uninstalled equipment, or abandoned or unused materials; or
3)  "products" or operations for which the classification on the declarations of a policy of "underlying insurance" specifies "including Products/Completed Work".

27.  "Property damage" --

a.  "Property damage" means:

1)  physical injury to or destruction of tangible property, including loss of use of that property. Loss of use is deemed to occur at the time of the physical injury that caused it; or
2)  the loss of use of tangible property that has not been physically damaged. Loss of use is deemed to occur at the time of the "occurrence" that caused it.

Except with respect to coverage provided for "autos" under Coverage E, "data records" are not tangible property.

b.  With respect to the ownership, maintenance, or use of "autos" covered under Coverage E, "property damage" also includes any loss, cost, or expense arising out of any:

1)  request, demand, order, statute, or regulation requiring that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or
2)  claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "pollutants".

28.  "Recreational vehicle" means a golf cart, snowmobile, or any other land motor vehicle designed for off-road recreational use.

29.  "Self-insured retention" means the dollar amount shown on the "declarations" that will be first paid by the "insured" before this insurance becomes applicable.

Copyright, American Association of Insurance Services, Inc., 2010

30. "Silica" means silicon dioxide ($SiO_2$) including:

    a. crystalline silica, silica dust, industrial sand, silica sand, quartz, quartz dust, cristobalite, tridymite, tripoli, and silica mixed with other compounds;

    b. amorphous silica and silica gel; and

    c. silica dust mixed with other dust particles.

31. "Suit" means a civil proceeding or an administrative proceeding alleging "damages" for "bodily injury", "property damage", "personal and advertising injury", or any other injury or damage to which this policy applies. "Suit" includes any alternative dispute resolution proceeding or arbitration proceeding to which:

    a. any "insured" must submit in compliance with a law or regulation; or

    b. any "insured" submits with "our" consent or the consent of the "underlying insurer".

32. "Temporary worker" means a person who is furnished to "you":

    a. as a temporary substitute for a permanent "employee" who is on a leave of absence; or

    b. to meet seasonal or short-term workloads.

33. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply to this Commercial Excess/Umbrella Liability Coverage.

34. "Underlying insurance" means the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance on the "declarations" for the "limits" and policy periods indicated. This includes any policies issued to replace those policies during the term of this insurance that:

    a. provide at least the same "limits"; and

    b. provide the same hazards insured against, except as modified by general program revisions or as agreed to by "us" in writing.

35. "Underlying insurer" means any insurer that provides a policy of "underlying insurance".

36. "Volunteer worker" means a person who is not "your" "employee", donates his or her time or services, and who:

    a. acts at "your" direction and within the scope of duties "you" determine; and

    b. is not paid a fee, salary, or other compensation for his or her time or services, other than reimbursement of out-of-pocket expenses.

However, "volunteer worker" does not include a "leased worker" or a "temporary worker".

37. "Your work" --

    a. "Your work" means:

        1) work or operations performed by "you" or on "your" behalf; and
        2) materials, parts, and equipment supplied for such work or operations.

    b. "Your work" includes:

        1) written warranties or representations made at any time regarding quality, fitness, durability, performance, or use of "your work"; and
        2) providing or failing to provide warnings or instructions.

# COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGES

## COVERAGE E -- EXCESS LIABILITY

1. Insuring Agreement

Copyright, American Association of Insurance Services, Inc., 2010

a.  "We" will pay on behalf of the "insured"
those sums in excess of "underlying
insurance" for which an "insured"
becomes legally obligated to pay as
"damages" to which this insurance
applies.

"We" have the right and duty to defend
the "insured" against a "suit" seeking
"damages" which may be covered under
Coverage E -- Excess Liability, when the
"limits" of "underlying insurance" are
exhausted by the payment of claims,
settlements, judgments, and/or defense
costs if the applicable "limit" of
"underlying insurance" is reduced by the
payment of defense costs.

If "we" have no duty to defend, "we" have
the right to defend or the right to
participate with the "insured" or any
"underlying insurer" in the defense,
investigation, and settlement of "suits"
against the "insured" seeking "damages"
to which this insurance may apply.
However, "we" have no duty to defend
the "insured" against a "suit" seeking
"damages" to which this policy does not
apply.

At "our" option, "we" may investigate any
"occurrence" or offense to which this
insurance applies and settle the resulting
claims or "suits" for which "we" have the
duty to defend.

b.  The amount "we" will pay for "damages"
and/or defense costs is limited as
described under How Much We Pay.

c.  "We" do not have to provide a defense
after "we" have paid an amount equal to
the applicable "limit" as the result of:

1)  judgments or written settlements
agreed to by "us"; and/or
2)  defense costs, but only if the
applicable "limit" of "underlying
insurance" is reduced by the
payment of defense costs.

"We" have no other liability or obligation to
pay sums or to provide assistance or support
unless specifically provided for under
Supplemental Payments.

d.  This insurance applies only to:

1)  "bodily injury" or "property damage"
that:

a)  is caused by an "occurrence"
that takes place in the "coverage
territory";
b)  occurs during the policy period of
this policy; and
c)  is covered by "underlying
insurance" or that would have
been covered by "underlying
insurance" but for the exhaustion
of "underlying insurance" "limits"
by the payment of claims,
settlements, judgments, and/or
defense costs;

2)  "personal and advertising injury" that:

a)  arises out of an offense
committed in the course of "your"
business if the offense is
committed:

(1)  within the "coverage
territory"; and
(2)  during the policy period of
this policy; and

b)  is covered by "underlying
insurance" or that would have
been covered by "underlying
insurance" but for the exhaustion
of "underlying insurance" "limits"
by the payment of claims,
settlements, or judgments; and

3)  any other injury or damage that:

a)  arises out of a negligent act,
error, omission, injury, event,
incident, or offense; and

Copyright, American Association of Insurance Services, Inc., 2010

b) is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

subject to the following additional requirements:

a) if the "underlying insurance" applies on other than a "claims-made" basis, the negligent act, error, omission, injury, event, incident, or offense must take place:

(1) within the "coverage territory"; and
(2) during the policy period of this policy;

b) if the "underlying insurance" applies on a "claims-made" basis, the negligent act, error, omission, injury, event, incident, or offense must take place:

(1) within the "coverage territory"; and
(2) on or after the Retroactive Date, if any, shown on the "declarations" of this policy and prior to the end of the policy period of this policy; and

c) with respect to "underlying insurance" that applies on a "claims-made" basis, the claim must be first made against an "insured" within the policy period of this policy or within an Extended Reporting Period provided by this policy as described under 1.e. below. A claim will be deemed to have been first made when one of the following occurs:

(1) notice of such claim is received and recorded by an "insured", by an "underlying insurer", or by "us" if the "limits" of "underlying insurance" have been exhausted, whichever occurs first, if the "underlying insurance" is written on a "claims-made" and recorded basis; or
(2) notice of such claim is received by any "insured", and is reported to "us" in writing, if the "underlying insurance" is written on any other "claims-made" basis.

All claims for "damages" because of injury to the same person or organization will be treated as if they were made at the time the first claim is made against any "insured", regardless of the number of claims submitted.

e. Extended Reporting Periods

1) If "underlying insurance" written on a "claims-made" basis, as described under 1.d.3)b) and 1.d.3)c) above, provides one or more Extended Reporting Periods without additional premium charge, then Coverage E -- Excess Liability will also provide corresponding Extended Reporting Periods that are subject to the same terms as such Extended Reporting Periods of the "underlying insurance". The coverage provided by the Extended Reporting Periods of Coverage E -- Excess Liability will be excess over the coverage provided by such extended reporting periods of the "underlying insurance".

Copyright, American Association of Insurance Services, Inc., 2010

If "underlying insurance" requires a written request from "you" for an Extended Reporting Period to be provided by endorsement and for an additional charge, then for a corresponding Extended Reporting Period to apply under this policy, "we" must also receive a written request from "you" within the same period of time as specified by "underlying insurance", and "you" must pay any additional premium to "us" when due.

2) If "underlying insurance" written on a "claims-made" basis, as described under 1.d.3)b) and 1.d.3)c) above, does not provide an Extended Reporting Period, "you" may purchase an Extended Reporting Period of Coverage E -- Excess Liability if:

a) "you" elect to cancel or not renew this Commercial Excess/Umbrella Liability Coverage;

b) "we" cancel this Commercial Excess/Umbrella Liability Coverage for any reason other than "your" nonpayment of premium;

c) "we" elect not to renew this Commercial Excess/Umbrella Liability Coverage;

d) "we" renew or replace this Commercial Excess/Umbrella Liability Coverage with other excess coverage that:

(1) provides "claims-made" coverage; and

(2) has a Retroactive Date later than the one shown on the "declarations" of this Commercial Excess/Umbrella Liability policy; or

e) "we" renew or replace this Commercial Excess/Umbrella Liability Coverage with other excess insurance that does not provide coverage on a "claims-made" basis.

3) The following additional provisions apply with respect to any Extended Reporting Periods provided under Coverage E -- Excess Liability:

a) The Extended Reporting Period applies to claims for injury that take place on or after the Retroactive Date, if any, shown on the "declarations" of this policy and before the end of this policy period.

b) The Extended Reporting Period of this policy does not change the policy period of this policy or alter the scope of coverage.

c) Extended Reporting Periods may not be canceled once in effect.

d) Except with respect to an Extended Reporting Period provided by endorsement for an additional premium charge, Extended Reporting Periods will not reinstate or increase the "limits" of insurance applicable to any claim to which this Commercial Excess/Umbrella Liability Coverage applies.

4) The Extended Reporting Period described under 1.e.2) above is available by endorsement, for an additional charge. The charge for the Extended Reporting Period will not exceed 200% of the annual premium charge for the "claims-made" coverage provided by this Commercial Excess/Umbrella Liability Coverage. In order to purchase the Extended Reporting Period, "you" must send "us" a written request for this coverage option not later than 30 days after the end of the policy period, or not later than 30 days after the effective date of cancellation, whichever comes first.

Copyright, American Association of Insurance Services, Inc., 2010

The Extended Reporting Period will not go into effect unless the additional premium is paid by the due date. Once the additional premium due for the Extended Reporting Period has been paid, the premium will be considered to be fully earned.

5) The Extended Reporting Period described under 1.e.2) above starts at the end of the policy period and lasts for three years, unless a different number of years is indicated on the Extended Reporting Period Endorsement Schedule. It applies only to claims subject to the following requirements:

a) the act, error, omission, injury, event, incident, or offense took place in the "coverage territory";

b) the act, error, omission, injury, event, incident, or offense began on or after any Retroactive Date shown in the "declarations" and before the end of the policy period that applies to this coverage; and

c) a claim is first made against an "insured" during the Extended Reporting Period.

6) The Extended Reporting Period described under 1.e.2) above is subject to a separate aggregate "limit" of insurance, equal in amount to the General Aggregate Limit dollar amount shown in the "declarations". The Extended Reporting Period Aggregate Limit applies to the entire term of the Extended Reporting Period, regardless of the number of years the Extended Reporting Period is in effect.

f. "Damages" due to "bodily injury" include "damages" claimed by any person or organization for care, loss of services, or death that may result at any time from such "bodily injury".

g. If a contract or agreement requires that coverage be provided to an "insured" who is an additional insured covered by "underlying insurance", the most "we" will pay on behalf of the additional insured is the "limit" required by the contract or agreement, less any amounts payable by any "underlying insurance".

h. When injury or damage arising out of an exposure covered by "underlying insurance" is subject to a separate "limit" under the terms of that coverage, this Commercial Excess/Umbrella Liability Coverage will apply to injury or damage arising out of that exposure only if the separate "limit" is shown in the Schedule of Underlying Insurance.

i. The terms, definitions, conditions, and exclusions of the policies of "underlying insurance" govern the coverage provided under Coverage E -- Excess Liability, except for provisions pertaining to premium, right of recovery, cancellation or nonrenewal, insurance under more than one policy, defense, "limits", any agreement to renew, and the "terms" of this coverage.

2. Exclusions

"We" do not pay for:

a. injury or damage that is not covered by "underlying insurance" for any reason other than exhaustion of its "limit".

b. a claim based on violation of the responsibilities, obligations, or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974 as amended and any similar federal, state, or local laws, statutes, or regulations.

c. "bodily injury" if benefits are provided or are required to be provided by the "insured" under a workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law.

Copyright, American Association of Insurance Services, Inc., 2010

d.  "bodily injury" sustained by an "employee" of the "insured" arising out of and in the course of employment as a master or member of the crew of any vessel.

e.  liability imposed by automobile no-fault laws or any similar laws; uninsured motorist or underinsured motorist laws; first party physical damage coverage; personal injury protection; or automobile medical payments coverage.

f.  "bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, or emission of "pollutants".

However, this exclusion does not apply to "bodily injury" or "property damage" that is covered by "underlying insurance" or that would have been covered but for the exhaustion of the "limits" of the "underlying insurance". The coverage provided by this policy will be subject to the provisions, exclusions, and limitations of the "underlying insurance".

g.  "personal and advertising injury" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, or emission of "pollutants" at any time.

h.  any loss, cost, or expense arising out of any:

1)  request, demand, order, statute, or regulation requiring that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or
2)  claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "pollutants".

However, this exclusion does not apply to any loss, cost, or expense that is covered by "underlying insurance" or that would have been covered but for the exhaustion of the "limits" of the "underlying insurance". The coverage provided by this policy will be subject to the provisions, exclusions, and limitations of the "underlying insurance".

i.  "bodily injury" or "property damage" arising out of the use of "autos", "mobile equipment", watercraft, aircraft, or "recreational vehicles" in, or in the practice for, or the preparation for, prearranged professional or organized racing, speed, pulling or pushing, demolition, or stunt activities or contests.

j.  "bodily injury", "property damage", "personal and advertising injury", or any other injury that is covered by "underlying insurance", including on a "claims-made" basis, arising directly or indirectly out of violations of or alleged violations of:

1)  the Telephone Consumer Protection Act (TCPA), including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;
2)  the CAN-SPAM Act of 2003, including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;
3)  the Fair Credit Reporting Act (FCRA), including any amendments thereto, such as the Fair and Accurate Credit Transaction Act (FACTA), and any similar federal, state, or local laws, ordinances, statutes, or regulations; or
4)  any other federal, state, or local law, regulation, statute, or ordinance that restricts, prohibits, or otherwise pertains to the collecting, communicating, recording, printing, transmitting, sending, disposal, or distribution of material or information.

Copyright, American Association of Insurance Services, Inc., 2010

k.  "bodily injury" or "personal and advertising injury":

1)  to a person arising out of any:

a)  refusal to employ that person;
b)  termination of employment of that person; or
c)  coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, malicious prosecution, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions directed towards that person; or

2)  to a spouse, child, parent, brother, or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person as a result of employment-related practices described in 1)a), 1)b), or 1)c) above.

This exclusion applies whether the injury as a result of 1)a), 1)b), or 1)c) above occurs before, during, or after employment of that person.

This exclusion applies where the "insured" is liable either as an employer or in any other capacity or there is an obligation to fully or partially reimburse a third party for "damages" arising out of 1)a), 1)b), 1)c), or 2) above.

l.  "bodily injury", "property damage", or "personal and advertising injury" caused directly or indirectly by the following:

1)  war, including undeclared or civil war;
2)  warlike action by a military force, including action that is hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
3)  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

m.  any loss, cost, expense, or "damages" arising out of damage to, corruption of, loss of use or function of, or inability to access, change, or manipulate "data records".

However, this exclusion does not apply if such loss, cost, expense, or "damages" is covered by "underlying insurance" or would have been covered but for the exhaustion of the "limits" of the "underlying insurance". The coverage provided by this policy will be subject to the provisions, exclusions, and limitations of the "underlying insurance".

n.  any of the following:

1)  "bodily injury" arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of lead;
2)  "property damage" arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of lead;
3)  "personal and advertising injury" arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of lead;
4)  any other injury that is covered by "underlying insurance", including on a "claims-made" basis, arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of lead;
5)  any loss, cost, or expense arising out of any request, demand, order, statute, or regulation that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead; or

Copyright, American Association of Insurance Services, Inc., 2010

6) any loss, cost, or expense arising out of any claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of lead.

o. any of the following:

1) "bodily injury" arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of "silica";

2) "property damage" arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of "silica";

3) "personal and advertising injury" arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of "silica";

4) any other injury that is covered by "underlying insurance", including on a "claims-made" basis, arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of "silica";

5) any loss, cost, or expense arising out of any request, demand, order, statute, or regulation that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "silica"; or

6) any loss, cost, or expense arising out of any claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "silica".

p. any of the following:

1) "bodily injury" arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of asbestos, asbestos products, asbestos fibers, or asbestos dust;

2) "property damage" arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust;

3) "personal and advertising injury" arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust;

4) any other injury that is covered by "underlying insurance", including on a "claims-made" basis, arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust;

5) any loss, cost, or expense arising out of any request, demand, order, statute, or regulation that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of asbestos, asbestos products, asbestos fibers, or asbestos dust; or

6) any loss, cost, or expense arising out of any claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of asbestos, asbestos products, asbestos fibers, or asbestos dust.

q. medical payments coverage or medical expenses that are provided regardless of fault, whether or not covered by "underlying insurance".

Copyright, American Association of Insurance Services, Inc., 2010

## COVERAGE U -- UMBRELLA LIABILITY

1. Insuring Agreement

   a. "We" will pay on behalf of the "insured" those sums in excess of:

      1) the "self-insured retention"; or
      2) other insurance, excluding insurance specifically purchased by the "insured" to apply in excess of the insurance afforded by this policy, which is available to the "insured" and provides coverage with respect to injury or damage to which this policy applies;

      whichever is applicable, for which an "insured" becomes legally obligated to pay as "damages" because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.

      "We" have the right and duty to defend the "insured" against a "suit" seeking "damages" for such "bodily injury", "property damage", or "personal and advertising injury" which may be covered under Coverage U -- Umbrella Liability.

      If "we" have no duty to defend, "we" have the right to defend or the right to participate with the "insured" in the defense, investigation, and settlement of "suits" against the "insured" seeking "damages" to which this insurance may apply.

      However, "we" have no duty to defend the "insured" against a "suit" seeking "damages" to which this policy does not apply.

      At "our" option, "we" may investigate any "occurrence" or offense to which this insurance applies and settle the resulting claims or "suits" which "we" have the duty to defend.

   b. The amount "we" will pay for "damages" is limited as described under How Much We Pay.

   c. "We" do not have to provide a defense after "we" have paid an amount equal to the applicable "limit" as the result of:

      1) judgments; or
      2) written settlements agreed to by "us".

   "We" have no other liability or obligation to pay sums or to provide assistance or support unless specifically provided for under Supplemental Payments.

   d. This insurance applies only to "bodily injury" or "property damage" that:

      1) is caused by an "occurrence" that takes place in the "coverage territory";
      2) occurs during the policy period of this policy; and
      3) is not a continuation of, resumption of, or change in "bodily injury" or "property damage" that was known by a "designated insured" prior to the inception date of the policy period.

         If a "designated insured" knew, as stated under the Knowledge Of Bodily Injury Or Property Damage Condition, prior to the inception date of this policy period, that "bodily injury" or "property damage" had occurred, any continuation of, resumption of, or change in such "bodily injury" or "property damage" will be deemed to have been known by the "designated insured" prior to the inception date of this policy period.

Copyright, American Association of Insurance Services, Inc., 2010

"Bodily injury" or "property damage" that occurs during this policy period and which is not a continuation of, resumption of, or change in "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge Of Bodily Injury Or Property Damage Condition, to have occurred prior to the inception date of this policy period, will include any continuation of, resumption of, or change in such "bodily injury" or "property damage" after the end of this policy period.

e. This insurance also applies to "personal and advertising injury" arising out of an offense committed in the course of "your" business, if the offense is committed:

1) within the "coverage territory"; and
2) during the policy period of this policy.

f. "Damages" due to "bodily injury" include "damages" claimed by any person or organization for care, loss of services, or death that may result at any time from such "bodily injury".

g. Coverage U does not apply to claims which are covered under Coverage E or would have been covered except for exhaustion of "underlying insurance" "limits".

2. Exclusions

"We" do not pay for:

a. "bodily injury" or "property damage":

1) that is expected by, directed by, or intended by the "insured"; or
2) which is the result of intentional and malicious acts of the "insured".

However, this exclusion does not apply to "bodily injury" that arises out of the use of reasonable force to protect people or property.

b. "bodily injury" or "property damage" liability which is assumed by the "insured" under a contract or an agreement.

However, this exclusion does not apply to:

1) liability for "damages" that the "insured" would have had in the absence of the contract or agreement; or
2) liability for "damages" due to "bodily injury" or "property damage" assumed in a "covered contract", but only if such "bodily injury" or "property damage" occurs after the contract or agreement has been executed.

Only with respect to liability assumed in a "covered contract", "damages" due to "bodily injury" or "property damage" include reasonable attorney fees and necessary litigation costs incurred by or for an "indemnitee", if:

a) liability to that "indemnitee" for, or for the cost of, that "indemnitee's" defense has also been assumed under the same "covered contract"; and
b) such attorney fees and litigation costs are for the defense of that "indemnitee" against a civil or administrative proceeding, alternative dispute resolution, or arbitration proceeding alleging "damages" to which this insurance applies.

However, "damages" due to "bodily injury" or "property damage" do not include reasonable attorney fees and necessary litigation costs incurred by or for an "indemnitee" when all the requirements set forth under item 4.b. of Supplemental Payments are met.

Copyright, American Association of Insurance Services, Inc., 2010

c.  a claim based on violation of the responsibilities, obligations, or duties imposed on fiduciaries by the Employee Retirement Income Security Act of 1974 as amended and any similar federal, state, or local laws, statutes, or regulations.

d.  "bodily injury" if benefits are provided or are required to be provided by the "insured" under a workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law.

e.  "bodily injury" sustained by an "employee" of the "insured" arising out of and in the course of employment as a master or member of the crew of any vessel.

f.  liability imposed by automobile no-fault laws or any similar laws; uninsured motorist or underinsured motorist laws; first party physical damage coverage; personal injury protection; or automobile medical payments coverage.

g.  "bodily injury", "property damage", or "personal and advertising injury" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, or emission of "pollutants" at any time.

h.  any loss, cost, or expense arising out of any:

    1)  request, demand, order, statute, or regulation that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or
    2)  claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "pollutants".

i.  "bodily injury", "property damage", or "personal and advertising injury" caused directly or indirectly by the following:

    1)  war, including undeclared or civil war;
    2)  warlike action by a military force, including action that is hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
    3)  insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j.  "bodily injury" or "property damage" arising out of the ownership, maintenance, use, occupancy, renting, operation, loaning, entrusting, supervision, or "loading or unloading" of "autos", aircraft, watercraft, "mobile equipment", or "recreational vehicles".

k.  "bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

    1)  causing or contributing to the intoxication of a person;
    2)  the furnishing of alcoholic beverages to a person under the influence of alcohol or under the legal drinking age; or
    3)  a law or regulation relating to the sale, gift, distribution, or use of alcoholic beverages.

    This exclusion applies only if "you" are in the business of manufacturing, distributing, furnishing, selling, or serving alcoholic beverages.

l.  "bodily injury":

    1)  to an "employee" of the "insured" if it arises out of and occurs in the course of employment by the "insured" or while performing duties related to the conduct of the "insured's" business; or

Copyright, American Association of Insurance Services, Inc., 2010

2) to a spouse, child, parent, brother, or sister as a consequence of "bodily injury" to such injured "employee".

This exclusion applies where the "insured" is liable either as an employer or in any other capacity or there is an obligation to fully or partially reimburse a third party for "damages" arising out of l.1) or l.2) above.

However, this exclusion does not apply to liability assumed by the "insured" under a "covered contract".

m. "bodily injury", "property damage", or "personal and advertising injury" arising out of the rendering of or failure to render a professional service.

n. "bodily injury" or "personal and advertising injury":

1) to a person arising out of any:

   a) refusal to employ that person;
   b) termination of employment of that person; or
   c) coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, malicious prosecution, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions directed towards that person; or

2) to a spouse, child, parent, brother, or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person as a result of employment-related practices described in 1)a), 1)b), or 1)c) above.

This exclusion applies whether the injury as a result of 1)a), 1)b), or 1)c) above occurs before, during, or after employment of that person.

This exclusion applies where the "insured" is liable either as an employer or in any other capacity or there is an obligation to fully or partially reimburse a third party for "damages" arising out of 1)a), 1)b), 1)c), or 2) above.

o. "property damage" to property owned by, occupied by, or rented by "you", including any cost or expense incurred by "you" or another person or organization, to repair, retrofit, replace, or maintain such property for any reason, including for the purpose of avoiding injury to a person or damage to another's property.

p. "property damage" to "products" if the damage arises out of the "products" or their parts.

q. "property damage" to that specific part of real property on which work is being performed by:

1) "you"; or
2) a contractor or subcontractor working directly or indirectly on "your" behalf;

if the "property damage" arises out of such work.

However, this exclusion does not apply with respect to liability assumed under a sidetrack agreement.

r. "property damage" to that specific part of any property that must be restored, repaired, or replaced because "your work" that was performed on the property was faulty.

However, this exclusion does not apply to:

1) "property damage" included within the "products/completed work hazard"; or
2) liability assumed under a sidetrack agreement.

Copyright, American Association of Insurance Services, Inc., 2010

s.  "property damage" to personal property in the care, custody, or control of an "insured".

However, this exclusion does not apply with respect to liability assumed under a sidetrack agreement or a written trailer interchange agreement.

t.  "property damage" to property that has not been physically injured or destroyed, or to "impaired property", arising out of:

1) a delay or failure to perform a contract or agreement as specified in its terms by "you" or one acting on "your" behalf; or
2) a defect, deficiency, inadequacy, or unsafe condition in "your work" or "products".

However, this exclusion does not apply to the loss of use of other property resulting from sudden and accidental physical injury or destruction of "your work" or "products" after having been put to its intended use.

u.  "property damage" to property loaned to "you".

However, this exclusion does not apply with respect to liability assumed under a sidetrack agreement or a written trailer interchange agreement.

v.  "property damage" to premises "you" abandon, sell, or give away, if such "property damage" originates from any part of the premises.

However, this exclusion does not apply if the premises are "your work" and were never rented, held for rental, or occupied by "you".

w.  any loss, cost, or expense incurred by "you" or any other person or organization arising out of the loss of use, disposal, withdrawal, recall, inspection, repair, replacement, adjustment, or removal of "your work", "products", or "impaired property". This applies if "your work", "products", or "impaired property" is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, or unsafe condition in such work, "products", or "impaired property".

x.  any loss, cost, expense, or "damages" arising out of damage to, corruption of, loss of use or function of, or inability to access, change, or manipulate "data records".

y.  "property damage" to "your work" if the "property damage" arises out of "your work" or any part of it and is included in the "products/completed work hazard".

However, this exclusion does not apply if damage to the work or the part of the work out of which the damage arises was performed by a subcontractor on "your" behalf.

z.  "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of violations of or alleged violations of:

1) the Telephone Consumer Protection Act (TCPA), including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;
2) the CAN-SPAM Act of 2003, including any amendments thereto, and any similar federal, state, or local laws, ordinances, statutes, or regulations;
3) the Fair Credit Reporting Act (FCRA), including any amendments thereto, such as the Fair and Accurate Credit Transaction Act (FACTA), and any similar federal, state, or local laws, ordinances, statutes, or regulations; or

Copyright, American Association of Insurance Services, Inc., 2010

4)  any other federal, state, or local law,
regulation, statute, or ordinance that
restricts, prohibits, or otherwise
pertains to the collecting,
communicating, recording, printing,
transmitting, sending, disposal, or
distribution of material or information.

aa.  "personal and advertising injury" arising
out of an act committed by or directed by
the "insured" who knew that "personal
and advertising injury" would occur as a
result of the act.

bb.  "personal and advertising injury" arising
out of a criminal act committed by or
directed by the "insured".

cc.  "personal and advertising injury" arising
out of:

1)  oral or written publication of material
done by or at the direction of the
"insured" who knew it was false; or
2)  oral or written publication of material
that took place prior to the beginning
of the policy period.

dd.  "personal and advertising injury" arising
out of breach of contract, other than
using the advertising ideas of another in
"your" "advertisement" under an implied
contract.

ee.  "personal and advertising injury" arising
out of the failure of goods, "products", or
services to conform with quality or
performance as stated in "your"
"advertisement".

ff.  "personal and advertising injury" arising
out of an offense committed by an
"insured" whose business is:

1)  advertising, broadcasting, publishing,
or telecasting;
2)  designing, developing, or
coordinating the content of websites
for others; or
3)  providing Internet access, search,
service, or content capabilities.

However, this exclusion does not apply
to false arrest, detention, or
imprisonment; malicious prosecution;
and wrongful entry into, wrongful eviction
from, or invasion of the right of private
occupancy of a room, dwelling, or
premises that a person occupies and
which is committed by or on behalf of the
owner, landlord, or lessor of the room,
dwelling, or premises.

The placement of advertising, including
frames, borders, or links, on the Internet
is not in and of itself considered being in
the business of advertising,
broadcasting, publishing, or telecasting.

gg.  "personal and advertising injury" arising
out of wrong descriptions of the price of
an "insured's" goods, "products", or
services as stated in "your"
"advertisement".

hh.  "personal and advertising injury" liability
which is assumed by the "insured" under
a contract or an agreement.

However, this exclusion does not apply
to liability that an "insured" would have
had in the absence of the contract or
agreement.

ii.  "personal and advertising injury" arising
out of any violation of intellectual
property rights, including infringement of
trademark, trade-secret, or patent rights
or copyright. With respect to this
exclusion, intellectual property rights do
not include using the advertising ideas of
others in "your" "advertisement".

However, this exclusion does not apply
to a violation or infringement of copyright,
slogan, or trade-dress rights that occur in
"your" "advertisement".

jj.  "personal and advertising injury" arising
out of electronic chat rooms, gripe sites,
social networking sites, blogs, bulletin
boards, or other forums which the
"insured" hosts, owns, or has the control
or authority to manage or update.

Copyright, American Association of Insurance Services, Inc., 2010

kk. "personal and advertising injury" arising out of using, without permission, the name or product of others on "your" website or in "your" e-mail address, domain name, or metatags for the purpose of misleading the potential customers of another.

ll. any of the following:

1) "bodily injury" arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of lead;
2) "property damage" arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of lead;
3) "personal and advertising injury" arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of lead;
4) any loss, cost, or expense arising out of any request, demand, order, statute, or regulation that any "insured" test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead; or
5) any loss, cost, or expense arising out of any claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of lead.

mm. any of the following:

1) "bodily injury" arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of "silica";
2) "property damage" arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of "silica";

3) "personal and advertising injury" arising out of the actual, alleged, or threatened ingestion, inhalation of, absorption of, contact with, existence of, exposure to, or presence of "silica";
4) any loss, cost, or expense arising out of any request, demand, order, statute, or regulation that any "insured" test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "silica" ; or
5) any loss, cost, or expense arising out of any claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "silica".

nn. any of the following:

1) "bodily injury" arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of asbestos, asbestos products, asbestos fibers, or asbestos dust;
2) "property damage" arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust;
3) "personal and advertising injury" arising out of the actual, alleged, or threatened ingestion, inhalation of, absorption of, contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust;
4) any loss, cost, or expense arising out of any request, demand, order, statute, or regulation that any "insured" or others test for, abate, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of asbestos, asbestos products, asbestos fibers, or asbestos dust; or

Copyright, American Association of Insurance Services, Inc., 2010

**AAIS**
**CU 0001 09 10**
**Page 24 of 32**

5) any loss, cost, or expense arising out of any claim or "suit" by or on behalf of any governmental authority relating to testing for, abating, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of asbestos, asbestos products, asbestos fibers, or asbestos dust.

## SUPPLEMENTAL PAYMENTS

1. "We" will pay the following for any claim "we" investigate or settle, or any "suit" "we" defend, if "we" have a duty to defend:

   a. the court costs taxed against the "insured" in the "suit". These costs do not include attorneys' fees or attorneys' expenses;

   b. the expenses incurred by "us";

   c. the necessary and reasonable expenses incurred by the "insured" at "our" request to assist "us" in the defense or investigation of the claim or "suit", including up to $250 a day for actual loss of earnings for time spent away from work;

   d. pre-judgment interest awarded against the "insured" on that part of the judgment "we" pay. If "we" offer to pay the "limit", "we" will not pay any pre-judgment interest based on that period of time after the offer;

   e. the interest which accrues on the entire amount of a judgment beginning with entry of a judgment and ending when "we" tender, deposit in court, or pay the portion of the judgment that is up to, but does not exceed, "our" "limit";

f. the cost of appeal bonds or bonds for the release of attachments up to "our" "limit".

   However, "we" are not required to apply for or furnish bonds; and

g. the cost, up to $2,000, for bail bonds, whether or not due to an accident or traffic law violation, required of an "insured" because of an "occurrence" to which this policy applies.

   However, "we" are not required to apply for or furnish bonds.

2. With respect to Coverage E, if the "limits" of any "underlying insurance" are reduced by payment of defense costs, related supplemental payments under this policy will also reduce the applicable "limits" under this policy.

   Otherwise, supplemental payments are in addition to the "limits" for Commercial Excess/Umbrella Liability Coverage.

3. When "we" have the right but not the duty to defend the "insured" and choose to participate in the defense, "we" will pay "our" own expenses but will not contribute to the expenses of the "insured" or the "underlying insurer".

4. If "we" defend an "insured" against a "suit" and an "indemnitee" of the "insured" is also named as a party to the "suit":

   a. "we" will:

      1) defend that "indemnitee";
      2) pay attorneys' fees incurred by "us" in the defense of that "indemnitee";
      3) pay necessary litigation expenses incurred by "us"; and
      4) pay necessary litigation expenses incurred by the "indemnitee" at "our" request.

Copyright, American Association of Insurance Services, Inc., 2010

b. all of the following conditions must be met:

1) the "suit" seeks "damages" against the "indemnitee" for which the "insured" has assumed the liability of the "indemnitee" in a "covered contract";

2) this insurance applies to such liability assumed by the "insured";

3) the obligation to defend, or the cost of the defense of, that "indemnitee", has also been assumed by the "insured" in the same "covered contract";

4) no conflict appears to exist between the interests of the "insured" and the interests of the "indemnitee" in the allegations in the "suit" and in the information "we" know about the "occurrence";

5) the "indemnitee" and the "insured" ask "us" to conduct and control the defense of that "indemnitee" against such "suit" and agree that "we" can assign the same counsel to defend the "insured" and the "indemnitee"; and

6) the "indemnitee" agrees to:

a) cooperate with "us" in the investigation, settlement, or defense of the "suit";

b) immediately send "us" copies of any demands, notices, summonses, or legal papers received in connection with the "suit";

c) notify any other insurer whose coverage is available to the "indemnitee";

d) cooperate with "us" with respect to coordinating other applicable insurance available to the "indemnitee";

e) provide "us" with written authorization to obtain records regarding the "suit";

f) provide "us" other information related to the "suit"; and

g) provide "us" with written authorization to conduct and control the defense of the "indemnitee" in such "suit".

If the above conditions are met, such payments will not be deemed to be "damages" for "bodily injury" or "property damage" and will not reduce the "limits", regardless of the provisions of exclusion 2.b.2) of Coverage U.

"Our" obligation to provide a defense for an "insured's" "indemnitee" and to pay for the "indemnitee's" defense and litigation costs as Supplemental Payments ceases when "we" have paid an amount equal to the applicable "limit" as the result of a judgment or settlement or when a requirement set forth under 4.b.1), 2), 3), 4), 5), and 6) above is no longer met.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Cooperation** --

   a. With respect to Coverage E, "you" must cooperate with the "underlying insurers" as required by the terms of their policies and comply with all terms and conditions of those policies.

   b. All "insureds" involved must cooperate with "us" in investigating or settling a claim or defending a "suit".

2. **Notice** -- In the case of an "occurrence" or offense, or if an "insured" becomes aware of anything that indicates that there might be a claim under the Commercial Excess/Umbrella Liability Coverages, "you" must see it that "we" receive notice as soon as practicable. To the extent possible, the notice to "us" should include:

   a. the name of the "insured", the policy number, and the time, place, and details of the "occurrence" or offense; and

   b. the names and addresses of all known potential claimants and witnesses.

Copyright, American Association of Insurance Services, Inc., 2010

3. **Voluntary Payments** -- Any payment or expense made or assumed by any "insured" without "our" written consent will be paid or assumed by the "insured".

4. **Other Duties** -- If a claim is made or a "suit" is brought against any "insured", "you" and any other "insured" involved in the claim or "suit" must promptly give "us" copies of all legal papers, demands, and notices that relate to such claim or "suit".

   At "our" request, "you" and any other "insured" must cooperate and assist "us" in:

   a. the enforcement of any right of recovery or indemnification against all parties who may be liable to an "insured" for the injury or damage;

   b. the securing of and giving of evidence; and

   c. obtaining the attendance of all witnesses.

---

# HOW MUCH WE PAY

## COVERAGE E -- EXCESS LIABILITY AND COVERAGE U -- UMBRELLA LIABILITY

1. The "limits", shown on the "declarations" and subject to the following conditions, are the most "we" pay regardless of the number of:

   a. "insureds" under this policy;

   b. persons or organizations who sustain injury or damage;

   c. claims made or "suits" brought;

   d. vehicles or watercraft involved in an accident, to the extent covered by this policy; or

   e. coverages provided under this policy.

2. The General Aggregate Limit is the most "we" will pay for the sum of all:

   a. "damages" under Coverage E and Coverage U; and/or

   b. defense costs paid under Coverage E when the "limits" of the applicable "underlying insurance" are reduced by payment of defense costs.

   However, the General Aggregate Limit does not apply to "damages":

   a. due to "bodily injury" and "property damage" included in the "products/completed work hazard"; or

   b. due to "bodily injury" and "property damage" included in "underlying insurance" which are not subject to an aggregate "limit" in such "underlying insurance".

3. The Products/Completed Work Hazard Aggregate Limit is the most "we" will pay for "damages" due to "bodily injury" and "property damage" included in the "products/completed work hazard".

4. The Each Occurrence Limit, subject to the General Aggregate Limit and the Products/Completed Work Hazard Aggregate Limit, is the most "we" will pay for the sum of all:

   a. "damages" under Coverage E and Coverage U; and/or

   b. defense costs paid under Coverage E when the "limits" of the applicable "underlying insurance" are reduced by payment of defense costs;

   due to:

   a. all "bodily injury" and "property damage" arising out of a single "occurrence";

   b. all "personal and advertising injury" sustained by any one person or organization; and

Copyright, American Association of Insurance Services, Inc., 2010

c.  under Coverage E, any other injury or damage arising out of a negligent act, error, omission, injury, event, incident, or offense.

5.  With respect to Coverage E, if the "limits" of any "underlying insurance" are exhausted by payment of claims, "damages", and/or defense costs, this policy will continue to provide coverage as "underlying insurance".

6.  With respect to Coverage E, if the "limits" of any "underlying insurance" are reduced by payment of claims, "damages", and/or defense costs, this policy will apply as excess of the reduced "underlying insurance".

7.  With respect to Coverage E, if "underlying insurance" is not concurrent with the policy period of this Commercial Excess/Umbrella Liability Coverage, only claims for "occurrences" due to "bodily injury" or "property damage", offenses due to "personal and advertising injury", and other negligent acts, errors, omissions, injuries, events, and incidents that are covered by "underlying insurance" and that take place during the policy period of this policy will be considered in determining the extent to which any aggregate "limit" in the "underlying insurance" has been reduced or exhausted.

However, for any "underlying insurance" written on a "claims-made" basis, the available "limits" of "underlying insurance" will only be reduced or exhausted by payment of:

a.  claims that are made during the policy period, or any Extended Reporting Period, of this Commercial Excess/Umbrella Liability Coverage; or

b.  related defense costs, but only if the "limits of "underlying insurance" are reduced by payment of defense costs.

8.  The General Aggregate Limit and the Products/Completed Work Hazard Aggregate Limit apply separately to each consecutive 12 month period beginning with the inception date shown on the "declarations" for this Commercial Excess/Umbrella Liability Coverage. They also apply separately to any remaining policy period of less than 12 months, unless the Commercial Excess/Umbrella Liability Coverage was extended after it was written. In that case, the additional period will be considered part of the last preceding period for the purpose of determining "limits".

## CONDITIONS

1.  **Appeals** -- If an "underlying insurer" or the "insured" elects not to appeal a judgment in excess of the "limit" of any "underlying insurance" with respect to Coverage E, or in excess of the "self-insured retention" with respect to Coverage U, "we" may elect to make such appeal. If "we" so elect, "we" will be liable for all expenses "we" incur that pertain to such appeal.

2.  **Assignment** -- This policy may not be assigned without "our" written consent.

3.  **Bankruptcy Of An Insured** -- Bankruptcy or insolvency of an "insured" does not relieve "us" of "our" obligations under this policy.

4.  **Bankruptcy Of Underlying Insurer** -- With respect to Coverage E, in the event of bankruptcy or insolvency of any "underlying insurer", any insurance provided by this policy will not replace such "underlying insurance", but will apply as if the "limits" of "underlying insurance" were valid and collectible.

5.  **Cancellation And Nonrenewal** -- See the state-specific amendatory endorsement.

6.  **Change, Modification, Or Waiver Of Policy Terms** -- A waiver or change of the "terms" of this policy must be issued by "us" in writing to be valid.

Copyright, American Association of Insurance Services, Inc., 2010

7. **Conformity With Statute** -- If the "terms" of this policy conflict with the statutes of the state where this policy is issued, the "terms" are amended to conform to such statutes.

8. **Examination Of Books And Records** -- "We" may examine and audit "your" books and records that relate to this policy during the policy period and within three years after the policy has expired.

9. **Inspections** -- "We" have the right, but are not obligated, to inspect "your" property and operations at any time. This inspection may be made by "us" or may be made on "our" behalf. An inspection or its resulting advice or report does not warrant that "your" property or operations are safe, healthful, or in compliance with laws, rules, or regulations. Inspection or reports are for "our" benefit only.

10. **Knowledge Of Bodily Injury Or Property Damage** -- With respect to Coverage U, knowledge of "bodily injury" or "property damage" will be deemed to have occurred at the earliest of the following times:

    a. when a claim or demand for "damages" alleging "bodily injury" or "property damage" is received by any "designated insured";

    b. when any "designated insured" reports the "bodily injury" or "property damage" to "us" or any other insurer; or

    c. when any "designated insured" becomes aware of anything that indicates that "bodily injury" or "property damage" may have occurred or is occurring.

11. **Legal Action Against Us** -- No lawsuit can be brought against "us" unless:

    a. all "terms" of this policy have been complied with; and

    b. the amount of an "insured's" liability has been determined by:

        1) a final judgment against an "insured" as a result of a trial; or

2) a written agreement by the "insured", the claimant, or the claimant's legal representative, and "us".

However, "we" will not pay for injury or damage that is not covered by this policy or that exceeds the applicable "limit".

No person has a right under this policy to join "us" or implead "us" in actions that are brought to determine an "insured's" liability.

12. **Maintenance Of Underlying Insurance** -- With respect to Coverage E, "you" must maintain the "underlying insurance" in full force and effect during the term of this policy.

If "you" fail to maintain "underlying insurance", the insurance provided by this policy will not replace such "underlying insurance" but will apply as if that "underlying insurance" were valid and collectible.

If any "underlying insurance" is canceled or not renewed and not replaced or there is an increase in the scope of coverage in any "underlying insurance", "you" must notify "us" at once. "We" will not be liable under this policy for more than "we" would have been liable if that "underlying insurance" had not been terminated or had been kept at its original "limits" or coverages.

Reduction or exhaustion of any aggregate "limit" in any "underlying insurance" by payments for judgments, settlements, or expenses for "occurrences" or offenses to which this policy applies will not be a failure to maintain "underlying insurance" in full force and effect.

No statement contained in this condition limits "our" right to cancel or not renew this policy.

13. **Misrepresentation, Concealment, Or Fraud** -- This coverage is void as to "you" and any other "insured" if, before or after a loss:

    a. "you" have or any other "insured" has willfully concealed or misrepresented:

Copyright, American Association of Insurance Services, Inc., 2010

1)  a material fact or circumstance that relates to this insurance or the subject thereof; or
2)  "your" interest or any other "insured's" interest herein; or

b.  there has been fraud or false swearing by "you" or any other "insured" with regard to a matter that relates to this insurance or the subject thereof.

14.  **Subrogation** -- If "we" pay under the Commercial Excess/Umbrella Liability Coverage, "we" may require from an "insured" an assignment of any right of recovery. "We" are not liable under the Commercial Excess/Umbrella Liability Coverage to the extent that any "insured" has impaired "our" right to recover. An "insured" may waive its right to recover, in writing, before an "occurrence" takes place.

15.  **Transfer Of Defense** -- With respect to Coverage E, when the applicable "limit" of "underlying insurance" has been exhausted by the payment of claims, settlements, judgments, and/or defense costs:

a.  the duty to defend a "suit" is transferred to "us"; and

b.  with respect to claims or "suits" that would otherwise have been covered by "underlying insurance", "we" will cooperate in the transfer and control to "us" of any outstanding claims or "suits" to which this insurance applies.

16.  **Separate Insureds** -- Coverage provided under this policy applies separately to each "insured" against whom claim is made or "suit" is brought.

However, this does not affect the "limits" stated under How Much We Pay.

17.  **Premium** -- The premium shown on the "declarations" was computed on the basis of "our" rules and rates. If the premium is shown on the "declarations" as a deposit premium, "we" will compute the final earned premium at the end of each audit period shown on the "declarations". If it is more than the deposit premium paid by "you", "we" will bill "you" for the difference. If the final earned premium is less than the deposit premium paid by "you", "we" will return the difference to "you". "You" must maintain records of the information that is necessary for computing the premium. Copies of the records must be sent to "us" at the end of the audit period or when requested by "us".

If the premium for coverage provided by this policy is based upon an audit of exposures and the final premium is determined after the expiration of the policy, any additional premium owed to "us" is due on the due date that appears on the billing notice.

18.  **Insurance Under More Than One Policy** --

a.  Insurance under this policy is excess over any other insurance and will not contribute with any other insurance, whether the other insurance is primary, excess, contingent, or on any other basis.

However, this condition will not apply to insurance specifically written as excess over this policy.

b.  When this insurance is excess over any other insurance:

1)  "we" will have no duty to defend under Coverage E or Coverage U any "suit" that any other insurer has a duty to defend. If no other insurer defends, "we" will do so.

However, "we" will be entitled to the "insured's" rights against all those other insurers; and

Copyright, American Association of Insurance Services, Inc., 2010

2) "we" will pay "our" share of the amount of loss, if any, that exceeds the sum of:

   a) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   b) the total of all deductibles and self-insured amounts required by such other insurance.

19. **Loss Payable** -- This insurance applies only when the "insured", the "underlying insurer", or any other insurance has become obligated to pay the "limits" of "underlying insurance", the "self-insured retention", or the "limits" of any other insurance which is available to the "insured" and provides coverage with respect to injury or damage to which this policy applies, whichever is applicable. The obligation of the "insured" to pay will have been previously determined by a final settlement or judgment after trial or written agreement between the "insured", claimant or the claimant's legal representative, and "us".

20. **Extended Coverage Territory** --

   a. "We" may be prevented by reason of law or by another reason from defending the "insured" against a "suit" that is brought within the "coverage territory", but in a location that is outside of the United States of America (including its territories and possessions), Puerto Rico, or Canada. If "we" would have defended that "suit" under the "terms" of this policy, had "we" not been prevented from doing so, "we" will reimburse the "insured" for the necessary and reasonable costs the "insured" incurs for the defense of the "suit". However, "we" will reimburse the "insured" for defense costs only to the extent that such costs would have been covered as Supplemental Payments provided by this policy. Payment made under these "terms" is in addition to the "limit" for the Commercial Excess/Umbrella Liability Coverage, except as provided under item 2., Supplemental Payments.

   b. If "we" are prevented by reason of law or by another reason from paying, on behalf of an "insured", those sums for which the "insured" becomes legally obligated to pay as "damages" to which this insurance applies within the "coverage territory", but in a location that is outside of the United States of America (including its territories and possessions), Puerto Rico, or Canada, "we" will reimburse the "insured" for such sums.

   c. All payments or reimbursements "we" make under Supplemental Payments for defense costs and for "damages" because of judgments or settlements will be made in U.S. currency.

      Payments or reimbursements under Supplemental Payments will reflect the prevailing exchange rate at the time the costs were incurred.

      Payments or reimbursements for "damages" will reflect the prevailing exchange rate at the time the "insured" became legally obligated to pay such "damages".

   d. If "you" disagree with "us" with respect to the coverage provided by this policy, any dispute must be filed in the courts of the United States of America (including its territories and possessions), Puerto Rico, or Canada.

   e. "You" must maintain the coverage required by law, statute, regulation, or other governmental authority. This insurance will not be invalid if "you" fail to maintain such coverage as required; however, this insurance will apply as if the required coverage was in full force and effect.

      Reduction or exhaustion of any aggregate "limit" by payments for judgments, settlements, or expenses for "occurrences" or offenses to which this policy applies will not be a failure to maintain such coverage required by law, regulation, or other governmental authority in full force and effect.

Copyright, American Association of Insurance Services, Inc., 2010

# NUCLEAR ENERGY LIABILITY EXCLUSION

1. Exclusion

   a. This insurance does not apply under any liability coverage, to "bodily injury" or "property damage":

      1) with respect to which an "insured" under the policy is also an insured under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its "limit" of liability; or

      2) resulting from the "hazardous properties" of "nuclear material" and with respect to which:

         a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereto; or

         b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

   b. This insurance does not apply under any liability coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      1) the "nuclear material":

         a) is at any "nuclear facility" owned by, operated by, or on behalf of an "insured"; or

         b) has been discharged or dispersed therefrom;

      2) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, stored, processed, transported, or disposed of by or on behalf of an "insured"; or

      3) the "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion b.3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. With respect to only the Nuclear Energy Liability Exclusion, the following definitions are added:

   a. "Hazardous properties" include radioactive, toxic, or explosive properties.

   b. "Nuclear material" means "source material", "special nuclear material", or "by-product material".

   c. "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954, or in any law amendatory thereof.

   d. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

   e. "Waste" means any "waste" material:

      1) containing "by-product material" other than the tailings or "wastes" produced by the extraction of uranium or thorium from any ore processed primarily for its "source material" content; and

Copyright, American Association of Insurance Services, Inc., 2010

2)  resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

f.  "Nuclear facility" means:

1)  any "nuclear reactor";
2)  any equipment or device designed or used for:

    a)  separating the isotopes of uranium or plutonium;
    b)  processing or utilizing "spent fuel"; or
    c)  handling, processing, or packaging "waste";

3)  any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium-233 or any combination thereof, or more than 250 grams of uranium-235; or

4)  any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such sites, and all premises used for such operations.

g.  "Nuclear reactor" means any apparatus designed or used:

1)  to sustain nuclear fission in a self-supporting chain reaction; or
2)  to contain a critical mass of fissionable material.

h.  "Property damage" includes all forms of radioactive contamination of property.

CU 0001 09 10

Copyright, American Association of Insurance Services, Inc., 2010

**AAIS**
**CU 0115 07 13**
**Page 1 of 3**

This endorsement changes the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## INDIANA

1. Under What Must Be Done In Case Of Loss, item 2. is amended by the following addition:

    Notice given by "you" or on "your" behalf to "us" or "our" agent, with sufficient information to identify "you", will be considered to be notice to "us". However, such notice does not change or waive any other "terms" of this policy.

2. Under Coverage E, item 2. Exclusions, exclusion c. is deleted and replaced by the following:

    c.  "bodily injury" to a person if:

    1)  the "insured" has a workers' compensation policy covering the injury; or
    2)  benefits are payable or are required to be provided by an "insured" because of the existence, application, or enforcement of any provisions of any workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law, including any provision imposing liability on the "insured" for failure to obtain a certificate attesting to the compliance by any contractor with any workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law.

3. Under Coverage U, item 2. Exclusions, exclusion d. is deleted and replaced by the following:

    d.  "bodily injury" to a person if:

    1)  the "insured" has a workers' compensation policy covering the injury; or

    2)  benefits are payable or are required to be provided by an "insured" because of the existence, application, or enforcement of any provisions of any workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law, including any provision imposing liability on the "insured" for failure to obtain a certificate attesting to the compliance by any contractor with any workers' compensation, disability benefits, occupational disease, unemployment compensation, or like law.

4. Under Conditions, condition 5. is deleted and replaced by the following:

    **Cancellation And Nonrenewal** -- "You" may cancel this policy by returning it to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

    "We" may cancel or not renew this policy by written notice to "you" at the address shown on the "declarations". Proof of delivery or mailing is sufficient proof of notice.

    During the first 90 days this policy is in effect, "we" may cancel for any reason.

    If "we" cancel this policy for nonpayment of premium "we" will give "you" notice at least ten days before cancellation is effective.

    If "we" cancel for fraud or material misrepresentation, "we" will give "you" notice at least 20 days before cancellation is effective.

    If "we" cancel this policy for any other reason, "we" will give "you" notice at least 30 days before cancellation is effective.

Copyright, American Association of Insurance Services, Inc., 2013

After this policy has been in effect for more than 90 days, or if it is a renewal of a policy issued by "us", "we" may cancel only for the following reasons:

a.  the premium has not been paid when due;

b.  there has been a substantial change in the scale of the risk covered by the policy;

c.  "you" have perpetrated a fraud or material misrepresentation upon "us";

d.  "you" have failed to comply with reasonable safety recommendations; or

e.  reinsurance of the risk associated with the policy has been canceled.

If "we" cancel this policy for nonpayment of premium, "we" will give "you" notice at least ten days before cancellation is effective.

If "we" cancel this policy due to fraud or material misrepresentation, "we" will give "you" notice at least 20 days before cancellation is effective.

If "we" cancel this policy for any other reason, "we" will give "you" notice at least 45 days before cancellation is effective.

If "we" do not renew this policy, "we" will give "you" notice at least 45 days before:

a.  the expiration date of the policy if the coverage is provided for one year or less; or

b.  the anniversary date of the policy if the coverage provided is for more than one year.

"Your" return premium, if any, will be refunded at the time of cancellation or as soon as practical. Payment or tender of the unearned premium is not a condition of cancellation.

5.  With respect to Coverage E, condition 18. is deleted and replaced by the following:

**Insurance Under More Than One Policy** --

a.  Insurance under this policy is excess over any other insurance, and will not contribute with any other insurance, whether primary, excess, contingent, or on any other basis, except with respect to:

1)  other insurance that is specifically written as excess over this policy; or
2)  an "occurrence" that involves an "auto" that is covered by "underlying insurance" and owned by "you".

    Except as stated in items b. and c. below, "we" pay "our" share of the loss arising out of an "occurrence" involving an "auto" described in this item a.2). "Our" share of the loss is that part of the loss that the applicable "limit" under this policy bears to the total amount of umbrella or excess insurance available to cover the loss.

b.  With respect to an "occurrence" arising out of the use, by an "insured" other than "you", of an "auto" that is covered by "underlying insurance" and owned by "you", the insurance provided by this coverage will be considered primary over any other insurance available to such "insured", but only if:

1)  such "auto", at the time of the "occurrence", was operated with "your" permission; and
2)  the use was within the scope of the permission granted.

c.  With respect to "bodily injury" suffered by a passenger in an "occurrence" arising out of the use of an "auto" that is covered by "underlying insurance" and owned by "you", the insurance provided by this coverage will be considered primary over any other insurance available to the passenger.

Copyright, American Association of Insurance Services, Inc., 2013

**AAIS**
**CU 0115 07 13**
**Page 3 of 3**

---

d.  When this insurance is excess over any other insurance:

1)  "we" will have no duty to defend under Coverage E any "suit" that any other insurer has a duty to defend. If no other insurer defends, "we" will do so.

   However, "we" will be entitled to the "insured's" rights against all those other insurers; and

2)  "we" will pay "our" share of the loss, if any, that exceeds the sum of:

a)  the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b)  the total of all deductibles and "self-insured retentions" required by such other insurance.

---

**CU 0115 07 13**

Copyright, American Association of Insurance Services, Inc., 2013

**AAIS**
**CU 0144 09 10**
**Page 1 of 2**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## TENNESSEE

1. Under Conditions, condition 5. is deleted and replaced by the following:

   **Cancellation And Nonrenewal** -- "You" may cancel this policy by returning the policy to "us" or by giving "us" a written notice and stating at what future date coverage is to stop.

   "We" may cancel or not renew this by written notice mailed or delivered to "you" and "your" agent at the addresses shown in the policy. The notice will state the reason for cancellation or nonrenewal and the time that the cancellation is to take effect. Proof of mailing will be sufficient proof of notice.

   If this policy has been in effect less than 60 days, "we" may cancel for any reason.

   If this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by "us", "we" may cancel this policy only for one or more of the following reasons:

   a. nonpayment of premium, including nonpayment of any additional premiums, calculated in accordance with "our" current rating manual, justified by a physical change in the insured property or a change in its occupancy or use;

   b. "your" conviction of a crime having as one of its necessary elements an act increasing any hazard insured against;

   c. discovery of fraud or material misrepresentation on the part of either of the following:

      1) "you" or "your" representative in obtaining the insurance; or

      2) "you" in pursuing a claim under the policy;

   d. failure to comply with written loss control recommendations;

   e. material change in the risk which increases the risk of loss after insurance coverage has been issued or renewed;

   f. determination by the Commissioner that the continuation of the policy would jeopardize "our" solvency or would place "us" in violation of the insurance laws of this state or any other state;

   g. "your" violation or breach of any policy "terms" or conditions; or

   h. such other reasons that are approved by the Commissioner.

   If "we" cancel this policy, "we" will give "you" and "your" agent notice at least ten days before cancellation is effective.

   "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

   If "we" decide not to renew this policy, "we" will give "you" and "your" agent notice at least 60 days before the expiration date of the policy.

   Notice of nonrenewal is not required if "we" have offered to issue a renewal policy, or "you" have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

Copyright, American Association of Insurance Services, Inc., 2010

**AAIS**
**CU 0144 09 10**
**Page 2 of 2**

2. Under Conditions, the following condition is added:

   **Renewal** -- If "we" decide to renew this policy subject to:

   a. an increase in premium rates or factors in excess of 25%; or

   b. reduction of "limits" or elimination of coverages;

"we" will give notice stating the new "terms" at least 60 days prior to the expiration date. "Our" notice will be mailed or delivered to "you" at the address on the policy, and to "your" agent. Proof of mailing will be sufficient proof of notice.

**CU 0144 09 10**

Copyright, American Association of Insurance Services, Inc., 2010

**AAIS**
**CU 0730 09 10**
**Page 1 of 1**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# EXCLUSION -- UMBRELLA LIABILITY
## COVERAGE U

The Commercial Excess/Umbrella Liability Coverage is amended as follows. All other "terms" of the policy apply, except as amended by this endorsement.

---

## COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGES

---

Coverage U -- Umbrella Liability is deleted in its entirety. All references to Coverage U in the policy are deleted.

---

**CU 0730 09 10**

Copyright, American Association of Insurance Services, Inc., 2010

AAIS
CU 1301 09 10
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# CERTIFIED TERRORISM LOSS

1.  The following definitions are added:

    a.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

        1)  to be an act of terrorism;
        2)  to be a violent act or an act that is dangerous to human life, property, or infrastructure;
        3)  to have resulted in damage:

            a)  within the United States; or
            b)  to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

        4)  to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and

        5)  to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

    b.  "Certified terrorism loss" means loss that results from a "certified act of terrorism".

2.  The following provision is added:

    If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

CU 1301 09 10

Copyright, American Association of Insurance Services, Inc., 2010

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# PURCHASING GROUP CONVERSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGE PART**

As to coverage provided by an individual Certificate of Insurance:

1.  The Master Policy Holder shown on the Master Policy is the American Specialty Sports & Entertainment Purchasing Group - XL Group. "You" or "your" referenced throughout the policy, shall mean the individual Certificate Holder, member of the American Specialty Sports & Entertainment Purchasing Group - XL Group, shown on each individual Certificate of Insurance Declarations.

2.  The policy period shown on an individual Certificate of Insurance is the period that the insurance is in force for that individual Certificate Holder, regardless of the policy period of the Master Policy; provided however, that in no event shall the expiration date of the individual Certificate of Insurance be later than the expiration date of the Master Policy.

3.  Any reference to policy number in a Schedule, form or endorsement, shall mean the individual Certificate Number

4.  **Limits of Insurance** applies individually to each Certificate of Insurance.

5.  The **HOW MUCH WE PAY** Section applies individually to each Certificate of Insurance.

6.  Any Schedule, form or endorsement shown on an individual Certificate of Insurance or made part thereof, only applies to coverage under this Certificate of Insurance.

7.  Any notices sent by us will be sent to the Master Policy Holder, including notice of cancellation or nonrenewal.  The policy provisions are amended accordingly.

8.  Any reference to the Declarations is interchangeable with Certificate of Insurance

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.